# U.S. District Court
## DISTRICT OF KANSAS (Kansas City)
## CIVIL DOCKET FOR CASE #: 2:22−cv−02447−JAR

| | |
|---|---|
| Coones v. Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners et al | Date Filed: 11/03/2022 |
| | Jury Demand: Both |
| Assigned to: District Judge Julie A. Robinson | Nature of Suit: 440 Civil Rights: Other |
| Cause: 42:1983 Civil Rights Act | Jurisdiction: Federal Question |

**Plaintiff**

**Deirdre Coones**
*Executor of the estate of*
Olin Coones

represented by

**Jonathan Loevy**
Loevy & Loevy
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
312−243−5900
Fax: 312−243−5902
Alternative Phone:
Cell Phone:
Email: jon@loevy.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Joshua L. Loevy**
Loevy & Loevy
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
312−243−5900
Fax: 314−613−2801
Alternative Phone:
Cell Phone:
Email: JoshL@Loevy.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 26312*
*Bar Status: Active*

**Locke E. Bowman**
Loevy & Loevy
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
312−243−5900
Fax: 312−249−5902
Alternative Phone:
Cell Phone:
Email: locke@loevy.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Russell Ainsworth**
Loevy & Loevy
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
312−243−5900
Fax: 312−249−5902
Alternative Phone:
Cell Phone:

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.1

Email: russell@loevy.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Wallace Hilke**
Loevy & Loevy
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
312–243–5900
Fax: 312–249–5902
Alternative Phone:
Cell Phone:
Email: hilke@loevy.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Branden A. Bell**
Morgan Pilate, LLC
926 Cherry Street
Kansas City, MO 64106
816–471–6694
Fax: 816–472–3516
Alternative Phone: 785–218–2215
Cell Phone:
Email: bbell@morganpilate.com
*ATTORNEY TO BE NOTICED*
*Bar Number: 22618*
*Bar Status: Active*

**Lindsay Runnels**
Morgan Pilate, LLC
926 Cherry Street
Kansas City, MO 64106
816–471–6694
Fax: 816–472–3516
Alternative Phone: 816–589–9241
Cell Phone: 816–589–9241
Email: lrunnels@morganpilate.com
*ATTORNEY TO BE NOTICED*
*Bar Number: 78822*
*Bar Status: Active*

V.

**Defendant**

| | | |
|---|---|---|
| **Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners** | represented by | **Charles Edward Branson** |

Fisher, Patterson, Sayler & Smith, LLP – Topeka
3550 SW Fifth Street
Topeka, KS 66606
785–232–7761
Fax: 785–232–6604
Alternative Phone:
Cell Phone: 785–766–7892
Email: cbranson@fpsslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 17376*

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.2

*Bar Status: Active*

**David R. Cooper**
Fisher, Patterson, Sayler & Smith, LLP –
Topeka
3550 SW Fifth Street
Topeka, KS 66606
785–232–7761
Fax: 785–286–6609
Alternative Phone:
Cell Phone: 785–633–7545
Email: dcooper@fpsslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16690*
*Bar Status: Active*

**Brian Mauldin**
Fisher, Patterson, Sayler & Smith, LLP –
Topeka
3550 SW Fifth Street
Topeka, KS 66606
706–829–6672
Alternative Phone:
Cell Phone:
Email: bmauldin@fpsslaw.com
*TERMINATED: 07/13/2023*
*Bar Number: 28636*
*Bar Status: Terminated*

**Edward James Bain , III**
Unified Government of Wyandotte
County/Kansas City, KS
701 North 7th Street
Kansas City, KS 66101–3013
913–573–5060
Alternative Phone:
Cell Phone:
Email: jbain@wycokck.org
*TERMINATED: 04/13/2023*
*Bar Number: 26442*
*Bar Status: Terminated*

**Joni S. Cole**
Wyandotte County Sheriff's Office
Legal Department
710 N. 7th Street
Kansas City, KS 66101
913–573–5069
Fax: 913–573–2972
Alternative Phone:
Cell Phone: 913–948–4127
Email: jscole@wycokck.org
*TERMINATED: 11/27/2023*
*Bar Number: 24798*
*Bar Status: Active*

**Defendant**

| **Unified Government of Wyandotte County/Kansas City, KS** | represented by | **Charles Edward Branson** |
|---|---|---|

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 17376*
*Bar Status: Active*

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.3

**Daniel E. Kuhn**
Unified Government of Wyandotte
County/Kansas City, KS
701 North 7th Street
Kansas City, KS 66101−3013
913−573−5189
Fax: 913−573−5243
Alternative Phone: 913−573−5060
Cell Phone:
Email: dkuhn@wycokck.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 20429*
*Bar Status: Active*

**David R. Cooper**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16690*
*Bar Status: Active*

**Brian Mauldin**
(See above for address)
*TERMINATED: 07/13/2023*
*Bar Number: 28636*
*Bar Status: Terminated*

**Edward James Bain , III**
(See above for address)
*TERMINATED: 04/13/2023*
*Bar Number: 26442*
*Bar Status: Terminated*

**Joni S. Cole**
(See above for address)
*TERMINATED: 11/27/2023*
*Bar Number: 24798*
*Bar Status: Active*

**Defendant**

**William Michael**
*Detective; Kansas City, KS Police*
*Department*

represented by **Charles Edward Branson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 17376*
*Bar Status: Active*

**David R. Cooper**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16690*
*Bar Status: Active*

**Brian Mauldin**
(See above for address)
*TERMINATED: 07/13/2023*
*Bar Number: 28636*
*Bar Status: Terminated*

**Edward James Bain , III**
(See above for address)

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.4

*TERMINATED: 04/13/2023*
*Bar Number: 26442*
*Bar Status: **Terminated***

**Joni S. Cole**
(See above for address)
*TERMINATED: 11/27/2023*
*Bar Number: 24798*
*Bar Status: Active*

**Defendant**

**Angela Garrison**                                    represented by   **Charles Edward Branson**
*Detective; Kansas City, KS Police*                                   (See above for address)
*Department*                                                          *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*
                                                                      *Bar Number: 17376*
                                                                      *Bar Status: Active*

                                                                      **David R. Cooper**
                                                                      (See above for address)
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*
                                                                      *Bar Number: 16690*
                                                                      *Bar Status: Active*

                                                                      **Brian Mauldin**
                                                                      (See above for address)
                                                                      *TERMINATED: 07/13/2023*
                                                                      *Bar Number: 28636*
                                                                      *Bar Status: **Terminated***

                                                                      **Edward James Bain , III**
                                                                      (See above for address)
                                                                      *TERMINATED: 04/13/2023*
                                                                      *Bar Number: 26442*
                                                                      *Bar Status: **Terminated***

                                                                      **Joni S. Cole**
                                                                      (See above for address)
                                                                      *TERMINATED: 11/27/2023*
                                                                      *Bar Number: 24798*
                                                                      *Bar Status: Active*

**Defendant**

**G. Dorsett**                                         represented by   **Charles Edward Branson**
*Sergeant; Kansas City, KS Police*                                    (See above for address)
*Department*                                                          *LEAD ATTORNEY*
*TERMINATED: 09/30/2024*                                              *ATTORNEY TO BE NOTICED*
                                                                      *Bar Number: 17376*
                                                                      *Bar Status: Active*

                                                                      **David R. Cooper**
                                                                      (See above for address)
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*
                                                                      *Bar Number: 16690*
                                                                      *Bar Status: Active*

                                                                      **Brian Mauldin**
                                                                      (See above for address)
                                                                      *TERMINATED: 07/13/2023*
                                                                      *Bar Number: 28636*
                                                                      *Bar Status: **Terminated***

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.5

**Edward James Bain , III**
(See above for address)
*TERMINATED: 04/13/2023*
*Bar Number: 26442*
*Bar Status: Terminated*

**Joni S. Cole**
(See above for address)
*TERMINATED: 11/27/2023*
*Bar Number: 24798*
*Bar Status: Active*

**Defendant**

**Bryan Block**                                   represented by   **Charles Edward Branson**
*Detective; Kansas City, KS Police*                              (See above for address)
*Department*                                                     *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*
                                                                 *Bar Number: 17376*
                                                                 *Bar Status: Active*

**David R. Cooper**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16690*
*Bar Status: Active*

**Brian Mauldin**
(See above for address)
*TERMINATED: 07/13/2023*
*Bar Number: 28636*
*Bar Status: Terminated*

**Edward James Bain , III**
(See above for address)
*TERMINATED: 04/13/2023*
*Bar Number: 26442*
*Bar Status: Terminated*

**Joni S. Cole**
(See above for address)
*TERMINATED: 11/27/2023*
*Bar Number: 24798*
*Bar Status: Active*

**Defendant**

**Susan Brown**                                   represented by   **Charles Edward Branson**
*Detective; Kansas City, KS Police*                              (See above for address)
*Department*                                                     *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*
                                                                 *Bar Number: 17376*
                                                                 *Bar Status: Active*

**David R. Cooper**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16690*
*Bar Status: Active*

**Brian Mauldin**
(See above for address)
*TERMINATED: 07/13/2023*
*Bar Number: 28636*

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.6

*Bar Status: **Terminated***

**Edward James Bain , III**
(See above for address)
 ***TERMINATED: 04/13/2023***
*Bar Number: 26442*
*Bar Status: **Terminated***

**Joni S. Cole**
(See above for address)
 ***TERMINATED: 11/27/2023***
*Bar Number: 24798*
*Bar Status: Active*

**Defendant**

**(fnu) Sanchez**
*Sergeant; Kansas City, KS Police Department*
***TERMINATED: 09/30/2024***

represented by **Charles Edward Branson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 17376*
*Bar Status: Active*

**David R. Cooper**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16690*
*Bar Status: Active*

**Brian Mauldin**
(See above for address)
 ***TERMINATED: 07/13/2023***
*Bar Number: 28636*
*Bar Status: **Terminated***

**Edward James Bain , III**
(See above for address)
 ***TERMINATED: 04/13/2023***
*Bar Number: 26442*
*Bar Status: **Terminated***

**Joni S. Cole**
(See above for address)
 ***TERMINATED: 11/27/2023***
*Bar Number: 24798*
*Bar Status: Active*

**Defendant**

**Unknown Officers**
*Kansas City, KS Police Department*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 11/03/2022 | 1 | COMPLAINT with trial location of Kansas City (Filing fee $402, Internet Payment Receipt Number AKSDC–5906161.), filed by Deirdre Coones. (Attachments: # 1 Exhibit 1) (Loevy, Joshua) (Entered: 11/03/2022) |
| 11/03/2022 | 2 | CIVIL COVER SHEET by Plaintiff Deirdre Coones. (Loevy, Joshua) (Entered: 11/03/2022) |

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.7

| | | |
|---|---|---|
| 11/03/2022 | | NOTICE OF JUDGE ASSIGNMENT: Case assigned to District Judge Julie A. Robinson and Magistrate Judge Teresa J. James for all proceedings. (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) (kmc) (Entered: 11/03/2022) |
| 11/07/2022 | | SUMMONS ISSUED as to Unified Government of Wyandotte County/Kansas City, KS, and Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners. (issued to Attorney for service) (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry) (kmc) (Entered: 11/07/2022) |
| 11/09/2022 | 3 | ENTRY OF APPEARANCE by Joshua L. Loevy on behalf of Deirdre Coones. (Loevy, Joshua) (Entered: 11/09/2022) |
| 11/09/2022 | 4 | MOTION for attorney Locke E. Bowman to appear pro hac vice (Pro hac vice fee $50, Internet Payment Receipt Number AKSDC–5909951.) by Plaintiff Deirdre Coones. (Motion referred to Magistrate Judge Teresa J. James.) (Attachments: # 1 Exhibit 1 Affidavit Locke E. Bowman, # 2 Exhibit 2 ECF Registration Form)(Loevy, Joshua) (Entered: 11/09/2022) |
| 11/09/2022 | 5 | MOTION for attorney Wallace Hilke to appear pro hac vice (Pro hac vice fee $50, Internet Payment Receipt Number AKSDC–5909954.) by Plaintiff Deirdre Coones. (Motion referred to Magistrate Judge Teresa J. James.) (Attachments: # 1 Exhibit 1 Affidavit Wallace Hilke)(Loevy, Joshua) (Entered: 11/09/2022) |
| 11/09/2022 | 6 | MOTION for attorney Jonathan Loevy to appear pro hac vice (Pro hac vice fee $50, Internet Payment Receipt Number AKSDC–5910294.) by Plaintiff Deirdre Coones. (Motion referred to Magistrate Judge Teresa J. James.) (Attachments: # 1 Exhibit 1 Affidavit of Jon Loevy, # 2 Exhibit 2 ECF Registration Form)(Loevy, Joshua) (Entered: 11/09/2022) |
| 11/09/2022 | 7 | MOTION for attorney Russell Ainsworth to appear pro hac vice (Pro hac vice fee $50, Internet Payment Receipt Number AKSDC–5910306.) by Plaintiff Deirdre Coones. (Motion referred to Magistrate Judge Teresa J. James.) (Attachments: # 1 Exhibit 1 Affidavit of Russell Ainsworth, # 2 Exhibit 2 ECF Registration Form)(Loevy, Joshua) (Entered: 11/09/2022) |
| 11/29/2022 | 8 | SUMMONS RETURNED EXECUTED –– Personal Service by Deirdre Coones upon Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners served on 11/10/2022, answer due 12/1/2022. (Loevy, Joshua) (Entered: 11/29/2022) |
| 11/29/2022 | 9 | SUMMONS RETURNED EXECUTED –– Personal Service by Deirdre Coones upon Unified Government of Wyandotte County/Kansas City, KS served on 11/10/2022, answer due 12/1/2022. (Loevy, Joshua) (Entered: 11/29/2022) |
| 11/29/2022 | 10 | CLERKS ORDER EXTENDING TIME until 12/15/2022 for Defendants Unified Government of Wyandotte County/Kansas City, KS and Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners to answer or otherwise plead Signed by deputy clerk on 11/29/2022. (kmc) (Entered: 11/29/2022) |
| 12/07/2022 | 11 | MOTION for attorney Jon Loevy to appear pro hac vice by Plaintiff Deirdre Coones. (Motion referred to Magistrate Judge Teresa J. James.) (Attachments: # 1 Exhibit 1 Affidavit of Jon Loevy, # 2 Exhibit 2 ECF Registration Form)(Loevy, Joshua) (Entered: 12/07/2022) |
| 12/07/2022 | 12 | MOTION for attorney Locke E. Bowman to appear pro hac vice by Plaintiff Deirdre Coones. (Motion referred to Magistrate Judge Teresa J. James.) (Attachments: # 1 Exhibit 1 Affidavit Locke E. Bowman, # 2 Exhibit 2 ECF Registration Form)(Loevy, Joshua) (Entered: 12/07/2022) |
| 12/07/2022 | 13 | MOTION for attorney Russell Ainsworth to appear pro hac vice by Plaintiff Deirdre Coones. (Motion referred to Magistrate Judge Teresa J. James.) (Attachments: # 1 Exhibit 1 Affidavit of Russell Ainsworth, # 2 Exhibit 2 ECF Registration Form)(Loevy, Joshua) (Entered: 12/07/2022) |
| 12/07/2022 | 14 | MOTION for attorney Wallace Hilke to appear pro hac vice by Plaintiff Deirdre Coones. (Motion referred to Magistrate Judge Teresa J. James.) (Attachments: # 1 Exhibit 1 Affidavit Wallace Hilke, # 2 Exhibit 2 ECF Registration Form)(Loevy, |

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.8

| | | Joshua) (Entered: 12/07/2022) |
|---|---|---|
| 12/07/2022 | 15 | ORDER granting 11 Motion to Appear Pro Hac Vice of Jonathan Loevy for Deirdre Coones pursuant to D. Kan. Rule 83.5.4 for purposes of this case only; granting 12 Motion to Appear Pro Hac Vice of Locke E. Bowman for Deirdre Coones pursuant to D. Kan. Rule 83.5.4 for purposes of this case only; granting 13 Motion to Appear Pro Hac Vice of Russell Ainsworth for Deirdre Coones pursuant to D. Kan. Rule 83.5.4 for purposes of this case only; granting 14 Motion to Appear Pro Hac Vice of Wallace Hilke for Deirdre Coones pursuant to D. Kan. Rule 83.5.4 for purposes of this case only. Signed by Magistrate Judge Teresa J. James on 12/7/2022. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ca) (Entered: 12/07/2022) |
| 12/07/2022 | 16 | ORDER finding as moot 4 , 5 , 6 , 7 Motions to Appear Pro Hac Vice. Signed by Magistrate Judge Teresa J. James on 12/7/2022. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ts) (Entered: 12/07/2022) |
| 12/12/2022 | 17 | MOTION for Extension of Time to Answer or Otherwise Plead by Defendants Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners. (Motion referred to Magistrate Judge Teresa J. James.) (Cooper, David) (Entered: 12/12/2022) |
| 12/13/2022 | 18 | ORDER granting 17 Motion for Extension of Time to Answer or Otherwise Plead filed by The Unified Government of Wyandotte County and Kansas City, Kansas. Defendant The Unified Government of Wyandotte County and Kansas City, Kansas is hereby granted an extension until January 17, 2023, in which to answer or otherwise respond to Plaintiff's 1 Complaint. In addition, no later than December 23, 2022, counsel for The Unified Government of Wyandotte County and Kansas City, Kansas shall respond to Plaintiff's inquiries regarding service on and representation of the individual Defendants. Signed by Magistrate Judge Teresa J. James on 12/13/2022. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ts) (Entered: 12/13/2022) |
| 01/09/2023 | 19 | WAIVER OF SERVICE Returned Executed by Deirdre Coones. Bryan Block waiver sent on 12/23/2022, answer due 2/21/2023. (Loevy, Joshua) (Entered: 01/09/2023) |
| 01/09/2023 | 20 | WAIVER OF SERVICE Returned Executed by Deirdre Coones. Susan Brown waiver sent on 12/23/2022, answer due 2/21/2023. (Loevy, Joshua) (Entered: 01/09/2023) |
| 01/09/2023 | 21 | WAIVER OF SERVICE Returned Executed by Deirdre Coones. G. Dorsett waiver sent on 12/23/2022, answer due 2/21/2023. (Loevy, Joshua) (Entered: 01/09/2023) |
| 01/09/2023 | 22 | WAIVER OF SERVICE Returned Executed by Deirdre Coones. Angela Garrison waiver sent on 12/23/2022, answer due 2/21/2023. (Loevy, Joshua) (Entered: 01/09/2023) |
| 01/09/2023 | 23 | WAIVER OF SERVICE Returned Executed by Deirdre Coones. William Michael waiver sent on 12/23/2022, answer due 2/21/2023. (Loevy, Joshua) (Entered: 01/09/2023) |
| 01/09/2023 | 24 | WAIVER OF SERVICE Returned Executed by Deirdre Coones. (fnu) Sanchez waiver sent on 12/23/2022, answer due 2/21/2023. (Loevy, Joshua) (Entered: 01/09/2023) |
| 01/17/2023 | 25 | ANSWER to Complaint with Designation of Place of Trial by William Michael, Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners. (Cooper, David) Modified on 1/18/2023 to add William Michael as a filer. (mam) (Entered: 01/17/2023) |
| 01/19/2023 | 26 | INITIAL ORDER REGARDING PLANNING AND SCHEDULING: Scheduling Conference set for 2/28/2023 at 10:00 AM by Telephone before Magistrate Judge Teresa J. James. COUNSEL AND PRO SE PARTIES WHO WILL PARTICIPATE MUST DIAL 888–363–4749 and enter Access Code 4901386 to join the conference. Rule 26 Planning Conference Deadline 2/7/2023. Rule 26 Initial Disclosures Deadline set for 2/21/2023. Proposed Scheduling Order Deadline 2/21/2023. Signed by Magistrate Judge Teresa J. James on 1/19/2023. (hmg) (Entered: 01/19/2023) |

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.9

| | | |
|---|---|---|
| 02/21/2023 | 27 | NOTICE OF SERVICE by Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners of Rule 26(a)(1)(A) Initial Disclosures. (Cooper, David) (Entered: 02/21/2023) |
| 02/21/2023 | 28 | NOTICE OF SERVICE by Deirdre Coones of initial disclosures pursuant to Rule 26(a)(1)(A). (Loevy, Joshua) (Entered: 02/21/2023) |
| 02/22/2023 | 29 | JOINT MOTION Requesting the Entry of a Protective Order. In accordance with the Guidelines for Agreed Protective Orders, the parties jointly moved for the entry of a protective order by emailing a copy of their proposed order to the Magistrate Judge's chambers on February 21, 2023. (Motion referred to Magistrate Judge Teresa J. James.) (hmg) (Entered: 02/22/2023) |
| 02/22/2023 | 30 | PROTECTIVE ORDER limiting the disclosure, dissemination, and use of certain identified categories of confidential information, granting 29 Joint Motion Requesting Entry of a Protective Order. Signed by Magistrate Judge Teresa J. James on 2/22/2023. (hmg) (Entered: 02/22/2023) |
| 02/28/2023 | 31 | MINUTE ENTRY for proceedings held before Magistrate Judge Teresa J. James: SCHEDULING CONFERENCE held on 2/28/2023. Scheduling Order to follow. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (hmg) (Entered: 02/28/2023) |
| 03/06/2023 | 32 | SCHEDULING ORDER: Mediation Notice FILED or Confidential Settlement Report EMAILED to Magistrate Judge by 11/6/2023. Mediation deadline 12/8/2023. Discovery deadline 2/2/2024. Proposed Pretrial Order due by 2/12/2024. Final Pretrial Conference set for 2/15/2024 at 10:00 AM in KC Courtroom 236 (TJJ) before Magistrate Judge Teresa J. James. Dispositive motion deadline 3/8/2024. Jury Trial set for 9/9/2024 at 09:00 AM in KC Courtroom 427 (JAR) before District Judge Julie A. Robinson. Jury trial is estimated to take 10 trial days. Signed by Magistrate Judge Teresa J. James on 3/6/2023. (tvn) (Entered: 03/06/2023) |
| 03/08/2023 | 33 | NOTICE OF INTENT TO ISSUE SUBPOENA by Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS. Subpoena to be issued to Kansas Bureau of Investigation, et al. (Branson, Charles) (Entered: 03/08/2023) |
| 03/10/2023 | 34 | FIRST AMENDED COMPLAINT against All Defendants, filed by Deirdre Coones. (Attachments: # 1 Stipulation pursuant to FRCP 15(a)(2))(Loevy, Joshua) (Entered: 03/10/2023) |
| 03/14/2023 | 35 | NOTICE OF SERVICE by Deirdre Coones of Amended Rule 26(a)(1)(A) Disclosures and accompanying documents. (Loevy, Joshua) (Entered: 03/14/2023) |
| 03/14/2023 | 36 | NOTICE OF SERVICE by Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners of Response to Plaintiff's First Request for Production of Documents. (Cooper, David) (Entered: 03/14/2023) |
| 03/14/2023 | 37 | NOTICE OF SERVICE by Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners of Rule 26(a)(1)(A) Initial Disclosure Documents. (Cooper, David) M (Entered: 03/14/2023) |
| 03/23/2023 | 38 | RETURN OF SERVICE of subpoena filed by Defendants Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS executed upon Kansas Bureau of Investigation on March 21, 2023 by Certified Mail. (Branson, Charles) (Entered: 03/23/2023) |
| 03/23/2023 | 39 | RETURN OF SERVICE of subpoena filed by Defendants Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS executed upon United States Attorney on March 20, 2023 by Certified Mail. (Branson, Charles) (Entered: 03/23/2023) |

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.10

| 03/23/2023 | 40 | RETURN OF SERVICE of subpoena filed by Defendants Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS executed upon Wyandotte County District Attorney on March 20, 2023 by Certified Mail. (Branson, Charles) (Entered: 03/23/2023) |
|---|---|---|
| 03/23/2023 | 41 | RETURN OF SERVICE of subpoena filed by Defendants Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS executed upon Wyandotte County District Attorney on March 20, 2023 by Certified Mail. (Branson, Charles) (Entered: 03/23/2023) |
| 03/23/2023 | 42 | RETURN OF SERVICE of subpoena filed by Defendants Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS executed upon Wyandotte County District Court Clerk on March 20, 2023 by Certified Mail. (Branson, Charles) (Entered: 03/23/2023) |
| 03/23/2023 | 43 | RETURN OF SERVICE of subpoena filed by Defendants Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS executed upon Wyandotte County District Court Clerk on March 20, 2023 by Certified Mail. (Branson, Charles) (Entered: 03/23/2023) |
| 03/24/2023 | 44 | RETURN OF SERVICE of subpoena filed by Defendants Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS executed upon Kris Kobach, Kansas Attorney General on March 20, 2023 by Certified Mail. (Branson, Charles) (Entered: 03/24/2023) |
| 03/24/2023 | 45 | ANSWER to 34 First Amended Complaint by Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners. (Branson, Charles) (Entered: 03/24/2023) |
| 03/29/2023 | 46 | NOTICE OF INTENT TO ISSUE SUBPOENA by Deirdre Coones Subpoenas to be issued to Kansas Bureau of Investigation; Kris W. Kobach; Forensic Medical of Kansas; Erik K. Mitchell; United States Attorney; Wyandotte County District Court Clerk; Mark A. Dupree, Sr. (Loevy, Joshua) (Entered: 03/29/2023) |
| 04/04/2023 | 47 | RETURN OF SERVICE of subpoena filed by Defendants Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS executed upon Forensic Medical of Kansas on March 18, 2023 by Certified Mail. (Branson, Charles) (Entered: 04/04/2023) |
| 04/13/2023 | 48 | WITHDRAWAL OF COUNSEL by Edward James Bain and ENTRY OF APPEARANCE OF SUBSTITUTED COUNSEL by Joni S. Cole on behalf of Unified Government of Wyandotte County/Kansas City, KS. (Cole, Joni) (Entered: 04/13/2023) |
| 04/13/2023 | 49 | WITHDRAWAL OF COUNSEL by Edward James Bain and ENTRY OF APPEARANCE OF SUBSTITUTED COUNSEL by Joni S. Cole on behalf of Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez. (Cole, Joni) (Entered: 04/13/2023) |
| 04/13/2023 | 50 | WITHDRAWAL OF COUNSEL by Edward James Bain and ENTRY OF APPEARANCE OF SUBSTITUTED COUNSEL by Joni S. Cole on behalf of Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners. (Cole, Joni) (Entered: 04/13/2023) |
| 05/03/2023 | 51 | ORDER A Telephone Conference regarding the parties' ESI dispute is set for 5/10/2023 at 10:00 AM by Telephone before Magistrate Judge Teresa J. James. The parties must dial CONFERENCE LINE 1–888–363–4749 and enter ACCESS CODE 4901386. The Court expects counsel to confer in good faith and be prepared to provide the Court with the previously requested ESI summary, including the specific details of any ESI disputes requiring the Court's input. Further, counsel must either confirm that all parties agree an ESI protocol is not needed or submit a proposed ESI Protocol prior to the conference and be prepared to discuss any disagreement concerning its provisions. Signed by Magistrate Judge Teresa J. James on 5/3/2023. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (bmg) (Entered: 05/03/2023) |

2:22-cv-02247-JAR

Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.11

| | | |
|---|---|---|
| | | 05/03/2023) |
| 05/04/2023 | 52 | NOTICE OF SERVICE by Deirdre Coones of First Interrogatories to the County Defendants. (Loevy, Joshua) (Entered: 05/04/2023) |
| 05/04/2023 | 53 | NOTICE OF SERVICE by Deirdre Coones of First Interrogatories to the Individual Defendants. (Loevy, Joshua) (Entered: 05/04/2023) |
| 05/10/2023 | 54 | MINUTE ENTRY and ORDER from proceedings held before Magistrate Judge Teresa J. James: TELEPHONE CONFERENCE held on 5/10/2023. Plaintiff appeared through counsel, Wallace Hilke. Defendants appeared through counsel, Charles Edward Branson and David R. Cooper. Based upon statements of counsel, the Court will not require a formal ESI Protocol. The Court reminded the parties to abide by D. Kan. Rule 37.1(c) regarding the timing for filing discovery–related motions. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (hmg) (Entered: 05/10/2023) |
| 05/12/2023 | 55 | CONSENT MOTION for Extension of Time to File a Motion to Compel by Plaintiff Deirdre Coones. (Motion referred to Magistrate Judge Teresa J. James.) (Loevy, Joshua) (Entered: 05/12/2023) |
| 05/17/2023 | 56 | ORDER granting in part and denying in part 55 Plaintiff's Consent Motion for Extension of Time to File a Motion to Compel. Given Plaintiff's untimely request for extension of time, the Court will only grant a two–week extension of time, to May 31, 2023, in which to file a motion to compel with respect to Defendant's Responses and Objections to Plaintiff's First Set of Requests for Production. Plaintiff has shown diligence in attempting to resolve the issue, as required by D. Kan. Rule 37.1(c). However, the Court again reminds the parties of the 30–day deadline under the same rule and advises such motions should be timely filed in the future. Plaintiff should not anticipate any further extension of this deadline. Signed by Magistrate Judge Teresa J. James on 5/17/2023. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (hmg) (Entered: 05/17/2023) |
| 05/31/2023 | 57 | NOTICE of Rule 29 Stipulation Regarding Discovery by Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners re 53 Notice of Service. (Cooper, David) (Entered: 05/31/2023) |
| 06/20/2023 | 58 | NOTICE by Plaintiff Deirdre Coones of taking the depositions of William Michael on 6/26/2023 and Angela Garrison on 6/27/2023. (Loevy, Joshua) (Entered: 06/20/2023) |
| 06/30/2023 | 59 | NOTICE OF SERVICE by Unified Government of Wyandotte County/Kansas City, KS of First Supplemental Response to Plaintiff's First Request for Production of Documents. (Branson, Charles) (Entered: 06/30/2023) |
| 07/13/2023 | 60 | NOTICE OF WITHDRAWAL OF APPEARANCE by attorney Brian C. Mauldin as to All Defendants. (Mauldin, Brian) (Entered: 07/13/2023) |
| 07/19/2023 | 61 | NOTICE OF INTENT TO ISSUE BUSINESS RECORD SUBPOENA by Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS. Subpoena to be issued to Mark A. Dupree, Sr., Wyandotte County District Attorney. (Branson, Charles) Modified on 7/20/2023 to re–title, wrong event used. (mam) (Entered: 07/19/2023) |
| 07/20/2023 | 62 | NOTICE OF INTENT TO ISSUE SUBPOENA by Deirdre Coones. Subpoena to be issued to Mark A. Dupree, Sr., Wyandotte County District Attorney. (Attachments: # 1 Ex. 1– Subpoena to Produce Documents)(Loevy, Joshua) (Entered: 07/20/2023) |
| 08/01/2023 | 63 | NOTICE OF SERVICE by Unified Government of Wyandotte County/Kansas City, KS of Second Supplemental Response to Plaintiff's Request for Production of Documents. (Branson, Charles) (Entered: 08/01/2023) |
| 08/08/2023 | 64 | RETURN OF SERVICE of subpoena filed by Defendants Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS executed upon Wyandotte County District Attorney on 07–28–2023 by Certified Mail. (Branson, Charles) (Entered: 08/08/2023) |

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.12

| | | |
|---|---|---|
| 08/14/2023 | 65 | NOTICE by Plaintiff Deirdre Coones of taking the depositions of Robert Glenn Rupert, Bryan Block, Susan Brown, Greg Dorsett, Anthony Sanchez and Thaddeaus Jones. (Loevy, Joshua) (Entered: 08/14/2023) |
| 09/25/2023 | 66 | NOTICE by Plaintiff Deirdre Coones of taking deposition of Thaddeaus Jones on 9/28/2023. (Attachments: # 1 Exhibit Subpoena)(Loevy, Joshua) (Entered: 09/25/2023) |
| 09/28/2023 | 67 | NOTICE OF INTENT TO ISSUE BUSINESS RECORD SUBPOENA by Deirdre Coones. Subpoena to be issued to Midwest Regional Credit Union. (Attachments: # 1 Exhibit Subpoena)(Loevy, Joshua) (Entered: 09/28/2023) |
| 10/16/2023 | 68 | AMENDED NOTICE by Plaintiff Deirdre Coones of taking deposition of Edmond Brancart on 11/30/2023. (Attachments: # 1 Ex Subpoena)(Loevy, Joshua) (Entered: 10/16/2023) |
| 11/27/2023 | 69 | NOTICE OF WITHDRAWAL OF APPEARANCE by attorney Joni Cole as to All Defendants. (Cole, Joni) (Entered: 11/27/2023) |
| 12/05/2023 | 70 | MEDIATION MINUTE ORDER The undersigned magistrate judge has reviewed the confidential settlement reports submitted by counsel. Given the parties' stated settlement positions, the Court suspends the 12/8/2023 mediation completion deadline in the scheduling order pending further order of the court. The parties must submit new confidential settlement reports to the undersigned magistrate judge's chambers on February 1, 2024. The Court will review the new reports and revisit the issue of mediation at the February 15, 2024 Final Pretrial Conference. Signed by Magistrate Judge Teresa J. James on 12/5/2023. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(hmg) (Entered: 12/05/2023) |
| 12/11/2023 | 71 | NOTICE by Plaintiff Deirdre Coones of taking deposition of Roger Golubski on 1/11/2024. (Loevy, Joshua) (Entered: 12/11/2023) |
| 12/11/2023 | 72 | CERTIFICATE OF SERVICE of First Requests to Admit to All Defendants by Deirdre Coones. (Loevy, Joshua) (Entered: 12/11/2023) |
| 12/19/2023 | 73 | ENTRY OF APPEARANCE by Daniel E. Kuhn on behalf of Unified Government of Wyandotte County/Kansas City, KS. (Kuhn, Daniel) (Entered: 12/19/2023) |
| 12/22/2023 | 74 | CERTIFICATE OF SERVICE of Additional 26(a)(1) Disclosures by Deirdre Coones. (Loevy, Joshua) (Entered: 12/22/2023) |
| 12/27/2023 | 75 | AGREED MOTION to Enter Protective Order Pertaining to KBI Records by Plaintiff Deirdre Coones. (Motion referred to Magistrate Judge Teresa J. James.) (Loevy, Joshua) (Entered: 12/27/2023) |
| 12/28/2023 | 76 | NOTICE OF SERVICE by Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners of Supplemental Disclosures pursuant to Rule 26(a)(1)(A). (Cooper, David) (Entered: 12/28/2023) |
| 12/28/2023 | 77 | NOTICE OF SERVICE by Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners of Interrogatories and Request for Production of Documents to Plaintiff. (Cooper, David) (Entered: 12/28/2023) |
| 12/28/2023 | 78 | PROTECTIVE ORDER PERTAINING TO KBI RECORDS granting 75 Agreed Motion to Enter Protective Order Pertaining to KBI Records. Signed by Magistrate Judge Teresa J. James on 12/28/2023. (hmg) (Entered: 12/28/2023) |
| 01/02/2024 | 79 | RETURN OF SERVICE of subpoena filed by Plaintiff Deirdre Coones executed upon Terry Ziegler on 12/26/23 by Personal Service. (Loevy, Joshua) (Entered: 01/02/2024) |
| 01/02/2024 | 80 | NOTICE OF SERVICE by Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners of Request for Admissions to Plaintiff. (Branson, Charles) (Entered: 01/02/2024) |

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.13

| 01/11/2024 | 81 | NOTICE by Defendants Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners of taking deposition of David L. Harvey on January 15, 2024. (Attachments: # 1 Subpoena – David Harvey)(Branson, Charles) (Entered: 01/11/2024) |
|---|---|---|
| 01/11/2024 | 82 | NOTICE by Defendants Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners of taking deposition of Susan Roe on January 23, 2024. (Attachments: # 1 Subpoena – Susan Roe)(Branson, Charles) (Entered: 01/11/2024) |
| 01/11/2024 | 83 | NOTICE by Defendants Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners of taking deposition of David Balash on January 26, 2024. (Attachments: # 1 Subpoena – David Balash)(Branson, Charles) (Entered: 01/11/2024) |
| 01/11/2024 | 84 | NOTICE OF SERVICE by Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners of Responses to Plaintiff's First Requests for Admission. (Branson, Charles) (Entered: 01/11/2024) |
| 01/12/2024 | 85 | NOTICE OF SERVICE by Unified Government of Wyandotte County/Kansas City, KS of Third Supplemental Response to Plaintiff's Request for Production of Documents. (Branson, Charles) (Entered: 01/12/2024) |
| 01/29/2024 | 86 | NOTICE by Defendants Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners of taking deposition of Erik Mitchell on February 7, 2024. (Attachments: # 1 Subpoena – Erik Mitchell)(Branson, Charles) (Entered: 01/29/2024) |
| 01/29/2024 | 87 | AMENDED NOTICE by Defendants Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners of taking deposition of Susan Roe on February 20, 2024. (Branson, Charles) (Entered: 01/29/2024) |
| 01/30/2024 | 88 | NOTICE OF SERVICE by Deirdre Coones of Responses to Defendants' First Requests for Production, Defendants' First Interrogatories, and Defendants' First Requests for Admissions. (Loevy, Joshua) (Entered: 01/30/2024) |
| 02/01/2024 | 89 | NOTICE OF SERVICE by Unified Government of Wyandotte County/Kansas City, KS of Fourth Supplemental Response to Plaintiff's First RFP. (Branson, Charles) (Entered: 02/01/2024) |
| 02/05/2024 | 90 | NOTICE OF SERVICE by Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners of Fifth Supplemental Response to Plaintiff's First Request for Production of Documents. (Branson, Charles) (Entered: 02/05/2024) |
| 02/07/2024 | 91 | NOTICE by Defendants Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners of taking the continued deposition of Erik Mitchell on 2/14/2024. (Branson, Charles) (Entered: 02/07/2024) |
| 02/09/2024 | 92 | OMNIBUS NOTICE OF SERVICE by Unified Government of Wyandotte County/Kansas City, KS of documents responsive to Plaintiff's First Request for Production. (Branson, Charles) (Entered: 02/09/2024) |
| 02/13/2024 | 93 | ORDER SETTING FINAL PRETRIAL CONFERENCE At Plaintiff's request, the Final Pretrial Conference set for 2/15/2024 at 10:00 AM will now take place by Telephone before Magistrate Judge Teresa J. James. The parties must dial |

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.14

| | | |
|---|---|---|
| | | CONFERENCE LINE 1–888–363–4749 and enter ACCESS CODE 4901386 to join the conference. Signed by Magistrate Judge Teresa J. James on 2/13/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(hmg) (Entered: 02/13/2024) |
| 02/15/2024 | 94 | MINUTE ENTRY for proceedings held before Magistrate Judge Teresa J. James: FINAL PRETRIAL CONFERENCE held on 2/15/2024. Pretrial Order to follow. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (hmg) (Entered: 02/15/2024) |
| 02/21/2024 | 95 | CORRECTED OMNIBUS NOTICE OF SERVICE by Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners of Documents Responsive to Plaintiff's First Request for Production. (Branson, Charles) (Entered: 02/21/2024) |
| 02/26/2024 | 96 | PRETRIAL ORDER ENTERED: Dispositive motion deadline 3/8/2024. Jury Trial set for 9/9/2024 at 09:00 AM in KC Courtroom 427 (JAR) before District Judge Julie A. Robinson. Estimated trial time 10 Days. Signed by Magistrate Judge Teresa J. James on 2/26/2024. (hmg) (Entered: 02/26/2024) |
| 03/01/2024 | 97 | UNOPPOSED MOTION for Extension of Dispositive Motions Deadline by Defendants Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners. (Cooper, David) (Entered: 03/01/2024) |
| 03/01/2024 | 98 | ORDER granting Defendant's 97 Unopposed Motion for Extension of Time to File. Dispositive motion and Daubert motions deadline is extended to 3/15/2024. Plaintiff's response deadline is extended by one additional week. The reply deadline is also extended by one additional week. Signed by District Judge Julie A. Robinson on 3/1/24. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ss) (Entered: 03/01/2024) |
| 03/12/2024 | 99 | MOTION for Leave to Exceed Page Limit for Summary Judgment Brief by Defendants Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners. (Cooper, David) (Entered: 03/12/2024) |
| 03/13/2024 | 100 | ORDER denying 99 Motion for Leave to File Excess Pages. Counsel is reminded the page limit for Summary Judgment motions is 40 pages. Signed by District Judge Julie A. Robinson on 3/13/24. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ss) (Entered: 03/13/2024) |
| 03/15/2024 | 101 | MOTION for Summary Judgment by Defendants Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners. (Attachments: # 1 Index of Exhibits, # 2 02 Investigation File UG–1790–1982_Reduced (REDACTED_Reduced), # 3 03 04.08.08 Arrest Affidavit and Warrant, # 4 04 04.09.08 Information, # 5 05 04.10.08 Amended Information PL 004241–PL 004241, # 6 06 06.27.08 Transcript of Preliminary Hearing 08cr594, # 7 07 01.20.09 08cr594 Trial DAY 1, # 8 08 01.21.09 08cr594 Trial DAY 2 TESTIMONY, # 9 09 01.21.09 08cr594 Trial DAY 2, # 10 10 01.22.09 08cr594 Trial DAY 3, # 11 11 01.23.09 08cr594 Trial DAY 4, # 12 12 12–14–09 08cr594 MOTION HEARING, # 13 13 12–14–09 08cr594 Trial DAY 1, # 14 14 12–15–09 08cr594 Trial DAY 2, # 15 15 12–16–09 08cr594 Trial DAY 3, # 16 16 12–17–09 08cr594 Trial DAY 4, # 17 17 1507 Transcript V1 11–2–2020, # 18 18 1507 Transcript V2 11–3–2020, # 19 19 1507 Transcript V3 11–4–2020, # 20 20 1507 Transcript V4 11–5–2020, # 21 21 Search Warrant (house–computer) 04.07.08 PL 004230–4238, # 22 22 Search Warrant (van), # 23 23 Search Warrant Pete DNA, # 24 24 Mitchell 05 Report of Death Carl UG–081613, # 25 25 Mitchell 06 Report of Death Kathleen UG–081615, # 26 26 Mitchell 14 L08–04–026 WY – final report_Carl, # 27 27 Mitchell 15 L08–04–027 WY – FINAL REPORT_Kathleen, # 28 28 Rupert Interview Transcript (2), # 29 29 Riddle Affidavit re GSR testing, # 30 30 Forensic Lab Report, Apr 18, 2019 GSR Testing, # 31 31 2006 Elder Abuse Report UG–003157_reduced 2–22–32.4906, # Elder |

Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.15

| | | |
|---|---|---|
| | | Abuse Property ReportUG–003029, # <u>33</u> 33 2006 Elder Abuse Checks (1) UG–003036_reduced, # <u>34</u> 34 2006 Elder Abuse Checks (1) UG–003092_reduced, # <u>35</u> 35 Property Report re Checks, # <u>36</u> 36 KBI Report on Handwriting, # <u>37</u> 37 Royce Smith Report 4–19–07 Barber Emerson_002512–2513, # <u>38</u> 38 Royce Smith Report 5–29–07 Barber Emerson_002514–2515, # <u>39</u> 39 Brancart 4–7–08 Email, # <u>40</u> 40 Brancart motion in limine –– Kathy's statements about Quiktrip, # <u>41</u> 41 Journal Entry Granting New Trial 08cr594, # <u>42</u> 42 KCK SOP May 2004, # <u>43</u> 43 GO 2002 40.5, # <u>44</u> 44 Property General Order 80.02, # <u>45</u> 45 80–03 Reporting Procedures, # <u>46</u> 46 80–04 Addendum Report 2, # <u>47</u> 47 KCKC GO 1.3, # <u>48</u> 48 January 24, 2008 Criminal Investigation SOP, # <u>49</u> 49 FOP 4 MOU, # <u>50</u> 50 Block Deposition Excerpts, # <u>51</u> 51 Brancart Deposition Excerpts, # <u>52</u> 52 Brown Deposition Excerpts, # <u>53</u> 53 Dorsett Deposition Excerpts, # <u>54</u> 54 Garrison Deposition Excerpts, # <u>55</u> 55 Jones Deposition Excerpts, # <u>56</u> 56 Meyer 30b6 Deposition Excerpts, # <u>57</u> 57 Michael 19CV727 Deposition Excerpts, # <u>58</u> 58 Michael Deposition Excerpts, # <u>59</u> 59 Mitchell (vol 2) Deposition Excerpts, # <u>60</u> 60 Sanchez Deposition Excerpts)(Cooper, David) (Entered: 03/15/2024) |
| 03/15/2024 | <u>102</u> | MOTION to Exclude Testimony from Balash, Harvey, and Roe by Defendants Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners. (Attachments: # <u>1</u> Exhibit A Balash Report, # <u>2</u> Exhibit B Balash Deposition, # <u>3</u> Exhibit C Harvey Final Report, # <u>4</u> Exhibit D Harvey Deposition, # <u>5</u> Exhibit E Roe Deposition) (Cooper, David) (Entered: 03/15/2024) |
| 03/29/2024 | <u>103</u> | UNOPPOSED MOTION for Extension of Dispositive Motions Response Deadline by Plaintiff Deirdre Coones. (Loevy, Joshua) Modified on 3/29/2024 to re–title. (mam) (Entered: 03/29/2024) |
| 03/29/2024 | 104 | ORDER granting <u>103</u> Plaintiff's Unopposed Motion for Extension of Time to File Response as to <u>101</u> Motion for Summary Judgment. Response deadline extended to 4/12/2024. Signed by District Judge Julie A. Robinson on 3/29/24. (This is a TEXT ENTRY ONLY. There is no .pdf document associated with this entry.) (ss) (Entered: 03/29/2024) |
| 04/12/2024 | <u>105</u> | RESPONSE by Plaintiff Deirdre Coones re <u>102</u> Motion to Exclude Testimony from Balash, Harvey, and Roe. (Attachments: # <u>1</u> Ex. A)(Loevy, Joshua) (Entered: 04/12/2024) |
| 04/12/2024 | <u>106</u> | RESPONSE IN OPPOSITION by Plaintiff Deirdre Coones re <u>101</u> Motion for Summary Judgment. (Attachments: # <u>1</u> Exhibit List, # <u>2</u> Exhibit 1– Michael Dep, # <u>3</u> Exhibit 2– Garrison Dep, # <u>4</u> Exhibit 3– Dorsett Dep, # <u>5</u> Exhibit 4–Block Report, # <u>6</u> Exhibit 5–Michael Affidavit, # <u>7</u> Exhibit 6–Motion in Limine, # <u>8</u> Exhibit 7–Investigative Report, # <u>9</u> Exhibit 8–Hadley Statement, # <u>10</u> Exhibit 9– Michael Testimony, # <u>11</u> Exhibit 10– Michael Dep, # <u>12</u> Exhibit 11– Kalb Testimony, # <u>13</u> Exhibit 12– Balash Report, # <u>14</u> Exhibit 13– Brancart Email, # <u>15</u> Exhibit 14– KBI GSI Report, # <u>16</u> Exhibit 15– Jones Testimony, # <u>17</u> Exhibit 16– Suspicious Activity Report, # <u>18</u> Exhibit 17– Jones Dep, # <u>19</u> Exhibit 18– Brancart Dep, # <u>20</u> Exhibit 19– Brancart Letter, # <u>21</u> Exhibit 20– Block Testimony, # <u>22</u> Exhibit 21– Complaint Classification and Categories, # <u>23</u> Exhibit 22– Dee Coones Declaration, # <u>24</u> Exhibit 23– Mitchell Declaration, # <u>25</u> Exhibit 24– Harvey Final Report, # <u>26</u> Exhibit 25– KBI Lab Report, # <u>27</u> Exhibit 26– Investigative Addendum, # <u>28</u> Exhibit 27– Coones Testimony, # <u>29</u> Exhibit 28– Certificate of Innocence, # <u>30</u> Exhibit 29– 30(b)(6) Depositions, # <u>31</u> Exhibit 30– Discipline Annual Summaries, # <u>32</u> Exhibit 31– Zeigler 2024 Dep, # <u>33</u> Exhibit 32– Email, # <u>34</u> Exhibit 33– Kobe Dep, # <u>35</u> Exhibit 34– Cover Page, # <u>36</u> Exhibit 35– Wilson Affidavit, # <u>37</u> Exhibit 36– Dean–Martin Affidavit, # <u>38</u> Exhibit 37– McIntyre Affidavit, # <u>39</u> Exhibit 38– Peterson Affidavit, # <u>40</u> Exhibit 39– Martin Dep, # <u>41</u> Exhibit 40– Miller Dep, # <u>42</u> Exhibit 41– Golubski Dep, # <u>43</u> Exhibit 42– Golubski Jacket, # <u>44</u> Exhibit 43– Zeigler 2021 Dep, # <u>45</u> Exhibit 44– Memo, # <u>46</u> Exhibit 45– Indictment, # <u>47</u> Exhibit 46– Block Dep, # <u>48</u> Exhibit 47– Seifert Affidavit, # <u>49</u> Exhibit 48– Indictment)(Loevy, Joshua) (Entered: 04/12/2024) |
| 04/12/2024 | <u>107</u> | SEALED EXHIBIT 34 IN SUPPORT of <u>106</u> Response to <u>101</u> Motion for Summary Judgment by Plaintiff Deirdre Coones. (Loevy, Joshua) Modified on 4/19/2024 to remove the provisional designation per 110, exhibit 34 remains sealed. (mam) |

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.16

| | | |
|---|---|---|
| | | (Entered: 04/12/2024) |
| 04/12/2024 | 108 | NOTICE OF PROPOSED SEALED RECORD by Deirdre Coones re 107 Exhibit 34 in Support of 106 Response to 101 Motion for Summary Judgment. (Loevy, Joshua) (Entered: 04/12/2024) |
| 04/18/2024 | 109 | AGREED MOTION to Seal Document by Plaintiff Deirdre Coones (Doc. 106–35, Exhibit 34 to 106 Plaintiff's Response to Defendants' 101 Motion for Summary Judgment). (Loevy, Joshua) (Entered: 04/18/2024) |
| 04/19/2024 | 110 | ORDER granting 109 Agreed Motion to Seal re 106 Plaintiff's Response to Defendant's Motion for Summary Judgment. The motion requested that Exhibit 34, provisionally filed under seal, remain under seal. The Court finds that the confidentiality interest to be protected by sealing this document outweighs the presumption of public access. The motion is therefore granted. Ex. 34, provisionally filed under seal at Doc. 107, shall remain under seal and the clerk is directed to remove the provisional designation from the docket entry. Signed by District Judge Julie A. Robinson on 4/19/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ams) (Entered: 04/19/2024) |
| 04/22/2024 | 111 | UNOPPOSED MOTION for Extension of Time to File Reply as to 101 Motion for Summary Judgment by Defendants Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners. (Cooper, David) Modified on 4/23/2024 to correct docket text and link to correct motion. (kas) (Entered: 04/22/2024) |
| 04/23/2024 | 112 | ORDER granting 111 Defendant's Unopposed Motion for Extension of Time to File Reply as to 101 Motion for Summary Judgment. Reply deadline extended to 5/3/2024. Signed by District Judge Julie A. Robinson on 4/23/24. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ss) Modified on 4/23/2024 to correct docket text and link to correct motion. (kas) (Entered: 04/23/2024) |
| 04/30/2024 | 113 | MOTION for Leave to Exceed Page Limitation by Defendants Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners. (Cooper, David) (Entered: 04/30/2024) |
| 05/01/2024 | 114 | ORDER granting Defendant's 113 Motion for Leave to File Excess Pages. Defendants' reply shall consist of 20 pages total. Signed by District Judge Julie A. Robinson on 5/1/24. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ss) (Entered: 05/01/2024) |
| 05/03/2024 | 115 | REPLY TO RESPONSE TO MOTION by Defendants Bryan Block, Susan Brown, G. Dorsett, Angela Garrison, William Michael, (fnu) Sanchez, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners re 101 Motion for Summary Judgment. (Attachments: # 1 01 Index of Exhibit for Reply, # 2 02 Dorsett Deposition Excerpts, # 3 03 Ex 49 Photo of KS and gun, # 4 04 Brancart Deposition Excerpts, # 5 05 Garrison Deposition Excerpt, # 6 06 Michael Deposition Excerpts, # 7 07 Balash Deposition Excerpts, # 8 08 Brown Deposition Excerpts, # 9 09 Block Deposition Excerpts)(Cooper, David) (Entered: 05/03/2024) |
| 05/20/2024 | 116 | NOTICE of Hearing: **THIS IS AN OFFICIAL NOTICE FOR THIS HEARING.** (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Status Conference set for 5/23/2024 at 3:30 PM by Telephone. The parties are to dial the JAR – CONFERENCE LINE at 1–888–363–4749 and use ACCESS CODE 4697748 to join the conference before District Judge Julie A. Robinson. (ss) (Entered: 05/20/2024) |
| 05/23/2024 | 117 | MINUTE ENTRY for proceedings held before District Judge Julie A. Robinson: TELEPHONE CONFERENCE held on 5/23/2024. On the Court's own motion, and by agreement of the parties, the Jury Trial is rescheduled to begin on 11/4/2024 at 9:00 AM in KC Courtroom 427 (JAR) before District Judge Julie A. Robinson. (Court Reporter Dani Murray.) (This is a TEXT ENTRY ONLY. There is no.pdf document |

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.17

| | | associated with this entry.) (ss) (Entered: 05/23/2024) |
|---|---|---|
| 06/26/2024 | 118 | ORDER: Plaintiff may file a sur–reply of no more than five pages on or before Monday, July 1, 2024. Specifically, the sur–reply should address the following arguments in Defendants' reply Doc. 115 : (1) Defendants' arguments regarding gunshot residue; and (2) Defendants' contention that Block's belief Kathleen forged checks is inadmissible speculation. Signed by District Judge Julie A. Robinson on 6/26/24. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(ss) (Entered: 06/26/2024) |
| 07/01/2024 | 119 | SURREPLY by Plaintiff Deirdre Coones re 101 Motion for Summary Judgment. (Attachments: # 1 Exhibit A– Defendants' Rule 26 Disclosures)(Loevy, Joshua) (Entered: 07/01/2024) |
| 07/31/2024 | 120 | TRIAL ORDER: SEE ORDER FOR ADDITIONAL DEADLINE INFORMATION. Estimated trial time 10 days. Jury Trial set for 11/4/2024 at 09:00 AM in KC Courtroom 427 (JAR) before District Judge Julie A. Robinson. Signed by District Judge Julie A. Robinson on July 31, 2024. (mls) (Entered: 07/31/2024) |
| 09/30/2024 | 121 | MEMORANDUM AND ORDER granting in part and denying in part 101 Motion for Summary Judgment. Summary judgment is granted as to: (1) the § 1983 individual–capacity claims against Defendants Block and Brown on Count I; (2) the § 1983 individual–capacity claims in Counts III and IV; (2) the § 1983 official–capacity claim in Count IV; and (3) the state law claims asserted in Counts V and X. Defendants' motion for summary judgment is otherwise denied. All claims against Defendants Dorsett and Sanchez are dismissed; the malicious prosecution claims (Counts II and VI) against Defendants Block and Brown are dismissed, and the negligent infliction of emotional distress claim (Count VIII) is dismissed. Signed by District Judge Julie A. Robinson on 9/30/2024. (ca) (Additional attachment(s) added on 10/1/2024: # 1 Corrected Memorandum and Order) (mam). (Entered: 09/30/2024) |
| 10/01/2024 | 122 | DOCKET ANNOTATION re 121 : A corrected version of the Memorandum and Order is attached for noticing purposes. (mam) (Entered: 10/01/2024) |
| 10/01/2024 | 123 | NOTICE OF INTERLOCUTORY APPEAL as to 121 Memorandum and Order by Defendants Bryan Block, Susan Brown, Angela Garrison, William Michael, Unified Government of Wyandotte County/Kansas City, KS, Unified Government of Wyandotte County/Kansas City, KS Board of County Commissioners. Filing fee $605, Internet Payment Receipt Number AKSDC–6479862. (Cooper, David) (Entered: 10/01/2024) |

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.18

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DEIRDRE COONES, Executor of the Estate of
Olin Coones,

       Plaintiff,

       v.

UNIFIED GOVERNMENT OF WYANDOTTE
COUNTY/KANSAS CITY, KANSAS BOARD
OF COUNTY COMMISSIONERS, et al.,

       Defendants.

Case No. 22-CV-2447-JAR

## MEMORANDUM AND ORDER

Plaintiff Deirdre Coones, as Executor of the Estate of Olin Coones, brings this action asserting federal civil rights claims and state law tort claims against Defendants Board Of County Commissioners of the Unified Government of Wyandotte County and Kansas City, Kansas ("Board"); Unified Government of Wyandotte County and Kansas City, Kansas ("Unified Government"); William Michael; Angela Garrison; Sergeant G. Dorsett; Bryan Block; Susan Brown; and Detective Sanchez. Plaintiff's claims arise out of her deceased husband, Olin Coones' wrongful conviction for murder.

Plaintiff alleges the following claims for relief under 42 U.S.C. § 1983 against Defendants in their individual and official capacities: (1) Count I—Due Process Violation based on fabricating and suppressing evidence; (2) Count II—Malicious Prosecution and Unlawful Pretrial Detention; (3) Count III—Failure to Intervene; and (4) Count IV—Conspiracy. Plaintiff alleges the following claims under Kansas law: (1) Count V—Indemnification; (2) Count VI— Malicious Prosecution; (3) Count VII—Intentional or Reckless Infliction of Emotional Distress;

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.19

(4) Count VIII—Negligent Infliction of Emotional Distress; (5) Count IX—Civil Conspiracy; and (6) Count X—respondeat superior liability against the Board and the Unified Government.

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 101).[1] The motion has been fully briefed, and the Court is prepared to rule. Plaintiff's response to the summary judgment motion concedes that all claims can be dismissed against Defendants Dorsett and Sanchez, that her malicious prosecution claims against Defendants Block and Brown (Counts II and VI) can be dismissed, and that her negligent infliction of emotional distress claim can be dismissed in its entirety (Count VIII). Thus, these parties and claims are hereby dismissed. As described in more detail below, the Court grants in part and denies in part Defendants' motion for summary judgment on the remaining claims.

## I.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[2] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[3] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[4] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[5] An issue

---

[1] The Court will issue a separate ruling on Defendants' pending Motion to Exclude Testimony from Balash, Harvey, and Roe (Doc. 102). This Memorandum and Order does not rely upon the findings of these experts.

[2] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[3] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[4] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[5] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.20

of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[6]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[7]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[8]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[9]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[10]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[11]  The facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[12]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of

---

[6] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[7] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[8] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[9] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[10] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[11] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[12] *Adams*, 233 F.3d at 1246.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.21

every action."[13]

## II.     Facts

Determining the uncontroverted facts in this matter was more difficult than necessary. Neither party specifically controverted statements of fact in separately numbered paragraphs as required by Fed. R. Civ. P. 56(c)(1) and D. Kan. Rule 56.1.  Defendants' opening brief was in compliance.  In the response, Plaintiff presented her own statements of fact and then, in some instances, indicated which of Defendants' paragraphs each of her own purportedly controverts. In the reply, Defendants responded to only some of Plaintiff's statements of fact, and provided lengthy narrative statements of their own versions of the facts, rather than succinctly pointing out each dispute.

The Court has credited the parties' specific references to statements of fact in the response and reply to determine what is truly controverted, but to the extent Plaintiff failed to specifically reference Defendants' statements of fact by paragraph number, and such facts are material to the issues before the Court and supported by the record, the Court deems them uncontroverted.[14]  Similarly, to the extent Defendants do not directly controvert Plaintiff's additional statements of fact, beyond simply narrating their own version of the same facts, the Court deems those facts either uncontroverted or views them in the light most favorable to Plaintiff.[15]

---

[13] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[14] *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion.").

[15] *See* D. Kan. R. 56.1(b)(2), (c) ("All material facts set forth [in the non-moving party's statement of additional material facts] will be deemed admitted for the purpose of summary judgment unless specifically controverted.").

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.22

Additionally, the Court sustains evidentiary objections to evidence offered through affidavits and deposition testimony that would not be admissible at trial, including evidence that is not relevant,[16] and evidence that is not based on the witness's personal knowledge.[17] The Court disregards legal arguments and conclusions, "statements of mere belief,"[18] and conclusory allegations without specific supporting facts.[19] The Court will not separately address each and every objection raised by the parties, although it notes some specific rulings where necessary throughout this opinion.

With this guidance in mind, the following material facts are either uncontroverted, stipulated to, or viewed in the light most favorable to Plaintiff.

In April 2008, Olin "Pete" Coones ("Mr. Coones"), a retired mail carrier, was 50 years old and living with his wife, Plaintiff Deirdre Coones, at 640 South 81st Street, in Kansas City, Kansas.

In 2000, Mr. Coones' grandfather, Olin Coones ("Senior"), and his mother, Patsy Van Vleck ("Patsy"), lived in a house they owned together on Parallel Parkway. At some point before 2004, Kathleen Schroll ("Kathleen") began working as a housekeeper for Patsy and Senior at the Parallel Parkway house. On January 15, 2007, Senior died. Kathleen and Mr. Coones litigated against one another regarding Senior's life insurance proceeds. Kathleen told her daughter, Blair Hadley ("Blair"), that the lawsuit with Mr. Coones was over $182,000.

---

[16] Fed. R. Evid. 401.

[17] Fed. R. Evid. 602.

[18] *Argo v. Blue Cross Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (quoting *Tavery v. United States*, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994)).

[19] *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005) (citations omitted).

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.23

### *April 7, 2008 Investigation*

On April 7, 2008, at approximately 2:20 a.m., Kathleen called her mother, Elizabeth Horton ("Elizabeth"), and told her "Pete" was there trying to kill her husband, Carl Schroll ("Carl"), that he said he was going to kill her, and that he had covered his tracks so they would not know it was him. The line then went dead. Elizabeth relayed the information to her son Randy Horton ("Randy"), who lived with her. Randy called 911 at 2:23 a.m. and reported that Mr. Coones was at 47 South 78th Street, the Schrolls' address, trying to kill his sister and her husband.

Kansas City, Kansas Police Officers Sophia Barajas and P. McCallop responded to Kathleen's house at 47 South 78th Street on the morning of April 7, 2008, and found that the screen door was shut but the interior door was open about three or four inches. The officers found Kathleen's body lying face-up in the living room with a silver revolver near her left foot and a cordless phone near her right foot. She sustained a single gunshot to the back of her head. Kathleen was dressed in nurse's scrubs and with jewelry and her glasses on when she was found; her purse was sitting open on the back of her living-room couch. The officers found Carl's body in a bedroom, sprawled across the bed with gunshot wounds to his left chest and left abdomen, and an injury to his head. There were no signs of forced entry or a struggle.

Field Supervisor Greg Dorsett, after learning that Officers Barajas and McCallop found the Schrolls' bodies, went to the scene. Detective Stuart Littlefield responded to the scene at about 3:00 a.m. Detectives William Michael and Angela Garrison, the lead detectives on the case, were called out to the scene at approximately 3:15 a.m.

Elizabeth and Randy eventually arrived at the crime scene. Elizabeth told Officer Barajas that the suspect's name was Pete Coones, and that Kathleen had called her hysterical at 2:18 a.m.

6

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.24

and told her, "He's getting us. He's trying to kill Carl and said he's going to get me, and he said he gots his tracks covered where they're not going to find out it's him."[20]

Detective Littlefield and Deputy District Attorney ("Deputy D.A.") Edmond Brancart secured a search warrant for the crime scene. Detective Littlefield returned to the scene with the search warrant and assisted the Crime Scene Investigation Unit ("CSIU") in processing the house for evidence while Detectives Michael and Garrison interviewed witnesses. Sergeant Dorsett radioed to dispatch and reported that the deaths appeared to be a "possible murder-suicide." Officer Harper took a video of the crime scene.

Detectives Michael and Garrison took Elizabeth's recorded statement. Among other things, Elizabeth told them (1) about Kathleen's phone call before the murder; (2) that "Pete" was Pete Coones; (3) that Kathleen had been a caregiver to Pete's father; (4) that there was a life insurance policy "tied up in court" that Mr. Coones was contesting; (5) that Mr. Coones had harassed Kathleen since he found out he was not the beneficiary of Senior's estate and insurance policies; (6) that Kathleen had made police reports concerning burglaries of the house she inherited from Senior and that Kathleen believed Mr. Coones was the suspect; and (7) that Kathleen had filed numerous police reports against Mr. Coones for stalking and harassment.

While Detective Garrison considered the possibility of a murder-suicide while en route to the scene, once she arrived and saw Kathleen's body, and then learned of the phone call Kathleen made to Elizabeth, she believed Kathleen was murdered. Detective Michael testified in his deposition that he did not try to discount a murder-suicide theory and that he believed he was dealing with a double-murder. Detective Michael also testified that if he was investigating a

---

[20] Doc. 101-2 at 16. Plaintiff asserts that Elizabeth reported she did not hear any sounds in the background during this call. However, Plaintiff's citation to Detective Michael's deposition testimony is to a page number not included in the record, so the Court disregards this statement of fact. *See* Doc. 106 ¶ 56 (citing Ex. 1 (Michael Dep.) at 186:5–22, attached as Doc. 106-2).

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.25

potential suicide, he would look at reasons why a person might kill themselves, including financial trouble or imminent criminal prosecution.

Detective Michael's investigative report indicates that the detectives next asked Kathleen's brother, Scott Horton ("Scott"), to accompany them to Mr. Coones' home. Scott told them that Mr. Coones drove a brown van. They stopped halfway down the street, which was a cul de sac, and Detective Michael walked down to the address Scott gave them. Detective Michael ran the vehicle tags for the only two vehicles he saw in the driveway, but neither was registered to Mr. Coones. He could not see all the way around to the west side of the house. Seeing no brown van at the residence, they left and returned to the crime scene. He did not document or photograph his vantage point, despite admitting later that he should have done so.

At approximately 6:35 a.m., the detectives took Blair's recorded statement. Blair reported that Kathleen told her Mr. Coones had threatened Kathleen at a QuikTrip gas station after work on April 5, 2008, when Kathleen was walking out and Mr. Coones was walking in. According to Blair, Mr. Coones was driving "the van," and told Kathleen: "You're not going to be spending my dad's money no more, bitch."[21] Detectives Michael and Garrison reviewed the QuikTrip surveillance video and determined that neither Mr. Coones nor Kathleen were shown on video. The detectives did not document that they went to the QuikTrip, that they reviewed the surveillance footage, or that the footage did not show either Kathleen or Mr. Coones at the relevant date and time. Nor did the detectives inventory the surveillance video. This evidence should have been documented under their normal practice.

Detective Michael's report does not indicate that Blair told the detectives that the Schrolls were having marital tension. But the report does state that Blair told them that Kathleen

---

[21] Doc. 101-2 at 40.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.26

said her gun was "Pat's gun." According to Kansas City, Kansas Police Department ("KCKPD") reports, Patsy had reported her gun stolen on February 23, 2000.

### Mr. Coones' Arrest

Later that morning, police received information that Mr. Coones was in his brown van, preparing to leave his house on 81st and Kansas Avenue. Detectives Michael, Garrison, and Dorsett drove to the house and arrested Mr. Coones around 7:00 am on April 7, 2008.

Detectives Michael and Garrison interviewed Mr. Coones' children, Melody and Ben Coones. Melody told them that her dad was downstairs when she went to sleep the night before. She did not know if her father left the house between 12:30 a.m. and 6:30 a.m. when she was asleep. Similarly, Ben said that his father was downstairs when he went to bed at 11:30 pm and was home when he woke up at 6:30 a.m. They both told the detectives that their father was involved in a legal dispute with Kathleen over about $100,000, and that Kathleen had forged checks on Senior's bank account. Ben told detectives that his father's brown van had been parked at their home and that it would have been visible from the front of the house, but not from the street.

Detectives interviewed Mr. Coones at about 10:00 a.m. that morning after reading him his *Miranda* rights. Mr. Coones first provided details about his lawsuit against Kathleen. He told them that Detectives Block and Brown had investigated the alleged theft or forgery by Kathleen on Senior's bank account. He told the detectives that Kathleen lived directly across the street from the school his children attended, and identified for the detectives the lawyers involved in the civil matter. Mr. Coones denied that there was any confrontation on April 5, 2008 at the QuikTrip, and told the detectives he had been home from 11:15 p.m. on April 6 until he left to take his children to the bus stop that next morning, at which time he was arrested. Mr.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.27

Coones said that his van had been parked behind the house to hide it in order to avoid repossession. Mr. Coones told the detectives he had never been inside the Schrolls' house, that "it wasn't me," and "prove it."[22] He also told investigators to keep investigating. Mr. Coones then requested an attorney and the interview terminated.

Next, the detectives took Melody and Ben home and interviewed Mr. Coones' wife, Plaintiff Deirdre Coones. Plaintiff told them that Mr. Coones went to bed at about 11:30 p.m., and was home when her alarm went off at 6:15 a.m. She told the detectives that Mr. Coones' van was parked in the back that night and could not be accessed without moving her daughter's boyfriend's van.

At 9:34 a.m. on April 7, Deputy D.A. Brancart emailed Detective Garrison information about a prior investigation involving Mr. Coones, Senior, and Kathleen. Detective Bryan Block, who worked in financial crimes, investigated Kathleen based on allegations by Senior and Mr. Coones of elder abuse before Senior's death. Deputy D.A. Brancart relayed that Kathleen had been taking care of Senior, and that "[s]he used his credit to buy QVC purses and women's shoes. She paid some of her own bills. She wrote a check to herself from [Senior] for her birthday, for something like $1,000. She converted [Senior's] Jeep over to her own ownership."[23] Deputy D.A. Brancart told Detective Garrison that Mr. Coones and Senior had consulted with him about the suspected elder abuse before Senior's death. Deputy D.A. Brancart advised that the last information he had was that Detective Block was looking at her bank records. The case reports from the elder abuse investigation were included in the investigative

---

[22] Doc. 106-8 at 8.

[23] Doc. 101-39.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.28

file for the Schroll death investigation, including property reports logging 120 pages of checks and exemplars of Senior's signatures.

After Mr. Coones' arrest, police searched his home pursuant to a search warrant. The search of Mr. Coones' home did not reveal any bloody clothing, firearms, or ammunition. Officer Stanley Isaacson and Detective Michael searched Mr. Coones' van for fingerprints, bullets, DNA, blood, and tissue. Officer Isaacson swabbed the van's steering wheel for gunshot residue ("GSR"). Officer William Barajas swabbed Carl's and Kathleen's hands for gunshot residue. According to the investigative report, this was a "binary" GSR kit.[24]

CSI Officer Harper swabbed the silver revolver for DNA. Only Kathleen's DNA was found on the revolver—on both the barrel and the trigger. No DNA or fingerprint evidence from Mr. Coones was found at the Schrolls' house following their deaths.

It was the detectives' job to ensure that the evidence collected was tested by the crime lab. Detective Michael testified at his deposition that, as a homicide detective, he would be expected to either know what testing was possible, or find out by asking someone in the CSIU. But Detective Garrison testified at her deposition that while the detectives may have determined whether the lab tests were to stay "in house" or go to a Kansas Bureau of Investigation ("KBI") crime lab, she has never actually sent a GSR test to the KBI. According to the investigative file, the CSIU put the GSR test kit "in property."[25]

---

[24] Doc. 101-2 at 96.

[25] *Id.* at 92. The Court is mindful that Defendants cited to an affidavit in the reply brief from Harold C. Riddle, a forensic scientist with the KBI, who states that the KBI did not have the ability to test Primer Gunshot Residue ("pGSR"), or accept pGSR samples from law enforcement agencies until 2017. Doc. 101-29. Plaintiff submitted a surreply stating that this witness's testimony would be inadmissible at trial because he was not previously disclosed. But Plaintiff fails to address the applicable test in Fed. R. Civ. P. 37(c), and the Court declines to do so sua sponte. Because the failure to test the GSR properly is not relied on by Plaintiff, standing alone, to support her claims on summary judgment, the Court need not resolve the issue at this time.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.29

***Continued Investigation***

On April 8, detectives executed a search warrant to collect oral swabs from Mr. Coones for DNA testing. Two swabs were collected, placed in evidence, and eventually forwarded to the KBI laboratory. The detectives also learned that the Taurus .38 caliber silver revolver found at the crime scene was originally purchased by Senior's daughter, Patsy, which Patsy had reported stolen in 2000.

Also on April 8, Forensic Pathologist Erik Mitchell, M.D. performed autopsies on Carl's and Kathleen's bodies in Topeka, Kansas. Dr. Mitchell's autopsy report for Carl indicates that he died as a result of two gunshot wounds. Before the autopsies, Dr. Mitchell was told that the decedents were found dead of gunshot wounds after a call had been placed by the female decedent "to a daughter, indicating there was an assault."[26] Dr. Mitchell did not receive any other information from the KCKPD about the circumstances of the Schrolls' deaths, and he did not request any additional information before he performed his autopsy. He determined that Kathleen died as a result of "a penetrating gunshot wound to the head that would immediately incapacitate voluntary function."[27] Dr. Mitchell concluded that both Carl and Kathleen's manner of death was homicide. Detective Block attended the autopsies, and noted in his report, *inter alia*, that "[t]here was blood on her face, her scrubs, and the outside of her glasses . . . [and] [t]here was a small amount of blood spatter on [Kathleen's] left hand."[28]

Detectives Michael and Garrison executed an arrest affidavit for Mr. Coones. Assistant D.A. Victoria Meyer executed an information charging Mr. Coones with the murder of Kathleen and Carl Schroll. An amended information was filed two days later.

---

[26] Doc. 101-27 at 2.

[27] Doc. 101-2 at 1.

[28] Doc. 106-5 at 2.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.30

On April 9, Detectives Garrison and Michael conducted another interview with Blair and showed her a photo lineup. Blair identified Mr. Coones from the lineup. She also told the detectives that Kathleen kept a handgun. Detectives then spoke to Kathleen's brother, Randy. He told them about the phone call Elizabeth received the morning of April 7 from Kathleen, that Kathleen had inherited the house on Parallel Parkway that was part of the challenge stemming from "Pete," and that he was aware of the lawsuit between Kathleen and Mr. Coones over Senior's insurance policy.

On April 14, the detectives took another recorded statement from Elizabeth. She told them that Kathleen kept a pistol in her purse. Elizabeth had never seen the pistol, but Kathleen told her she carried one for work and for protection. She told them that Kathleen often carried large sums of money from the credit union where she worked and made deposits at another location. Finally, Elizabeth told detectives that Kathleen told her Mr. Coones had broken into the garage of the Parallel Parkway house and stole a Dixon riding lawnmower, but Elizabeth was unsure of the date.

The detectives attempted to follow up and gather information about the stolen lawnmower, but could not corroborate the alleged theft. When police searched Mr. Coones' home after his arrest, they did not find the lawnmower that Kathleen claimed Mr. Coones had stolen.

On April 14, 2008, when Detectives Michael and Garrison interviewed Kathleen's supervisor at Midwest Regional Credit Union, Thad Jones, he confirmed that Kathleen owned a handgun but said he had never seen it. He told the detectives that Kathleen was not required to transport money for her job.

13

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.31

Kathleen told Elizabeth, Blair, and Randy that she had made several police reports about Mr. Coones stalking her. Kathleen told Blair that she called the police many times to report Mr. Coones for harassment, but the KCKPD had no records of any complaints by Kathleen that Mr. Coones was harassing or stalking her. Randy told detectives that Kathleen said she had a restraining order against Mr. Coones, but the KCKPD has no record that Kathleen ever obtained a restraining order against him. Detective Michael also learned that Senior had not, in fact, left an inheritance to Kathleen, as she had told her mother. Detective Michael now admits that these inconsistencies would have been a "red flag" to Detective Michael that Kathleen was not honest.

On April 15, Detectives Michael and Garrison secured a search warrant and, along with CSI Officer Jaskinia, collected additional evidence from the crime scene. They took photographs, and measurements for blood splatter. At some point, investigators learned that both Mr. Coones and Kathleen were left-handed.

### Preliminary Hearing

A preliminary hearing was conducted on June 27, 2008, in Wyandotte County District Court. The autopsy reports were admitted as evidence and, before rendering its decision, the court recessed to review the report.

Detective Michael testified about his interview with Mr. Coones after the arrest, and that Mr. Coones told him that his brown van was parked behind his house during the early morning hours of April 7, 2008. Detective Michael then testified that he confronted him about whether his brown van was in fact at his house all night:

> I explained to him that, once I received information as far as who
> he was and where he lived, that I personally went to that residence
> and I didn't see his vehicle. He told me that he has his vehicle
> parked way around behind the house, to hide it from creditors that
> he owned [sic] money to. He feared that his vehicle may be
> repossessed. And I told him that when I went up to his house to try

14

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.32

to find his vehicle, I didn't see it.  I walked to the east side of his house, which would give me a view to the back yard.  I—I— I will admit, if—if if there was anything that would have indicated that the vehicle was on the extreme west end of the house, I would not have been able to see it; but we subsequently served a search warrant at that house, and I did see some tire marks.  I went back up to the area where I initially began my walk-up; and if the van would have been anywhere near those tire marks, I—I would have seen it, regardless of the lighting conditions.[29]

Based on this testimony, the prosecutor argued that Mr. Coones gave police "an account of his whereabouts that are inconsistent with the facts the police knew."[30]  The court found probable cause and bound Mr. Coones over for trial on both murder charges.

Three days after the preliminary hearing, on June 30, 2008, Deputy D.A. Brancart sent the following email to Detectives Michael and Garrison:

I see that Stan Isaacson did a gunshot residue test on the steering wheel of the Chevrolet van.  I also see that William Barajas did a gunshot residue test on both Carl and Kathleen's bodies.

I don't know anything about the tests that were performed.  School me.  Not only in name of the test, method it works—but also in results.  Is this something to be taken to the lab?

I need to know how to talk about these tests, and how to put on evidence in the trial.[31]

Detective Garrison quickly responded to Brancart, "I'll find out."[32]

***Trial***

The case was tried to a jury on January 20–23, 2009.  The jury returned a verdict of guilty for the first degree, premeditated murder of Kathleen Schroll, and not guilty for the first degree,

---

[29] Doc. 101-6 at 50:1–22.

[30] *Id.* at 65:6–8.

[31] Doc. 106-14.

[32] Id.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.33

premeditated murder of Carl Schroll. But the trial court ordered a new trial because the State failed to timely disclose a forensic examination report of Mr. Coones' computer. Mr. Coones was retried on December 14–17, 2009. He was again convicted of the first degree, premeditated murder of Kathleen. Mr. Coones was sentenced to serve at least fifty years in prison before becoming eligible for parole.

Patricia Kalb was Mr. Coones' defense attorney at trial. She spoke to Detective Michael before trial about the encounter at QuikTrip that Blair had relayed to the detectives. He told Kalb that he "investigated it and could not find the video."[33]

Before trial, the State filed a motion in limine to exclude certain hearsay statements made by Kathleen to Blair. In the motion, the State proffered Blair's testimony about the QuikTrip confrontation, including that Kathleen said that she and Carl had been experiencing marital tension the weekend before the murder. Blair was expected to testify that Kathleen told her she had not told Carl about the QuikTrip incident due to these marital tensions. Nonetheless, Blair was not asked about marital tension and the issue was not otherwise raised at trial. She did testify about the confrontation at QuikTrip; that Kathleen told her it occurred the Saturday before her death when Kathleen was going into the store and Mr. Coones was coming out.

No testimony or evidence about GSR testing was offered at the trial or retrial.

Detective Michael testified at both trials about the brown van consistent with his testimony at the preliminary hearing—that he personally went to the Coones' residence after the murder, that he did not see the brown van there, and that he would have seen it if it based on where the tire ruts were located when he viewed the backyard on the morning of April 7, 2008.

---

[33] Doc. 106-12 at 145:11–17.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.34

Before Detective Michael testified at trial, he would go over the questions he would be asked with the prosecutor, without fail.

Ross Minks, who was Mr. Coones' daughter's boyfriend, testified as an alibi witness at both trials because he was staying at the Coones' house on the night of April 6, 2008. He testified at the first trial that Mr. Coones went to bed that night at about 11:15 p.m., after which he and Mr. Coones' daughter watched a movie; he was awake that night until 2:30 or 3:00 a.m. He testified that every night he was there, Mr. Coones would park his van "at the back garage, and I would always pull my van up along the side of the house."[34] Minks testified that he saw Mr. Coones exit his bedroom to use the bathroom at around 2:00 a.m., and that Minks heard Mr. Coones using his computer until Minks fell asleep. He testified that Mr. Coones would have had to pass in front of him watching the movie to leave the house. At about 6:00 a.m., Mr. Coones woke up Minks to obtain his keys so that Mr. Coones could access his van.

Minks testified that he and Mr. Coones' daughter were supposed to go talk to the police about a week after the murders, but on the advice of Mr. Coones' counsel, they did not. At the retrial, Minks testified that he tried to talk to an officer when they were searching Mr. Coones' house, and that he tried to talk to two detectives. He said that he "made several attempts to talk to them," and that he called them because he "knew where Mr. Coones was the whole entire time up until I went to sleep."[35] Detective Michael does not recall taking a statement from Minks, or having him prepare a statement.

At the retrial, Detective Block testified that Kathleen had drained Senior's bank account while he was in her care.

---

[34] Doc. 101-10 at 104:2–5.

[35] Doc. 101-15 at 209:2–3.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.35

At the retrial, Kalb introduced evidence and argued that Kathleen committed suicide. The prosecutor argued in closing that "Kathleen did not put a gun in her mouth. She did not put a gun to her temple. No evidence suggests that she would have any motivation other than to do anything to live and keep on living."[36]

### *Evidence Discovered After Trial*

- #### *Embezzlement*

In 2008, Kathleen worked at Midwest Regional Credit Union processing checks deposited there so that they could be transmitted to the Federal Reserve. Jones, Vice President of Accounting and Technology, was her direct supervisor. When Kathleen did not show up for work on April 7, the day she died, Jones discovered an irregularity in her accounts and opened an investigation. Jones discovered that Kathleen had been submitting checks for payment by the credit union that were supposed to be drawn against other banks once they were submitted to the Federal Reserve. She embezzled over $11,000 from the credit union before her scheme was uncovered. On April 9, 2008, Jones wrote a Suspicious Activity Report documenting his findings regarding Kathleen's embezzlement.

Detectives Michael and Garrison interviewed Jones on April 14, 2008. He told the detectives that he had discovered Kathleen's embezzlement and provided them with a copy of the Suspicious Activity Report.[37] The detectives should have made a record of this evidence but

---

[36] Doc. 101-16 at 13:1–5.

[37] The Court acknowledges that the parties dispute whether Jones' testimony in 2020 at the § 60-1507 hearing, or his 2023 deposition in this case should be credited on this issue—whether he in fact remembers telling detectives about the embezzlement after showing them the report. Similarly, the parties dispute whether Detective Michael's testimony at the § 60-1507 hearing that Jones told him about the embezzlement should be credited, instead of his deposition testimony in this case where he walked that back. At summary judgment, the Court must view this evidence in the light most favorable to Plaintiff. Under this standard, without weighing Jones' or the detectives' credibility, the Court must credit Jones' 2020 testimony that he recalls telling the detectives about Kathleen's embezzlement, and that he gave them a copy of the report.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.36

did not mention it in their reports, nor did they inventory the Suspicious Activity Report. Deputy D.A. Brancart had no knowledge about Kathleen's embezzlement until long after Mr. Coones' conviction. Investigators did not disclose to Kalb before trial that they discovered Kathleen had been embezzling from Midwest Credit Union. Had Kalb known this information, she would have presented it as part of the defense.

- ***GSR Tests***

On April 18, 2019, the KBI Lab tested the GSR swabs originally taken as evidence in Coones' case for pGSR. No GSR was detected on the swabs taken from Mr. Coones' van, no GSR was detected on Kathleen's right hand, but there was GSR on Kathleen's left hand.

- ***Pillow***

CSI Officers Barajas, Dressler, and Harper had collected a multi-colored pillow found near Carl's body at the crime scene. On September 29, 2020, an investigator for the prosecutor's office found a fourth bullet in the stuffing of the pillow that was lying near Carl Schroll's head at the site of his murder.

- ***KBI Document Examination of Senior's Checks***

Part of the elder abuse investigation by Detective Block before Kathleen's death involved consulting with an expert document examiner from the KBI, who issued a report on July 27, 2007. The report identifies Kathleen as a suspect, and the examiner found "strong indications" that all but three of the 120 checks submitted for review may not have been authored by Senior, although due to the poor quality of the copies sent for evaluation, "he could not be eliminated as the author."[38] This report was not included in the Schroll death investigation case file with the other documents from that investigation. Instead, Detective Block placed it in his personal file.

---

[38] Doc. 106-26.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.37

Kalb spoke to detective Block before trial, but he did not mention sending checks to the KBI or the KBI report itself. Kalb also contacted Detective Brown, and she responded that she had no exculpatory evidence. The State never produced the report to Kalb. If it had been produced, Kalb would have used it in Mr. Coones' defense.

- *Autopsy*

As stated earlier, Dr. Mitchell did not receive any information from the KCKPD about the circumstances of the Schrolls' deaths other than the statement that a call had been placed by Kathleen before her death indicating there was an assault. Dr. Mitchell does not recall knowing that the gun used to kill Kathleen and Carl was Kathleen's gun; that there was no sign of forced entry; or that Kathleen had been embezzling money before her death. Dr. Mitchell now maintains that, had he known these facts, he would have determined that Kathleen's most likely cause of death was suicide.

### Post-Conviction Proceedings

Mr. Coones successfully challenged his conviction and sentence under K.S.A. § 60-1507. On November 5, 2020, the Wyandotte County District Court of Kansas vacated Mr. Coones' conviction, all charges against him were dismissed, and he was released from custody. Before his conviction was vacated, Mr. Coones spent more than twelve years incarcerated. Mr. Coones passed away 108 days after his release, on February 21, 2021. Mr. Coones was posthumously granted a certificate of innocence, and the records of his conviction and arrest were expunged.[39]

### KCKPD Policies and Practices

- *Written Policies*

---

[39] Doc. 106-29.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.38

The KCKPD has policies that homicide detectives must follow when they conduct homicide investigations, including Crime Scene Responsibilities, EMS, and Community Deaths General Order (Order Number 40.5); Criminal Investigation Unit Standard Operating Procedure ("SOP"); Property General Order (Order Number 80.02); Report Procedure General Order (Order Number 80.03); and Addendum Report General Order (Order Number 80.04). Homicide detectives are supervised under the Criminal Investigation Unit SOP, and under Organization of Duties General Order 1.3.

The SOP for the Criminal Investigation Unit includes the job descriptions for each rank, and within each of those sections, it includes their authority and responsibilities. The homicide captains were responsible for reviewing all crime reports in the homicides they oversaw and ensuring the detective was still working on it or following up on the status of the case. Detectives were made aware and expected to know SOP updates. Thus, detectives within the Criminal Investigative Bureau received Advanced Officer Training specifically on the SOP.

The SOP does not require detectives to put every fact or step in the investigative narrative of their reports; rather, detectives should put facts in the investigative narrative which will assist them in testifying later. Homicide detectives were allowed to destroy their notes, as keeping the notes would be duplicative of their reports. Captains reviewed reports for completeness and legibility, making sure that pages are not missing, and looking for things that are usually included in a criminal investigative file. Supervisors rely on detectives to follow the rest of the general orders in being truthful and accurate.

In the KCKPD, "[s]olving homicide cases has a very, very high priority. People who accomplish that are held in high esteem and they get promoted."[40]

---

[40] Doc. 106-34 at 97:5–8.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.39

- ***Complaints of Police Misconduct***

The KCKPD is unaware of any examples of officers failing to report misconduct by other officers or being punished for failing to report misconduct between 2006 and 2009. But there were numerous instances of civilian complaints, and officers were aware of misconduct; specifically, misconduct by Roger Golubski, who was the Captain of the robbery/homicide unit in 2008 and 2009 during the Schroll murder investigation and trials.

Civilian complaints of misconduct were categorized by the KCKPD as administrative or criminal, and administrative complaints could be categorized as "other contacts." "Other contacts" complaints were not supposed to include any "significant" allegations of misconduct; instead, they were to include only "administrative" and "minor" complaints. However, from 2005–2009, the KCKPD's "other contacts" complaints included 54 complaints of excessive force (out of 91 total), 8 complaints of civil rights violations (out of 9 total), and 80 complaints of harassment (out of 88 total). For example, in the case of a complaint that a detective "tried to make [a suspect] say things he did not do"—i.e., coercively interrogating a suspect—the KCKPD determined it could be appropriately handled as an "other contacts" complaint because the suspect "probably wasn't telling . . . the truth."[41]

Internal affairs did not monitor the steps taken in "other contacts" investigations. Under KCKPD policy, the investigator could complete the investigation with a mere statement, "no discipline warranted."[42] There were no specific guidelines on how to investigate "other

---

[41] Doc. 106-32 at 129:3–130:10.

[42] Doc. 106-30 at 76:8–18. Some pages from the deposition of the Unified Government's Rule 30(b)(6) witness cited by Plaintiff were not attached to the exhibit. The Court only includes facts with attached record support.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.40

contacts" complaints.  Internal affairs kept no records of discipline initiated by supervisors.  In fact, nothing needed to be documented in "other contacts" investigations.

KCKPD superiors did not welcome reports or complaints about fellow officers. Illustrative of this culture is that sexual misconduct was widely regarded within the KCKPD as "no big deal."[43]  Indeed, the Unified Government received a complaint in 2009 that Detective Michael told an arrestee "he would have paid to see her in her thong" and that "he likes a little chocolate in his coffee," after she had been detained in a holding cell.  The KCKPD treated this as an "other contact" complaint and retained no record of the investigation other than a notation that the officer was "verbally counseled," and the record purged.[44]

The FBI investigated KCKPD officers for misconduct in the 1990s, but the KCKPD never initiated policy changes, sought additional information about the officers under investigation by the FBI, or took any other action other than producing subpoenaed documents, in response to that investigation.[45]

KCKPD detectives, along with older officers and the commanders, knew that Golubski was pursuing Black females and having sex with them, and that Golubski had fathered children with poor, Black women in the north end of Kansas City, Kansas.  Witnesses inside and outside the KCKPD knew that Golubski had sexual encounters with Black informants.  Officers in the

---

[43] Doc. 106-48 ¶ 14.  The Court overrules Defendants' objection to the statements in Seifert's affidavit as not based on personal knowledge.  His affidavit establishes that he worked for the KCKPD for thirty years, attending the police academy with Golubski.  He shared an office with Golubski from 1993 to 1995 in the Detective Bureau.  The Court is satisfied that these statements are based on personal knowledge and would be admissible at trial.

[44] Doc. 107 (sealed).

[45] Defendants object to this statement of fact, but it was an admission.  *See* Doc. 106-33 at 1, 3; Doc. 106-30 at 10:5–19.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.41

KCKPD were "not allowed" to know the names of Golubski's informants, who were not documented.

Golubski committed an integrity violation early in 1978, causing him to be added to the KCKPD's *Brady/Giglio* list, which disclosed his misconduct to prosecutors. The KCKPD received complaints about Golubski's misconduct as early as the 1980s, but they refused to investigate or follow-up on them. In all, Golubski received 11 administrative complaints and "other contacts" complaints between 1993 and 2011. These included complaints that he bent a subject's arm and slapped her face, swore at a juvenile suspect and tried to coerce him into making incriminating statements, arrested a suspect without probable cause, and made racial and sexual comments towards a witness. Golubski also had a pattern of fabricating and suppressing evidence.

For example, in 2005, Sara Bigelow called to complain that Golubski divulged confidential information about her being an FBI informant and targeted her to help the family member of a criminal defendant in a federal drug case, but Golubski was never questioned about it. In another example, a mother complained in 2008 that Golubski kicked in her door and arrested her son for no reason. The KCKPD classified the complaint as "other contact," and closed it without any indication that they interviewed witnesses or collected information. In November 2009, a woman reported that Golubski threatened to "haul her [B]lack ass in for aiding and abetting," and told her to "change who she was dating."[46] The only documentation is a brief description that Major Ward investigated by talking to "the witnesses present and it

---

[46] Doc. 106-43 at 10.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.42

appears that the story concocted by Trellia Jackson is a total fabrication of the incident. There is 'no discipline warranted' in this incident."[47]

Ronald Miller, who was Chief of Police for KCKPD from 2000 to 2006, "knew that [Golubski] liked [B]lack women, young [B]lack women" as part of his informant network.[48] And Michael Lee Kobe, who supervised Golubski for some time in the early 2000s, testified in his deposition that he did not

> think it would have been possible for Detective Golubski to—to have operated as he did without the knowledge of commanders knowing what he was doing and how he was operating. . . . [H]e may have gotten it done once or twice, but the pattern was over a lengthy period of time and I don't think that that pattern could have . . . reasonably escaped the notice of a commander."[49]

Nonetheless, the KCKPD and Unified Government claim to be aware of only one disciplinary proceeding or internal affairs investigation regarding Golubski: the 1978 complaint for which he was suspended. In 2022, Golubski was criminally charged in federal court in two cases: (1) for sexually assaulting two witnesses from 1999 to 2002;[50] and (2) for providing protection in a sex trafficking scheme.[51]

- ***Homicide Investigation Supervision in 2008–09***

Golubski was promoted to Captain in 2002 and joined the robbery/homicide division in 2006. He was Captain of the robbery/homicide unit in 2008 and 2009 during the Schroll murder investigation. Golubski approved the final report summarizing the investigation because the supervising Captain "wasn't available," and he signed off on Detectives Michael and Garrison's

---

[47]*Id.*

[48] Doc. 106-41 at 243:13–244:9.

[49] *Id.*

[50] Case No. 22-40055-TC (D. Kan.).

[51] Case. No. 22-40086-TC-4 (D. Kan.).

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.43

Addendum/Clearance report.  Golubski also assigned Detective Block to attend the Schrolls'

autopsies, and attended a meeting where Detective Block shared information with Detectives

Garrison and Michael about his elder abuse investigation by Kathleen.

## III.  Discussion

### A.    Individual Capacity Claims under 42 U.S.C. § 1983

Plaintiff alleges claims for relief under 42 U.S.C. § 1983 against the individual

Defendants in their individual capacities for: (1) due process violations based on fabricating,

withholding, and failing to preserve evidence; (2) malicious prosecution; (3) failure to intervene;

and (4) conspiracy.  Defendants invoke qualified immunity.  Thus, "the onus is on the plaintiff to

demonstrate '(1) that the official violated a statutory or constitutional right, *and* (2) that the right

was "clearly established" at the time of the challenged conduct.'"[52]  Defendants will prevail on

the qualified immunity defense if Plaintiff fails to establish either prong of the qualified

immunity test.[53]  In making this determination, the Court "ordinarily accept[s] the plaintiff's

version of the facts . . . but 'because at summary judgment we are beyond the pleading phase of

the litigation, [the] plaintiff's version of the facts must find support in the record.'"[54]

#### 1.  Due Process Claims

In Count I, Plaintiff alleges due process violations against Defendants Michael, Garrison,

Block, and Brown for withholding, failing to preserve, and fabricating evidence.  In the Pretrial

Order, Plaintiff provides a laundry list of evidence she claims was withheld in violation of Mr.

Coones' due process rights: (1) that Mr. Coones' children were restrained and taken into custody

---

[52] *Johnson v. City of Cheyenne*, 99 F.4th 1206, 1217 (10th Cir. 2024) (quoting *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015)).

[53] *Id.* (quoting *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016)).

[54] *Id.* (second and third alteration in original) (quoting *A.M.*, 830 F.3d at 1136).

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.44

during their interviews; (2) handwritten notes and recordings of witness interviews; (3) an exculpatory written statement by Minks corroborating Mr. Coones' alibi; (4) video of the crime scene; (5) a QuikTrip surveillance video disproving Kathleen's story of being threatened by Mr. Coones; (6) that Detective Michael's investigation corroborated Mr. Coones' account of where his van was parked (i.e., it had not been used to commit a murder); (7) that Kathleen and Carl were experiencing marital tension just before the murder; (8) that Robert Rupert had been promised leniency for his cooperation; (9) Defendants Michael and Garrison caused gunshot residue swabs to not be tested by the lab; and (10) that Kathleen's embezzlement had been discovered by the credit union that employed her immediately following the murder-suicide. Defendants address each of these in their motion for summary judgment on the due process claim.

In response to Defendants' motion for summary judgment on the withholding claim, Plaintiff discusses only three categories of evidence—Kathleen's embezzlement, the KBI expert report about Senior's checks during the earlier elder abuse investigation, and that the detectives went to QuikTrip, watched the surveillance video, and did not see Kathleen and Mr. Coones on the footage arguing as she had reported. Plaintiff also asserts that Detective Michael fabricated his claim that Mr. Coones' van was not in his driveway the morning after the murders. The Court addresses each of Plaintiff's claims under the appropriate due-process tests below.

### a. Failure to Disclose

Plaintiff first asserts a due process violation because the State failed to disclose certain evidence before trial. This type of claim is governed by *Brady v. Maryland*.[55] Under the *Brady*

---

[55] *See id.* at 1226 ("*Brady* 'address[es] exculpatory evidence still in the government's possession.'. . . *Youngblood* and *Trombetta* 'govern cases in which the government no longer possesses the disputed evidence.'" (alteration in original) (quoting *Fero v. Kerby*, 39 F.3d 1462, 1472 (10th Cir. 1994))).

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.45

doctrine, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[56] The elements of a *Brady* violation are: "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense."[57]

Because Defendants invoke qualified immunity on this claim, the burden is on Plaintiff to demonstrate a constitutional violation that was clearly established at the time of the violation that has evidentiary support in the record. The Court therefore confines its analysis to the evidence discussed in Plaintiff's summary judgment response—Kathleen's embezzlement and financial distress, the check forging report, and the detectives' review of the QuikTrip video. Defendants argue none of this evidence was material to the defense at Mr. Coones' trial. In order to show materiality, Plaintiff must show "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different."[58] In evaluating materiality, the Court is not to "consider each piece of withheld evidence in isolation. Rather [the Court] review[s] the cumulative impact of the withheld evidence, its utility to the defense as well as its potentially damaging impact on the prosecution's case."[59] Plaintiff asserts that the evidence, when viewed cumulatively, and in the light most favorable to her, was material to the defense. The Court agrees.

---

[56] *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

[57] *Becker v. Kroll*, 494 F.3d 904, 924 (10th Cir. 2007) (quoting *United States v. Geames*, 427 F.3d 1333, 1337 (10th Cir. 2005)).

[58] *Cone v. Bell*, 556 U.S. 449, 470 (2009).

[59] *Fontenot v. Crow*, 4 F.4th 982, 1080 (10th Cir. 2021) (quoting *Simpson v. Carpenter*, 912 F.3d 542, 572 (10th Cir. 2018)).

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.46

*i.     Embezzlement Evidence*

First, the Court agrees with Plaintiff that, when viewed in the light most favorable to her, evidence of Kathleen's embezzlement from her credit union employer and Jones' Suspicious Activity Report was material.  The report showed that Kathleen embezzled over $11,000 from her employer before her scheme was uncovered the day after she died.  It is uncontroverted that the detectives interviewed Jones on April 14, 2008, five days after Jones created the Suspicious Activity Report documenting Kathleen's embezzlement.  And at the § 60-1507 hearing in 2020, Jones testified that he told the detectives about the embezzlement and provided them with the report.  Detective Michael also testified that Jones told him about the embezzlement, and that Jones gave either him or Detective Garrison the report but he did not know what happened to it. Both Jones and Detective Michael testified later during their depositions in this case that, in hindsight, they now cannot recall whether those previous statements under oath were accurate. Of course, at the summary judgment stage, the Court views the evidence in the light most favorable to Plaintiff, crediting the 2020 testimony that Jones told the detectives about the embezzlement and report, and provided them with the same.  A reasonable jury could easily conclude that the 2020 testimony was more reliable given that it was closer in time to the events in question.

Defendants are correct that at retrial, Mr. Coones' defense attorney introduced evidence and argued that Kathleen committed suicide.  But there is no evidence in the summary judgment record about the strength of the defense's evidence, other than the prosecutor argument in closing that "Kathleen did not put a gun in her mouth. She did not put a gun to her temple.  No evidence suggests that she would have any motivation other than to do anything to live and keep

29

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.47

on living."[60]  Obviously, the jury rejected whatever evidence Mr. Coones presented.  Evidence of

Kathleen's embezzlement supports the defense theory of murder-suicide by providing a motive

for Kathleen to commit suicide.  It also corroborates the defense theory that Kathleen was

stealing money from Senior, because it shows similar behavior with a subsequent employer.

Moreover, such evidence supports the defense's theory at trial that Kathleen had a reason to

frame Mr. Coones for her murder, given that he was trying to prove that she had stolen money

from his father.  Plaintiff has met her burden of demonstrating that the embezzlement evidence

"could reasonably be taken to put the whole case in such a different light as to undermine

confidence in the verdict."[61]

## ii.    Forgery Evidence

Next, Plaintiff asserts that Defendants withheld evidence from Detective Block's 2007

investigation into whether Kathleen was forging Senior's checks.  Specifically, Plaintiff argues

that the State had a duty to disclose a report from the KBI's expert document examiner, who

examined 120 checks purportedly signed by Senior, and found "strong indications" that all but

three may not have been authored by him.  This report lists Kathleen's name as the suspect.

Defendants concede that this evidence was withheld, but argue that it was not material because it

did not conclusively eliminate Senior as the author of the checks.  Defendants also argue that Mr.

Coones procured an expert opinion from his own expert, Royce Smith, before trial that

concluded some of the checks were forged; yet, the defense did not present this evidence.

Defendants argue that the KBI report was speculative and inconclusive, and therefore not

---

[60] Doc. 101-16 at 13:1–5.

[61] *Cone*, 556 U.S. at 469–70 (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)).

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.48

relevant. Finally, Defendants assert information regarding Mrs. Schroll's alleged fraud concerning Senior was included in their reports and addressed during trial

Plaintiff has come forward with evidence that Kalb requested exculpatory information from both Detectives Block and Brown and, if this report had been produced, Kalb would have used it in Mr. Coones' defense at trial. Kalb would have called the KBI examiner to testify at trial, and Plaintiff maintains that he would have been a stronger witness for the defense than Mr. Coones' own expert. Also, Plaintiff points to evidence that Detective Block not only suspected Kathleen was taking advantage of Senior, he testified at trial that Senior's bank account was drained while he was in Kathleen's care. The report would have lent credence to Mr. Coones' position that Kathleen had been forging Senior's checks. And the KBI witness would have been a stronger witness than the defense's expert. The Court finds that Plaintiff has demonstrated evidence of a *Brady* violation by Detective Block when this evidence is viewed in the light most favorable to Plaintiff, together with the embezzlement evidence. The Court does not find evidence that Brown had knowledge of the existence of the KBI Report when Kalb requested it.

### iii. *QuikTrip Video*

Blair reported to detectives and testified at trial that Kathleen told her Mr. Coones threatened Kathleen at a QuikTrip gas station after work on April 5, 2008, when Kathleen was walking out and Mr. Coones was walking in. According to Blair, Mr. Coones was driving "the van," and told Kathleen: "You're not going to be spending my dad's money no more, bitch."[62] The morning after the deaths, Mr. Coones denied to the detectives that the QuikTrip encounter occurred. If Kathleen's report to Blair is believed, Mr. Coones threatened Kathleen two days before her death, strong evidence that Mr. Coones had a motive to kill her.

---

[62] Doc. 101-2 at 40.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.49

It is uncontroverted that Detectives Michael and Garrison went to the QuikTrip and requested surveillance footage from April 5, that an employee burned a CD copy of the surveillance footage, that the detectives brought the CD back to the police station and viewed it, that the footage only showed the interior of the store, and that they did not see Kathleen or Mr. Coones on the video.

Plaintiff points to the state's failure to disclose that detectives obtained and viewed the QuikTrip surveillance video from April 5, and did not see either Kathleen or Mr. Coones on the footage. Defendants argue that the QuikTrip surveillance video was not material because Detective Michael testified at the criminal trials and in his deposition in this case that the video did not show the area of the alleged confrontation and did not show either Kathleen or Mr. Coones. But the Court must view the facts in the light most favorable to Plaintiff. Plaintiff has submitted evidence that Kalb spoke to Detective Michael before trial about the encounter at QuikTrip that Blair had relayed to the detectives. Detective Michael told Kalb that "he investigated it and could not find the video."[63] At the retrial, Detective Michael testified that he could not recall whether Blair told him that the confrontation occurred inside or outside the store. He further testified that he and Detective Garrison went to the QuikTrip and that the employee burned a CD for them, but that it only showed the interior of the store and did not show Kathleen and Mr. Coones.

Assuming the QuikTrip video confirmed Detective Michael's trial testimony, it was not cumulative. A reasonable jury could find that the QuikTrip video, standing alone, made a difference because it showed no confrontation between Kathleen and Mr. Coones, which was used as evidence at trial because it occurred two days before her death. And, as Plaintiff urges,

---

[63] Doc. 106-12 at 145:16–17.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.50

there was other evidence of Kathleen's untruthfulness, such as the lack of a restraining order or police reports filed by her against Mr. Coones. A reasonable jury could find that this evidence tipped the scales in terms of supporting the defense theory that Kathleen had been lying to her family about Mr. Coones harassing her, and specifically lied about harassing her two days before her death. When viewed in the light most favorable to Plaintiff, cumulatively with the other withheld evidence, Plaintiff has demonstrated materiality.

*iv.*     *Clearly Established*

It was clearly established at the time of the Schroll death investigation that when exculpatory evidence is withheld from the defense it implicates the defendant's due process rights.[64] Defendants argue that it was not clearly established in 2008 that an officer, as opposed to a prosecutor, had a duty to disclose under *Brady*. They are simply incorrect. The Tenth Circuit made clear as early as 1995 that "*Brady* requirements 'extend[ ] to . . . law enforcement personnel."[65] Indeed, "investigative officers are part of the prosecution, the taint on the trial is no less if they, rather than the prosecutors, were guilty of nondisclosure."[66] Thus, it was clearly established that the detectives were subject to *Brady* at the time of the Schroll murder investigation.[67]

---

[64] *See Bledsoe v. Carreno*, 53 F.4th 589, 613 (10th Cir. 2022).

[65] *Id.* at 613 & n.21 (first citing *Pierce v. Gilchrist*, 359 F.3d 1279, 1299 (10th Cir. 2004); and then citing *Smith v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d 801, 824 (10th Cir. 1995)).

[66] *Smith*, 50 F.3d at 824 (quoting United States v. *Buchanan*, 891 F.2d 1436, 1440 (10th Cir. 1989)). Indeed, Judge Vratil rejected this exact argument in *McIntyre v. Unified Government*, No. 18-2545-KHV, 2022 WL 2072721, at *5 (D. Kan. June 9, 2022) ("Since well before 1986 . . . the law has established that due process prohibits the state—including one of its investigators—from withholding exculpatory evidence." (citing *Pierce*, 359 F.3d at 1299)).

[67] The Court respectfully disagrees with the footnoted discussion from *Ganley v. Jojola*, cited by Defendants on this issue. 402 F. Supp. 3d 1021, 1093 n.37 (D.N.M. 2019). As described in the next section, bad faith would only be required if this was a failure-to-preserve claim and the evidence was only potentially useful. *See Johnson v. City of Cheyenne*, 99 F.4th 1206, 1226 (10th Cir. 2024) (explaining the distinction between cases that allege due process violations based on *Brady* and those based on *Trombetta/Youngblood*). To the extent Plaintiff

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.51

### b. Failure to Preserve

It is undisputed that detectives did not collect or inventory the QuikTrip surveillance video. And Detective Michael admitted during his deposition that it should have been documented and inventoried under normal practice. Plaintiff argues that she only asserts a *Brady* claim as to the QuikTrip video, but to the extent she also maintains that the video itself should have been collected and preserved by Detectives Michael and Garrison, a different line of authority applies. Under the due process clause, the State must preserve evidence that is constitutionally material: "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."[68] Evidence is material if it is "favorable to the accused, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal."[69] In *Arizona v. Youngblood*,[70] the Supreme Court provided that if the evidence is instead only "potentially useful" for the defense, then the defendant must show that the government acted in bad faith in destroying the evidence.[71]

Defendants suggest *Youngblood* applies and that Plaintiff must show that the detectives acted in bad faith. The Court disagrees. For the reasons discussed on the *Brady* claim, this evidence was material. Therefore, Plaintiff is not required to show that detectives acted in bad faith under *Youngblood* by failing to inventory and preserve the evidence. To the extent Plaintiff

---

alleges a failure-to-preserve claim, she has demonstrated evidence of materiality, so no bad faith showing is required. The Court considers intent at the conclusion of its qualified immunity analysis.

[68] *California v. Trombetta*, 467 U.S. 479, 489 (1984).

[69] *See United States v. Sullivan*, 919 F.2d 1403, 1427 (10th Cir. 1990) (quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985)).

[70] 488 U.S. 51 (1988).

[71] *Id.* at 58.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.52

asserts a due process violation based on *Trombetta* for failure to preserve exculpatory evidence, that rule was clearly established in 2008.[72]

### c. Fabrication

Finally, Plaintiff alleges a due process claim based on fabrication of evidence. To show fabrication, Plaintiff must demonstrate:

> (1) the defendant knowingly fabricated evidence, (2) the fabricated evidence was used against the plaintiff, (3) the use of the fabricated evidence deprived the plaintiff of liberty, and (4) if the alleged unlawfulness would render a conviction or sentence invalid, the defendant's conviction or sentence has been invalidated or called into doubt.[73]

In their summary judgment motion, Defendants' only argument specific to this claim is that "Det. Michael went to the cul de sac where Coones lived. He did not see Coones' van. Nothing during the investigation corroborated, as fact, that Coones[] could not have used his van to commit the murder."[74] In the summary judgment response, Plaintiff maintains that Detective Michael fabricated evidence that Mr. Coones' van was not parked outside his house the morning after the Schroll deaths, and argues that Defendants waived moving on the fabrication claim by not separately addressing it. The Court agrees with Plaintiff that Defendants' motion is insufficient to trigger invocation of qualified immunity, or otherwise move for summary judgment, on Plaintiff's fabrication claim. Defendants make no argument specific to the elements discussed above. Nor do they acknowledge in their motion that the fabrication claim requires a separate test from the *Brady* claim. The Court will not conduct that analysis on its own.

---

[72] *See Trombetta*, <u>467 U.S. at 488</u>–89; *Johnson v. City of Cheyenne*, <u>99 F.4th 1206, 1226</u> (10th Cir. 2024).

[73] *Truman v. Orem City*, <u>1 F.4th 1227, 1236</u> (10th Cir. 2021) (footnotes omitted).

[74] <u>Doc. 101 at 25</u>.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.53

The Court further finds that, to the extent Defendants' limited argument on this claim was sufficient to challenge it on summary judgment, Plaintiff has met her burden of coming forward with evidence creating a strong issue of fact about whether Detective Michael fabricated his testimony about the van. Detective Michael testified at trial that he personally went to the Coones' residence after the murder, that he did not see the brown van there, and that he would have seen it based on where the tire ruts were located when he viewed the backyard on the morning of April 7, 2008. But viewing the evidence in the light most favorable to Plaintiff, multiple witness accounts supported Mr. Coones' statement to police that the van was parked behind his house and in front of Minks' vehicle, including his own, Plaintiff's, Minks', and his son, Ben's. And Detective Michael failed to document his vantage point on the morning of the Schroll deaths. The Court must also credit Minks' testimony that he tried to contact the detectives and give an alibi statement, even though Detective Michael testified he had no recollection of that.

Viewing this evidence in the light most favorable to Plaintiff, she has demonstrated a constitutional violation. In addition, it was clearly established in 2008 that an investigator could not fabricate evidence in order to secure a showing of probable cause, or a guilty verdict at trial.[75]

### d. Personal Responsibility

In addition to the foregoing, in order to prevail on a claim under § 1983 for these due process violations, Plaintiff must demonstrate that the individual defendants had "direct personal responsibility for the claimed deprivation of [his] constitutional rights under *Brady*, or

---

[75] *See Bledsoe v. Carreno*, 53 F.4th 589, 612 (10th Cir. 2022) ("[T]his court has long recognized that 'the prohibition of falsification or omission of evidence, knowingly or with reckless disregard for the truth, was firmly established as of 1986.'" (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004))).

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.54

*Trombetta/Youngblood*,"[76] and that "they acted with the requisite mental state."[77]  Specifically, Plaintiff must show that the officers acted "with deliberate or reckless intent."[78]

Plaintiff has demonstrated personal responsibility and at least reckless intent on behalf of Detective Michael and Garrison.  Viewing the evidence in the light most favorable to Plaintiff, these detectives were personally responsible for completing the investigative reports, viewing and then withholding evidence of the QuikTrip video, the embezzlement evidence, and the KBI expert report.  Given the allegations in the case, as reasonable jury could find that these detectives' conduct went beyond mere negligence because they should have understood the importance of the evidence and yet, failed to produce it to the prosecutors or the defense. Moreover, if the jury believes Plaintiff's version of the facts, Detective Michael knowingly or with reckless disregard for the truth, testified falsely about whether he could have seen Mr. Coones' van on the morning of the Schroll deaths.  This evidence is sufficient to demonstrate personal participation and intent.

However, there is no evidence demonstrating either personal participation on these issues or intent on behalf of Detectives Block and Brown.  There is no evidence about Brown's role in withholding or failing to preserve any of this evidence.  Block was originally assigned to the elder abuse investigation and passed along information to the homicide detectives about that. But there is no evidence that he made an affirmative decision to withhold the KBI Report from the homicide investigative file.  Thus, the Court finds that summary judgment is warranted on these claims as to Detectives Block and Brown.

---

[76] *Johnson v. City of Cheyenne*, 99 F.4th 1206, 1232 (10th Cir. 2024) (quoting *Porro v. Barnes*, 635 F.3d 1322, 1327 (10th Cir. 2010)).

[77] *Id.*

[78] *Id.* (collecting cases).

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.55

In sum, the Court finds that Plaintiff's individual-capacity due process claims survive summary judgment and that Defendants are not entitled to qualified immunity.

### 2. Malicious Prosecution

Count II alleges individual-capacity claims under § 1983 for malicious prosecution and unlawful pretrial detention under the Fourth and Fourteenth Amendments against Detectives Michael and Garrison.  Defendants invoke qualified immunity, and argue that Plaintiff cannot show malicious prosecution with respect to the arrest warrant, or the judge's probable cause finding after the preliminary hearing.  In response to Defendants' motion for summary judgment, Plaintiff argues that "Defendants Michael and Garrison . . . lied at the preliminary hearing and withheld critical evidence from the court deciding probable cause."[79]  When evaluating a Section 1983 malicious-prosecution claim, the court begins with the common law elements for malicious prosecution, but the ultimate question is whether Plaintiff has proven the deprivation of a constitutional right.[80]  A plaintiff must show that "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages."[81]

Defendants concede that Plaintiff can demonstrate causation, favorable termination, and damages.  But they argue that Plaintiff cannot demonstrate the third or fourth elements of the claim—lack of probable cause for Mr. Coones' confinement and prosecution, or malice.

### a. Probable Cause

---

[79] Doc. 106 at 29.

[80] *See Pierce v. Gilchrist*, 359 F.3d 1279, 1288–89 (10th Cir. 2004).

[81] *Bledsoe v. Carreno*, 53 F.4th 589, 614 (10th Cir. 2022).

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.56

The Tenth Circuit has explained that probable cause means "a 'substantial probability' existed that the suspect committed the crime, requiring something 'more than a bare suspicion.'"[82]  In the context of fabricated or withheld evidence, like Plaintiff alleges here, the inquiry is  "whether, 'without the falsified inculpatory evidence, or with the withheld exculpatory evidence, there would be no probable cause for [Mr. Coones'] continued confinement or prosecution."[83]   In the context of a qualified immunity defense, the Court asks "'whether there was "arguable probable cause"' for the challenged conduct.  Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists."[84]

Defendants argue that (1) there was ample evidence to support probable cause, (2) the officers were not required to accept or investigate a suspect's claim of innocence; and (3) the court's probable cause finding at the preliminary hearing obviated any lack of probable cause by the detectives.  Plaintiff responds that the only evidence implicating Mr. Coones was Kathleen's phone call to her mother immediately before her death, and that officers were unable to corroborate any of Kathleen's claims about Mr. Coones harassing her, in contrast to "a bounty of evidence exculpating Mr. Coones."[85]  Plaintiff further argues that the preliminary hearing did not obviate any lack of probable cause that preceded it because Detective Michael falsely testified at the preliminary hearing about his ability to see the van at Mr. Coones' home on the morning of

---

[82] *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (quoting *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011)).

[83] *Bledsoe*, 53 F.4th at 614–15 (quoting *Pierce*, 359 F.3d at 1295).

[84] *Stonecipher*, 759 F.3d at 1141 (quoting *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012)) (citing *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007)).

[85] Doc. 106 at 29.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.57

April 7, and because the autopsy report relied on by the judge was based on incomplete information provided to the examiner by the detectives.

First, the Court considers Defendants' argument that there was arguable probable cause to bind Mr. Coones over for trial. Defendants point to the following evidence they claim supported an objectively reasonable belief that probable cause existed: (1) Kathleen's dying declaration identifying Mr. Coones as the killer; (2) that Kathleen was shot in the back of the head with a contact wound; (2) that Carl was found dead with two bullet wounds to the torso; (3) reports from Kathleen's family, Mr. Coones' family and Mr. Coones himself of the ongoing dispute over Kathleen's acquisition of Senior's assets; and (4) that none of the people interviewed that were in Mr. Coones' house on April 7 could definitively account for his whereabouts at the time of the 911 call.

Given Plaintiff's allegations that the detectives withheld and fabricated evidence, the Court must consider whether the evidence supported a reasonable belief in Mr. Coones' guilt: (1) without Detective Michael's testimony that the van was not at Mr. Coones' house on the morning of April 7; (2) with evidence that the detectives viewed the QuikTrip surveillance video and did not see Kathleen or Mr. Coones on it during the time in question on April 5; (3) with the Suspicious Activity Report Jones gave them and his statements to them in 2008 about her embezzlement; and (4) with the KBI examiner's check forgery report.

When viewed in the light most favorable to her, Plaintiff has met her burden of showing that the State lacked arguable probable cause for Mr. Coones' prosecution when disregarding Detective Michael's statement about the van and when considering the QuikTrip evidence, the embezzlement evidence, and the KBI report. Defendants do not dispute that they did not mention at the preliminary hearing that the detectives had requested the QuikTrip surveillance

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.58

video, watched it, and could not find any footage of the pair, despite Blair's report that it had occurred in the doorway two days before the Schrolls' deaths. With respect to the van, Detective Michael testified that he would have seen the van had it been parked where Mr. Coones and his family said it was when he scouted the house on foot on the morning of April 7, statements that Plaintiff maintains are false. The prosecutor relied on this testimony in arguing that Mr. Coones was not where he told police he was at the time of the murder. And, while there was evidence presented about Mr. Coones' statements that Kathleen fraudulently caused his father to transfer real estate and life insurance to her, the State did not present any information to the judge about the 2007 elder abuse investigation.

Indeed, in his closing remarks at the preliminary hearing, Deputy D.A. Brancart highlighted the following evidence: (1) Kathleen's phone call to her mother, (2) that Mr. Coones' motive was the "disputed estate passing, with substantial dollar value"; (3) that Mr. Coones' account of his whereabouts the night of April 7 was "inconsistent with the facts the police knew."[86] The fabricated and withheld evidence calls into question each of the grounds cited by the prosecutor for Mr. Coones' prosecution.

Defendants argue that detectives were not required to resolve conflicting evidence or make credibility determinations in order to meet the probable cause standard. While this may be true, the Court disagrees with Defendants' characterization of Plaintiff's claims. Her claims are not that the detectives made incorrect credibility determinations, it is that they wholly ignored exculpatory evidence and fabricated inculpatory evidence that was then relied on to obtain an arrest warrant and bind Mr. Coones over for trial.

---

[86] Doc. 101-6 at 65:3–11.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.59

Defendants argue that the judge's probable cause finding after the preliminary hearing obviates any lack of probable cause prior to that point. To be sure, under Tenth Circuit law, "the chain of causation is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor."[87] In *Taylor v. Meacham*, the court explained:

> Here, too, there was a preliminary hearing, which, under Utah law is an adversarial proceeding, in which a judge independently listened to testimony, evaluated the credibility of those testifying, reviewed evidence, and concluded that the evidence was sufficient to bind Mr. Taylor over for trial. Thus, to the extent Sheriff Meacham set in motion a malicious prosecution, which we do not suggest that he did, the preliminary hearing broke the "chain of causation." We therefore conclude that Sheriff Meacham did not violate Mr. Taylor's constitutional rights in connection with his arrest and incarceration.[88]

Two cases describe circumstances where the chain of causation was not broken by a judge's probable cause findings at the preliminary hearing. First, in *Pierce v. Gilchrist*, the Tenth Circuit found that the chain of causation was not broken where a forensic technician allegedly distorted evidence upon which the prosecuting authorities relied to press charges and prosecute.[89] The court explained: "If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors, or magistrates to confine or prosecute him. They cannot hide behind the officials whom they have defrauded."[90] Similarly, in *Robinson v. Maruffi*, the Tenth Circuit explained that where there is sufficient evidence that defendants "purposefully concealed and

---

[87] *Taylor v. Meacham*, 82 F.3d 1556, 1564 (10th Cir. 1996) (quoting *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996)); *see also Barham v. Town of Greybull*, 483 F. App'x 506, 509 (10th Cir. 2012).

[88] *Id.* (footnote omitted) (citing *State v. Pledger*, 896 P.2d 1226, 1229 (Utah 1995)).

[89] 359 F.3d at 1293.

[90] *Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988)).

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.60

misrepresented material facts" to "the prosecutor, the grand jury, and the trial and appellate courts[,] . . . [t]heir actions did not make an intervening break from the conduct of the defendants."[91]

The Court agrees with Plaintiff that, when viewed in the light most favorable to her, the detectives concealed and misrepresented material facts to the judge at the preliminary hearing. The judge presiding over the preliminary hearing relied on Detective Michael's testimony about the van, the prosecutor's recitation of Mr. Coones' motive, and on the autopsy report in finding probable cause for Mr. Coones' prosecution. This is exactly the sort of situation where preliminary hearing findings of probable cause do not break the chain of causation because there are allegations and evidence of knowing misstatements and material omissions by the detectives in this matter. Accordingly, the Court finds that Plaintiff can support the lack of probable cause element of her malicious prosecution claim.

### b. Malice

Malice requires that a defendant acted either knowingly or recklessly.[92] Moreover, "[m]alice may be inferred if a defendant causes the prosecution without arguable probable cause."[93] Defendants argue that Plaintiff only alleges negligence by the detectives. Indeed, the Tenth Circuit has explained that "the failure to investigate a matter fully, to exhaust every possible lead, interview all potential witnesses, and accumulate overwhelming corroborative

---

[91] 895 F.2d 649, 655–56 (10th Cir. 1990).

[92] *Sanchez v. Hartley*, 810 F.3d 750, 756 (10th Cir. 2016).

[93] *Bledsoe v. Carreno*, 53 F.4th 589, 615 (10th Cir. 2022) (alteration in original) (quoting *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014)).

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.61

evidence rarely suggests a knowing or reckless disregard for the truth. To the contrary, it is generally considered to be token negligence at most."[94]

The Court is not persuaded that the detectives' omissions and fabrication, when viewed in the light most favorable to Plaintiff, were merely negligent. As described above, Plaintiff does not claim that the detectives failed to corroborate testimony or more fully investigate the Schroll deaths or Mr. Coones' alibi. The alleged omissions are of facts known to the officers at the time of the hearing.[95] And if the jury believes that Detective Michael fabricated evidence, it could easily determine that he did so knowingly. Also, the Court has already determined that Plaintiff can demonstrate that the detectives acted without arguable probable cause; thus, malice may be inferred. Plaintiff has made a substantial showing of deliberate falsehoods or reckless disregard for truth by Detectives Michael and Garrison in seeking the continued confinement and prosecution of Mr. Coones.

### c. Clearly Established

Plaintiff has also demonstrated the second prong of the qualified immunity analysis on the malicious prosecution claim—that it was clearly established at the time of the investigation. Well before the Schroll death investigation was underway, the Tenth Circuit "held in *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004), that '[n]o one could doubt that the prohibition on falsification or omission of evidence, knowingly or with reckless disregard for the truth, was

---

[94] *Stonecipher*, 759 F.3d at 1142 (alteration omitted) (quoting *Beard v. City of Northglenn*, 24 F.3d 110, 116 (10th Cir. 1994)).

[95] *Compare Romero v. Fay*, 45 F.3d 1472, 1479 (10th Cir. 1995) (finding no malice where police officers failed to speak with the plaintiff's alibi witnesses or contact those who saw another suspect threaten the victim), *with* ! *Sanders v. English*, 950 F.2d 1152, 1162 (5th Cir. 1992) (finding that, unlike cases were police offers were negligent for failing to follow up on investigative leads, "[a] fact-finder reasonably could conclude that Lt. McCoy deliberately looked the other way in the face of exonerative evidence indicating that he had arrested the wrong man: three alibi witnesses deemed credible by Lt. McCoy, a negative identification by one of the witnesses who helped compose the police sketch, and a belated identification by the victim under peculiar circumstances"), *abrogated on other grounds by Albright v. Oliver*, 510 U.S. 266 (1994).

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.62

firmly established as of 1986, in the context of information supplied to support a warrant for arrest.'"[96]

In sum, the Court finds that Plaintiff has met her burden of demonstrating a constitutional violation of clearly established law as to Count II, and thus, Defendants' motion for summary judgment on this claim against Detectives Michael and Garrison is denied.

### 3. Failure to Intervene

In Count III, Plaintiff alleges individual-capacity claims under § 1983 for failure to intervene against Defendants Michael, Garrison, Block, and Brown. The Tenth Circuit has recognized a claim for failure to intervene under § 1983 because "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."[97] To show a constitutional violation, Plaintiff must demonstrate the following elements: "1) a government officer violated [Mr. Coones'] constitutional rights, 2) a different government actor (the defendant) observed or had reasons to know about that constitutional violation, and 3) the defendant had a realistic opportunity to intervene, but failed to do so."[98]

The Court has already determined the due process and malicious prosecution claims against Detectives Michael and Garrison survive summary judgment. Plaintiff urges that because they investigated the case together, they both observed or had reason to know about those constitutional violations. The Court finds that a reasonable inference can be made from the evidence that they had knowledge of the other's constitutional violations and had a reasonable opportunity to intervene. Detective Block was the primary investigator on the elder abuse

---

[96] *Sanchez*, 810 F.3d at 759 (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1292 (10th Cir. 2004)).

[97] *Bledsoe*, 53 F.4th at 616 (quoting *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008)).

[98] *Id.* (citations omitted).

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.63

investigation, and the record reflects that the KBI report was filed in his personal file and not the Schroll investigation file. A reasonable inference could be made that he should have insured that the report made it into that file given that he was contacted in the early stages of the death investigation to provide information to the detectives. However, Plaintiff fails to point to any evidence that Brown had knowledge of a constitutional violation and failed to intervene.

Plaintiff asserts in a footnote that "it was clearly established in 1999 that police officers had a duty to intervene to prevent the very sorts of constitutional violations at issue here."[99] But the Court agrees with Defendants that, assuming Plaintiff can demonstrate a constitutional violation for each Defendant on this claim, the law was not clearly established that they each had a duty to intervene in 2008 when they were investigating the Schroll deaths.

In 2022, the Tenth Circuit reversed a district court's decision denying qualified immunity on a failure-to-intervene claim in the context of allegations that law enforcement officers fabricated inculpatory evidence, withheld exculpatory evidence, and maliciously prosecuted the plaintiff.[100] The Court explained that in 1999, when the investigation at issue occurred, the Court had not recognized a failure-to-intervene claim at all.[101] And, prior to 2022, the Tenth Circuit had only recognized in published decisions that this claim applied in the excessive force context.[102] For the first time in *Bledsoe*, the Tenth Circuit made clear that a failure-to-intervene claim can apply to other constitutional violations:

> We hold that a failure-to-intervene claim is not limited to excessive force violations, but can involve other underlying constitutional violations. Specifically, here, Bledsoe adequately alleged a violation of his constitutional rights premised on Defendants'

---

[99] Doc. 106 at 34 (citing *id.* at 617).

[100] *Bledsoe*, 53 F.4th at 617.

[101] Id.

[102] *Id.* at 616–17 (collecting cases); *see Vondrak*, 535 F.3d at 1210.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.64

failure to intervene in the alleged fabrication of evidence against Bledsoe, the suppression of exculpatory evidence that would have proven his innocence, and the malicious arrest, prosecution, and conviction of Bledsoe without probable cause to believe he was guilty.[103]

Plaintiff has therefore not met her burden of showing that it was clearly established in 2008 that Defendants had a duty to intervene outside of the excessive force context.[104]

Plaintiff makes a cursory argument that it would have been obvious to any objectively reasonable officer that they had a duty to intervene and stop the constitutional violations in this case, under *Hope v. Pelzer*.[105]  On the clearly established prong of the qualified immunity analysis, the plaintiff must generally "point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."[106]  And, while "[w]e do not require a case directly on point, . . . existing precedent [nonetheless] must have placed the statutory or constitutional question beyond debate."[107]

Under *Hope*, a right may be clearly established if it would have been obvious to a reasonable officer, despite the lack of on-point authority recognizing a failure-to-intervene claim outside of the excessive force context.[108]  But "*Hope*'s holding historically has been applied to only the 'rare "obvious case,"' involving 'extreme circumstances,' or 'particularly egregious'

---

[103] *Id.* at 617.

[104] *See id.*; *see also Shaw v. Schulte*, 36 F.4th 1006, 1020–21 (10th Cir. 2022) ("[W]here the intrusion and permanency of harm from the use of excessive force may exceed that from the relatively brief prolongation of a traffic stop, *Vondrak* does not clearly establish that an officer must intervene to prevent an illegal search and seizure. Accordingly, Mr. Bosire has not overcome the second prong of Trooper Schulte's qualified-immunity defense.").

[105] 536 U.S. 730, 741 (2002).  In *Bledsoe*, the plaintiff did not make that argument, so the court did not address it.  53 F.4th at 617.

[106] *Frasier v. Evans*, 992 F.3d 1003, 1014 (10th Cir. 2021) (quoting *Cox v. Wilson*, 971 F.3d 1159, 1171 (10th Cir. 2020)).

[107] *Id.* (alteration in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

[108] *Hope*, 536 U.S. at 741.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.65

misconduct."[109]  The Court cannot find that this case involves the sort of extreme circumstances discussed by the Supreme Court in *Taylor*.  Plaintiff fails to make a particularized argument or showing as to any of the individual defendants on this claim.  And the Court cannot find on this record that it would have been obvious to the officers that their failure to intervene in the manner described by Plaintiff would have "crossed a constitutional line," given that such a claim had not ever been recognized outside of the excessive force context in the Tenth Circuit at the time.  Accordingly, the individual Defendants' motion for summary judgment on the basis of qualified immunity is granted as to Count III.

### 4.  Conspiracy

To prevail on a conspiracy claim under § 1983, Plaintiff "must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient."[110]  The Court has already found that Plaintiff sufficiently demonstrated deprivation of her constitutional rights on the due process and malicious prosecution claims, so now the Court must determine if she sufficiently demonstrated a conspiracy.

For the conspiracy, there must be "at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective."[111]  The Court must be mindful that, "[f]requently, a conspiracy must be proven with circumstantial evidence because '[r]arely . . . will there be direct evidence of an express agreement among all the conspirators to conspire.'"[112]

---

[109] *Frazier*, 992 F.3d at 1021 (first quoting *District of Columbia  v. Wesby*, 583 U.S. 48, 64 (2018); and then quoting *Taylor v. Riojas*, 592 U.S. 7, 8–9 (2020)).

[110] *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990) (quoting *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990)).

[111] *Frazier*, 992 F.3d at 1024 (quoting *Brooks v. Gaenzle*, 614 F.3d 1213, 1227–28 (10th Cir. 2010)).

[112] *Snell*, 920 F.2d at 701 (second alteration in original) (quoting *Bell v. City of Milwaukee*, 746 F.2d 1205, 1260 (7th Cir.1984)).

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.66

Plaintiff's only argument on the agreement component of her conspiracy claim is that a reasonable jury could conclude that Detectives Garrison and Michael acted in concert to withhold exculpatory evidence from Mr. Coones.  But Plaintiff wholly fails to point the Court to evidence in the record on which she relies for this proposition, and she wholly fails to address any of the evidence she relies on to support this claim against Defendants Block and Brown.  The mere fact that Defendants "engaged in '[p]arallel action . . . does not necessarily indicate an agreement to act in concert.'"[113]  Accordingly, the Court cannot find that Plaintiff has met her burden on summary judgment of showing that the individual officers acted in concert and had a meeting of the minds or a general conspiratorial objective when they deprived Mr. Coones of his constitutional rights.  Accordingly, Defendants' motion for summary judgment on the conspiracy claim in Count IV is granted.

### B.    Official Capacity Claims under § 1983—*Monell* Liability

Counts I through IV also allege official-capacity claims against the Unified Government.  "A municipality is not directly liable for the constitutional torts of its employees. . . .  But [it] may be held liable under *Monell* if it executes an unconstitutional policy or custom, or a facially constitutional policy that causes a constitutional violation."[114]  But "[a] municipality may not be held liable where there was no underlying constitutional violation by any of its officers."[115]  Here, the Court has determined that there is no genuine issue of material fact about whether there was an underlying constitutional violation by the individual Defendants on the conspiracy claim; thus, the Court grants summary judgment on the official capacity claim as well.

---

[113] *Frazier*, 992 F.3d at 1025 (alteration and omission in original) (quoting *Brooks*, 614 F.3d at 1228).

[114] *Finch v. Rapp*, 38 F.4th 1234, 1244 (10th Cir. 2022) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

[115] *Johnson v. City of Cheyenne*, 99 F.4th 1206, 1233 (10th Cir. 2024) (quoting  Wilson v. Meeks, 98 F.3d 1247, 1255 (10th Cir. 1996)).

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.67

There is evidence to support a constitutional violation by Unified Government employees on the other three counts. To prove her *Monell* claim on these, Plaintiff must show: (1) "a municipal policy or custom—either an official rule or one so entrenched in practice as to constitute an official policy"; (2) "that the municipality was deliberately indifferent to constitutional violations that were the obvious consequence of its policy"; and (3) "that the policy directly caused his constitutional injury."[116]

The sum total of Defendants' motion for summary judgment on the *Monell* claim is that "[t]here is no admissible evidence of a policy, practice, or custom causing a violation of Pete Coones' constitutional rights."[117] They maintain that Plaintiff's claims are in fact contrary to municipal policy, which shields the Unified Government from liability. The Court disagrees that summary judgment is warranted on these cursory assertions.

Defendants limit their motion to addressing the first prong of the *Monell* claim. The Tenth Circuit has identified the following types of policies or customs for purposes of *Monell*:

> (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."[118]

---

[116] *Finch*, 38 F.4th at 1244.

[117] Doc. 101 at 34.

[118] *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (alteration in original) (quoting *Brammer–Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189–90 (10th Cir. 2010)).

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.68

Here, Plaintiff asserts that the Board and the Unified Government failed to train or supervise its employees and had a widespread practice of not disciplining officers' civil rights violations, which directly caused the constitutional violations that led to Mr. Coones' wrongful conviction. Specifically, Plaintiff argues that at the time of the Schroll investigation, the homicide detectives' supervisor was Roger Golubski, an officer who is now under criminal indictment for sexual assault and sex trafficking, and whose misconduct was openly tolerated and overlooked within the department at that time. Plaintiff also points to evidence that civil rights complaints were categorized as "other contacts" complaints so they could be investigated outside of the internal affairs system without documentation, and that the KCKPD did not welcome reports about fellow officers. Plaintiff offers evidence that Golubski, the homicide detectives' supervisor, had eleven such "other contacts" complaints from 1993 to 2011, without receiving discipline, and that the KCKPD's priority of solving homicide cases drove the KCKPD's failure to supervise and train detectives to follow formal policies. Specific to this case, Golubski attended a meeting where Block shared information with Garrison and Michael about the elder abuse investigation, he signed off on the detectives' reports, and he assigned Block to attend the autopsies.

Rather than argue the merits of this evidence, Defendants maintain that it is inadmissible. Summary judgment evidence need not be "submitted 'in a form that would be admissible at trial.'"[119] But the proponent of the evidence must "show that it will be possible to put the information, the substance or content of the evidence, into an admissible form."[120]

---

[119] *Brown v. Perez*, <u>835 F.3d 1223, 1232</u> (10th Cir. 2016) (quoting *Trevizo v. Adams*, <u>455 F.3d 1155, 1160</u> (10th Cir. 2006)).

[120] *Id.* (citations omitted).

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.69

Defendants argue that much of the evidence relied on by Plaintiff to support its *Monell* claim is inadmissible because the affiants or deponents lack personal knowledge. But, as discussed in the fact section, Defendants' objections to Seifert's testimony are overruled and denied because Plaintiff has adequately established Seifert had personal knowledge of the statements relied on by Plaintiff. The Court likewise overrules Defendants' objections to the affidavits from victims who attest that Golubski had a pattern of fabricating and suppressing evidence. The Court has reviewed these affidavits and finds that they are based on the personal knowledge of various Kansas City, Kansas citizens who observed and interacted with Roger Golubski during his many years as a KCKPD officer. In considering the parties' statements of fact, the Court only relied on evidence that was based on personal knowledge.

Viewing the facts derived from admissible evidence in the summary judgment record in the light most favorable to Plaintiff, she has come forward with sufficient evidence to create a genuine issue of material fact about whether the Unified Government had a policy, practice, or custom that was the driving force behind the individual law enforcement officers' violations of Mr. Coones' constitutional rights. Thus, Defendants' summary judgment motion on the *Monell* claims is denied.

### C. State Law Claims

#### 1. Malicious Prosecution

Plaintiff alleges a state law claim for malicious prosecution against all Defendants. To state a malicious prosecution claim under Kansas law, a plaintiff must prove:

> (1) that defendant initiated, continued, or procured the proceeding of which complaint is made; (2) that defendant in doing so acted without probable cause; (3) that defendant must have acted with

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.70

malice; (4) that the proceedings terminated in favor of plaintiff; and (5) that plaintiff sustained damages.[121]

Defendants move for summary judgment on the basis that this claim is barred by discretionary function immunity, and the existence of probable cause.

Defendants first assert that they are immune from liability under the Kansas Tort Claims Act ("KTCA"), which is a question of law for the Court to decide.[122]  Under the KTCA, the general rule is that governmental entities and their employees are subject "to vicarious liability under the doctrine of respondeat superior, making such entities liable for the tortious conduct of their employees in the same way that a private employer would be."[123]  But the KTCA contains many exceptions, including where an employee exercises a discretionary function:

> (5) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved.[124]

Defendants bear the burden of showing that KTCA immunity applies.[125]  "[T]to determine whether a government employee's function or duty is discretionary for the purposes of the KTCA, courts must ask 'whether the judgment of the governmental employee is of the nature and quality which the legislature intended to put beyond judicial review.'"[126]  Nonetheless, there is no KTCA immunity for a law enforcement officer who commits an intentional tort such as

---

[121] *Lindenman v. Umscheid*, 875 P.2d 964, 974 (Kan. 1994).

[122] *Schreiner v. Hodge*, 504 P.3d 410, 422 (Kan. 2022).

[123] Id.

[124] K.S.A. 75-6104(a)(5).

[125] *Schreiner*, 504 P.3d at 423.

[126] *Id.* at 424 (quoting *Bolyard v. Kan. Dep't of SRS*, 912 P.2d 729, 733 (Kan. 1996)).

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.71

malicious prosecution.[127]  As described on Plaintiff's federal malicious prosecution claim, she has sufficiently demonstrated evidence of malice to survive qualified immunity.  Discretionary function immunity is therefore not available on this claim under Kansas law.

Finally, Defendants argue that the state law claim fails for the same reasons the federal claim fails—a lack of probable cause for Mr. Coones' prosecution.  But for the reasons already discussed on the federal claim, Plaintiff's evidence about the lack of probable cause is sufficient to withstand summary judgment.  Defendants motion for summary judgment on the state law malicious prosecution claim is therefore denied.

### 2.    Intentional Infliction of Emotional Distress

Plaintiff alleges a state law claim for intentional infliction of emotional distress against all Defendants.  Under Kansas law, an intentional infliction of emotional distress claim has four elements: (1) conduct of defendant must be intentional or in reckless disregard of the plaintiff, (2) conduct must be extreme and outrageous, (3) there must be a causal connection between the defendant's conduct and the plaintiff's mental distress, and (4) plaintiff's mental distress must be extreme and severe.[128]  There are two threshold requirements that the court must determine: (1) whether "the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery"; and (2) whether "the emotional distress suffered by the plaintiff is so extreme the law must intervene because no reasonable person would be expected to endure it."[129]

Defendants state without analysis that Plaintiff cannot meet either threshold requirement because the officers' conduct "was not 'beyond the bounds of decency' nor was it 'utterly

---

[127] *Tran v. City of Lawrence*, 653 F. Supp. 3d 894, 909 (D. Kan. 2023) (collecting cases); *see also Schreiner*, 504 P.3d at 429 ("[T]he KTCA's discretionary function immunity does not insulate officers from liability for damages arising from wanton or malicious conduct.").

[128] *Bolden v. PRC Inc.*, 43 F.3d 545, 553 (10th Cir. 1994) (citations omitted).

[129] *Id.* (quoting *Roberts v. Saylor*, 637 P.2d 1175, 1179 (Kan. 1981)).

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.72

intolerable in a civilized society.'"[130]  First, this argument goes to the first and not the second threshold requirement only.[131]  Second, as Plaintiff correctly argues, the Court is required to view the evidence in the light most favorable to her.  When applying that standard, the threshold requirements are met.  Plaintiff has submitted evidence that the law enforcement officers fabricated inculpatory evidence and withheld exculpatory evidence that led to Mr. Coones' wrongful conviction for the murder of Kathleen Schroll, causing him to spend more than ten years wrongfully imprisoned.  This is sufficient to trigger a jury trial on her intentional infliction of emotional distress claim.  Summary judgment is therefore denied.

### 3.    Conspiracy

Plaintiff alleges a state law claim for conspiracy against all Defendants, arguing that they agreed to suppress and fabricate evidence to secure Mr. Coones' wrongful conviction while acting within the scope of their employment.  To establish this tort claim at trial, Plaintiff must show, "(i) two or more persons, (ii) an object to be accomplished, (iii) a meeting of the minds in the object or course of action, (iv) one or more unlawful overt acts, and (v) damages as the proximate result thereof."[132]  Additionally, a conspiracy claim "is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy."[133]

Defendants move for summary judgment on Plaintiff's state law conspiracy claim on the sole basis that Plaintiff cannot show there is an underlying tort independent of the conspiracy.  But, as discussed above, Plaintiff has demonstrated a genuine issue of material fact as to her

---

[130] Doc. 101 at 38 (quoting *Roberts v. Saylor*, 637 P.2d 1175, 1179 (Kan. 1981)).

[131] *See Roberts*, 637 P.2d at 1179 (explaining that the first requirement may be met "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society").

[132] *Reams v. City of Frontenac*, 587 F. Supp. 3d 1082, 1104 (D. Kan. 2022) (citing *Stoldt v. City of Toronto*, 678 P.2d 153, 161 (Kan. 1984)).

[133] *Id.* (citing *Stoldt*, 678 P.2d at 161).

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.73

malicious prosecution and intention infliction of emotional distress claims.  Thus, the Court must deny Defendants' motion for summary judgment on the civil conspiracy claim.

### 4.    Indemnification

In Count V, Plaintiff alleges a claim against the Board and the Unified Government, seeking payment for any judgment rendered against the individually-named Defendants.  The KTCA provides that "a governmental entity is liable, and shall indemnify its employees against damages, for injury or damage proximately caused by an act or omission of an employee while acting within the scope of his or her employment."[134]  But "policies of indemnification lessen the burden on state employees—they do not ensure a prevailing plaintiff's ability to collect on judgments."[135]  Thus, Plaintiff does not have an independent cause of action against the municipal Defendants for indemnification, and the Court grants Defendants motion for summary judgment on this claim.

### 5.    Respondeat Superior

In Count X, Plaintiff alleges a respondeat superior liability claim against the Unified Government on the basis that its employees' tortious conduct was within the scope of their employment.  Defendants argues that respondeat superior is not an independent claim under Kansas law.

Under the KTCA, "each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would

---

[134] K.S.A. § 75-6109.

[135] *Couser v. Somers*, No. 18-1221-JWB-GEB, 2020 WL 6742790, at *13 (D. Kan. Nov. 17, 2020) (citation omitted), *report and recommendation adopted in part sub nom. Est. of Holmes by & through Couser v. Somers*, No. 18-1221-JWB, 2021 WL 236080 (D. Kan. Jan. 25, 2021).

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.74

be liable under the laws of this state."[136]  The Court need not reach the question of whether respondeat superior is an independent claim because in this case, the respondeat superior claim is duplicative of the other surviving state law claims that name the municipal Defendants.  Plaintiff alleges malicious prosecution and intentional infliction of emotional distress against both the individual and municipal defendants, and she does not articulate a basis for direct municipal liability on those claims.  Thus, Count X, alleging that "the Municipal Defendants are liable for the individual Defendants' torts"[137] is duplicative of their state law tort claims that already name the municipal Defendants under a respondeat superior theory of liability.  Summary judgment is therefore granted on Count X.

　　**IT IS THEREFORE ORDERED BY THE COURT** that all claims against Defendants Dorsett and Sanchez are **dismissed**; the malicious prosecution claims (Counts II and VI) against Defendants Block and Brown are **dismissed**, and the negligent infliction of emotional distress claim (Count VIII) is **dismissed**.

　　**IT IS FURTHER ORDERED BY THE COURT** that Defendants' Motion for Summary Judgment (Doc. 101) is **granted in part and denied in part**.  Summary judgment is granted as to: (1) the § 1983 individual-capacity claims against Defendants Block and Brown on Count I; (2) the § 1983 individual-capacity claims in Counts III and IV; (2) the § 1983 official-capacity claim in Count IV; and (3) the state law claims asserted in Counts V and X.  Defendants' motion for summary judgment is otherwise denied.

　　**IT IS SO ORDERED.**

　　Dated: October 1, 2024

---

[136] K.S.A. § 75-6103(a).

[137] Doc. 96 at 23.

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.75

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

2:22-cv-02447-JAR
Coones v. Unified Government of
Wyandotte County/Kansas City, KS
Board of County Commissioners et al
Preliminary Record, p.76

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

DEIRDRE COONES, as executor of the estate
of Olin Coones,

Plaintiff,

v.                                                          Case No. 2:22-cv-02447-JAR-TJJ

BOARD OF COUNTY COMMISSIONERS OF THE
UNIFIED GOVERNMENT OF WYANDOTTE
COUNTY AND KANSAS CITY, KS, et al.,

Defendants.

---

### Notice of Appeal

Defendants hereby give notice that, as defendants in the above-captioned case, they hereby appeal to the United States Court of Appeals for the Tenth Circuit from those portions of the Memorandum and Order (Doc. 121) filed in this action on September 30, 2024 and the corrected Memorandum and Order (Doc. 122) filed October 1, 2024, which denied judgment on the basis of qualified immunity to which they are entitled (a question of law) with respect to plaintiff's claims under 42 U.S.C. § 1983, and all related adverse rulings in those Memoranda and Orders pertaining to these defendants. Defendants further appeal any and all prior adverse rulings related to their qualified immunity defense.

{T0484505}                                   1                        2:22-cv-02447-JAR
                                                                      Coones v. Unified Government of
                                                                      Wyandotte County/Kansas City, KS
                                                                      Board of County Commissioners et al
                                                                      Preliminary Record, p.77

**Fisher, Patterson, Sayler & Smith, LLP**
3550 SW 5th Street | Topeka, Kansas 66606
Tel: (785) 232-7761 | Fax: (785) 232-6604
dcooper@fpsslaw.com | cbranson@fpsslaw.com

**s/David R. Cooper**

| David R. Cooper | #16690 |
|---|---|
| Charles E. Branson | #17376 |

*Attorneys for Defendants*

Daniel E. Kuhn, #20429
Unified Government of Wyandotte
  County/Kansas City, Kansas
Legal Department
701 N. 7th Street, Suite 961
Kansas City, Kansas 66101
Tel: (913) 573-5060 | Fax: (913) 573-5243
Email: dkuhn@wycokck.org
*Attorney for Defendants Unified Government of
Wyandotte County and Kansas City, Kansas*

## Certificate of Service

I hereby certify that on October 1, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record:

Joshua L. Loevy | Jonathan Loevy | Russell Ainsworth | Locke Bowman | Wally Hilke
LOEVY & LOEVY | 311 N. Aberdeen Street, 3rd Floor | Chicago, Illinois 60607
Tel: (312) 243-5900 | Fax: (312) 249-5902
joshl@loevy.com
jon@loevy.com
russell@loevy.com
locke@loevy.com
hilke@loevy.com

Brandon A. Bell | Lindsay Runnels
MORGAN PILATE, LLC | 926 Cherry Street | Kansas City, Missouri 64106
Tel: (816) 471-6694 | Fax: (816) 472-3516
bbell@morganpilate.com
lrunnels@morganpilate.com
**Attorneys for Plaintiff**

s/David R. Cooper

{T0484505}                                    2                    2:22-cv-02447-JAR
                                                                   Coones v. Unified Government of
                                                                   Wyandotte County/Kansas City, KS
                                                                   Board of County Commissioners et al
                                                                   Preliminary Record, p.78