IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DEIRDRE COONES, Executor of the Estate of Olin Coones,**<br><br>**Plaintiff,**<br><br>v.<br><br>**UNIFIED GOVERNMENT OF WYANDOTTE COUNTY/KANSAS CITY, KANSAS BOARD OF COUNTY COMMISSIONERS, et al.,**<br><br>**Defendants.** | Case No. 22-2447-JAR |

**MEMORANDUM AND ORDER**

Plaintiff Deirdre Coones, as Executor of the Estate of Olin Coones, brings this action asserting federal civil rights claims and state law tort claims against the following remaining Defendants: Board of County Commissioners of the Unified Government of Wyandotte County and Kansas City, Kansas ("Board"); Unified Government of Wyandotte County and Kansas City, Kansas ("Unified Government"); Kansas City, Kansas Police Detective William Michael; and Kansas City, Kansas Police Detective Angela Garrison. Plaintiff's claims arise out of her deceased husband Olin "Pete" Coones' wrongful conviction for the murder of Kathleen Schroll ("Kathleen"), who had been a caretaker for Mr. Coones' late father.

On September 30, 2024, this Court granted in part and denied in part Defendants' summary judgment motion ("September 30 Order"),[1] which included denying qualified immunity to Detectives Michael and Garrison on Plaintiff's 42 U.S.C. § 1983 claims for due process violations and malicious prosecution. Trial was set for November 4, 2024; however, on

---

[1] Doc. 121-1.

October 1, 2024, Defendants filed a Notice of Interlocutory Appeal.[2] Before the Court is Plaintiff's Motion to Certify Defendants' Interlocutory Appeal as Frivolous (Doc. 126). If granted, the Court would continue to exercise jurisdiction and trial would proceed, despite Defendants' interlocutory appeal. The parties appeared before the Court on October 28, 2024, and argued the motion. Having fully considered the parties' arguments in the briefs and at the hearing, the Court is prepared to rule. As described more fully below, the Court denies Plaintiff's motion to certify the interlocutory appeal as frivolous.

## I.  Summary Judgment Order

The Court's September 30 Order set forth in detail its reasons for granting in part and denying in part summary judgment on Plaintiff's many federal and state claims for relief. The Court incorporates by reference the background from that Order and assumes the reader is familiar with the facts, which center around the investigation and trial of Mr. Coones for the murders of Kathleen and her husband, Carl Schroll ("Carl"). Relevant to the pending motion, this Court denied qualified immunity to Defendants Michael and Garrison—the homicide detectives assigned to the case—on Counts I and II, which alleged due process violations and malicious prosecution. Plaintiff asserts that, but for these constitutional violations, Mr. Coones would not have been prosecuted because the detectives should have concluded that Kathleen killed her husband, Carl, and then committed suicide.

### A.  Due Process Rulings

The Court considered three types of due process violations alleged by Plaintiff: (1) that the detectives withheld material evidence from the defense in violation of *Brady v. Maryland*;[3]

---

[2] Doc. 123.

[3] 373 U.S. 87 (1963).

(2) that the detectives failed to preserve evidence in violation of *California v. Trombetta*;[4] and (3) that Detective Michael fabricated evidence by falsely attesting that Mr. Coones' vehicle was not at his home on the morning of the Schrolls' deaths. These due process violations have different elements; thus, the Court separately considered whether Plaintiff met her qualified-immunity burden on each.

On the *Brady* claim, Plaintiff argued that the following evidence was withheld from the defense: (1) that Kathleen's credit union employer reported to the detectives during the investigation that it discovered she was embezzling money just before her death and provided them with a report; (2) a Kansas Bureau of Investigation ("KBI") document examiner's report analyzing 120 of Mr. Coones' father's checks, finding "strong indications" that all but three may not have been authored by him, and identifying Kathleen as the suspect; and (3) the detectives' review of a QuikTrip surveillance video from two days before Kathleen's death, showing no footage of Katheleen or Mr. Coones, which contradicted Kathleen's report to her daughter that she had an altercation in the doorway of the QuikTrip with Mr. Coones.

The only *Brady* element at issue on summary judgment was materiality. The Court explained that Plaintiff must show "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different."[5] The Court also considered the cumulative impact of the evidence withheld from Mr. Coones.[6] As for the embezzlement evidence, Plaintiff presented evidence upon which a reasonable jury could conclude that the detectives were told about it and given the report during the homicide investigation. The Court

---

[4] 467 U.S. 479 (1984).

[5] *Cone v. Bell*, 556 U.S. 449, 470 (2009).

[6] *See Fontenot v. Crow*, 4 F.4th 982, 1080–81 (10th Cir. 2021) (quoting *Simpson v. Carpenter*, 912 F.3d 542, 572 (10th Cir. 2018)).

determined that this evidence would have put the case in a different light given that Mr. Coones' trial defense was that Kathleen commited suicide and framed Mr. Coones for her and her husband's deaths.  On the forgery evidence, the Court found evidence that Defendant Bryan Block[7] withheld it, and that, when viewed together with the embezzlement evidence, it was material.  Finally, the Court found that the existence of the QuikTrip video and its contents was material and not cumulative because it would have showed no altercation between Mr. Coones and Kathleen shortly before her death, in conflict with her report to her daughter.

The Court next considered Plaintiff's claim that Defendants failed to collect or inventory the QuikTrip video in violation of *Trombetta*.  The Court found that the bad faith standard required by *Arizona v. Youngblood*, which applies when the destroyed evidence is only potentially useful, did not apply here.[8]  Defendants conceded that the video did not show either Kathleen or Mr. Coones during the period of time when Kathleen had reported their altercation occurred.  Given that the prosecution relied on Mr. Coones' animosity towards Kathleen as evidence of motive, the Court found this evidence was material and not merely "potentially useful."

Finally, the Court considered Plaintiff's fabrication claim—that Detective Michael testified falsely that Mr. Coones' van was not at his house the morning of the murder.  The Court's ruling on this claim was twofold.  Because Defendants did not separately apply or acknowledge the test for fabrication claims under the due process clause,[9] the Court found that

---

[7] Defendants Bryan Block and Susan Brown have been dismissed.  In the Court's September 30 Order, it granted summary judgment in their favor on qualified immunity grounds on the federal claims.  *See* Doc. 121-1. In the Court's Order granting Defendants' motion to reconsider, it granted summary judgment on the remaining claim alleged against them, a state law claim for intentional infliction of emotional distress.

[8] 488 U.S. 51, 57–58 (1988).

[9] *See Truman v. Orem City*, 1 F.4th 1227, 1236 (10th Cir. 2021).

Defendants waived it. But the Court went on to explain that, to the extent Defendants did not waive the claim, Plaintiff met her burden of showing a strong issue of fact about whether Detective Michael fabricated his testimony about the van.

On the second prong of qualified immunity, the Court determined that all of these constitutional rights were clearly established at the time of the violations.

Finally, the Court considered the requisite mental state for Plaintiff's due process claims—deliberate or reckless intent—and found that the evidence, when viewed in the light most favorable to Plaintiff, showed at least reckless intent by both Detectives Michael and Garrison.[10]

### B. Malicious Prosecution Rulings

The Court found that qualified immunity does not apply to Detectives Michael and Garrison on the malicious prosecution claim, as alleged in Count II. First, the Court found that Plaintiff met her burden of showing there was no arguable probable cause for Mr. Coones' prosecution when considering the withheld evidence and disregarding the fabricated evidence. Second, the Court found that the preliminary hearing did not break the chain of causation, as argued by Defendants, because the same withheld and fabricated evidence was presented to the judge at that hearing, and the judge relied upon it when binding Mr. Coones over for trial. Third, the Court found evidence of malice because it may be inferred when there was no evidence of arguable probable cause,[11] and because a reasonable jury could conclude that Defendants actions were not merely negligent. Finally, the Court found that it was clearly established at the time of

---

[10] *See Johnson v. City of Cheyenne*, 99 F.4th 1206, 1232 (10th Cir. 2024) (quoting *Webber v. Mefford*, 43 F.3d 1340, 1343 (10th Cir. 1994)).

[11] *See Bledsoe v. Carreno*, 53 F.4th 589, 615 (10th Cir. 2022) (quoting *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014)).

the investigation that detectives could not rely on withheld or fabricated evidence to support an arrest warrant or prosecution.

## II. Standard

Generally, courts of appeal have jurisdiction over "final decisions" of the district courts.[12] There is a "small class" of prejudgment orders, however, "that, though short of final judgment, are immediately appealable because they 'finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review.'"[13] An appeal from the denial of qualified immunity falls within this small class of cases "to the extent that it turns on an issue of law."[14] Generally, the district court and court of appeals should not exercise jurisdiction over a case at the same time; thus, a notice of interlocutory appeal "confers jurisdiction on the court of appeals and divests the district court of its control of those aspects of the case involved in the appeal."[15]

The Supreme Court and the Tenth Circuit have acknowledged that this right to interlocutory appeal creates an opportunity for abuse; therefore, the Tenth Circuit developed a process for certifying an interlocutory appeal as "frivolous," thereby allowing the district court to retain jurisdiction during the pendency of the appeal.[16] Under Tenth Circuit law, the "potential

---

[12] 28 U.S.C. § 1291.

[13] *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).

[14] *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

[15] *Stewart v. Donges*, 915 F.2d 572, 574 (10th Cir. 1990) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). As a practical matter, the Tenth Circuit advises that "[i]f the defense is valid, then no part of the action should proceed against the defendant. In that regard, an interlocutory appeal from an order refusing to dismiss on . . . qualified immunity grounds relates to the entire action and, therefore, it divests the district court of jurisdiction to proceed with any part of the action against an appealing defendant." *Id.* at 576.

[16] *Behrens*, 516 U.S. at 310–11 (collecting cases); *Stewart*, 915 F.2d at 576–77.

misuse of interlocutory review [can] be prevented if the district court '(1) after a hearing and, (2) for substantial reasons given, (3) [finds] the claim to be frivolous."[17]

Plaintiff bears the burden of demonstrating that the appeal is frivolous.[18] An appeal is "frivolous if the result is obvious, or the arguments of error are wholly without merit,"[19] or if it is "baseless, unfounded or a sham."[20] If the Court certifies an interlocutory appeal as frivolous, "both the district court and the court of appeals shall have jurisdiction to proceed."[21] This allows the district court to proceed with trial, despite the interlocutory appeal.[22]

## III. Discussion

Before briefing could begin, the Tenth Circuit abated Defendants' interlocutory appeal pending this Court's ruling on Defendants' separate motion to reconsider two of the Court's summary judgment rulings on the state law claims.[23] Thus, the only document that sets forth the grounds for Defendants' appeal is their response to the motion to certify.[24] Those grounds are: (1) the Court improperly considered the withheld forgery report in its legal analysis of the due process claims, even though there was no evidence that Detectives Michael and Garrison were

---

[17] *Stewart*, 915 F.2d at 576 (quoting *United States v. Hines*, 689 F.2d 934, 937 (10th Cir. 1982)); *see also Apostol v. Gallion*, 870 F.2d 1335, 1338–39 (7th Cir. 1989) ("Defendants may take *Forsyth* appeals for tactical as well as strategic reasons: disappointed by the denial of a continuance, they may help themselves to a postponement by lodging a notice of appeal. Proceedings masquerading as *Forsyth* appeals but in fact not presenting genuine claims of immunity create still further problems.").

[18] *Stewart*, 915 F.2d at 577.

[19] *Autorama Corp. v. Stewart*, 802 F.2d 1284, 1288 (10th Cir. 1986) (citing *DeWitt v. W. Pac. R.R.*, 719 F.2d 1448, 1451 (9th Cir. 1983)).

[20] *Bledsoe v. Bd. of Cnty. Comm'rs*, No. 16-2296-DDC-JPO, 2021 WL 1840069, at *4 (D. Kan. May 7, 2021) (quoting *Kickapoo Tribe of Indians v. Kansas*, Nos. 92-4233-SAC, 92-4234-SAC, 1993 WL 192795, at *5 (D. Kan. May 19, 1993)).

[21] *Hines*, 689 F.2d at 937 (quoting *United States v. Leppo*, 634 F.2d 101, 105 (3d Cir. 1980)).

[22] *Stewart*, 915 F.2d at 577 (quoting *Apostol*, 870 F.2d at 1338).

[23] The Court recently issued a Memorandum and Order granting that motion to reconsider, which dismissed the state law conspiracy claim in its entirety and the intentional infliction of emotional distress claim against Block and Brown.

[24] Doc. 128.

aware of the report or were responsible for withholding it; (2) neither the QuikTrip video nor the embezzlement report had exculpatory value, and there was no evidence that Detectives Michael and Garrison believed they possessed exculpatory value; (3) the Court erred by concluding that Defendants failed to invoke qualified immunity on the fabrication claim; (4) the Court applied an incorrect legal standard on the state-of-mind requirement that applied to Detectives Michael and Garrison on the due process claim; and (5) the Court erred in denying qualified immunity to Detective Garrison on the malicious prosecution claim given that there was no evidence that she testified at the preliminary hearing.

Plaintiff argues that Defendants' interlocutory appeal is frivolous and was filed to delay the impending trial in this matter for two overarching reasons: (1) several of Defendants' issues of law are actually disputes of fact over which it is obvious that the Tenth Circuit lacks jurisdiction; and (2) Defendants waived the remaining issues of law they seek to appeal by not raising them in their summary judgment motion. The Court addresses each in turn and determines that although Plaintiff's arguments are well-taken, Defendants' stated grounds for appeal are not frivolous under the standard set forth above.

### A.     Jurisdiction

Plaintiff maintains that the Tenth Circuit lacks jurisdiction to decide the issues raised by Defendants that depend on evidentiary sufficiency, even though they are framed as legal issues.[25] Defendants insist that they do not challenge the Court's factual determinations, and in fact only raise issues of law. As stated above, under the collateral order doctrine, the circuit court has

---

[25] Plaintiff bases her written motion to certify as frivolous in large part on lack of jurisdiction. *See* Doc. 126 at 5–8. When pressed by the Court at oral argument, however, Plaintiff indicated that if the appeal pertains solely to non-legal issues, there is no need for this Court to deem the appeal frivolous. Since the written motion relies on lack of jurisdiction, the Court considers it here. The Court declines to go further and rule on the merits of these purportedly non-legal issues since those arguments were not raised in the written motion as grounds for certification.

jurisdiction "to review a state official's appeal from the denial of qualified immunity at the summary judgment stage, but only to the extent the appeal involves abstract issues of law."[26] In *Johnson v. Jones*, the Supreme Court held "that a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial."[27] Cases that qualify for interlocutory appellate review "typically involve contests not about what occurred, or why an action was taken or omitted, but disputes about the substance and clarity of pre-existing law."[28]

Thus, the Tenth Circuit counsels that "[a]bstract issues of law are limited to '(1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation' and '(2) whether that law was clearly established at the time of the alleged violation.'"[29] "[E]videntiary sufficiency appeals simply do not advance the purposes of qualified immunity."[30] There will be jurisdiction to review the denial of qualified immunity if it "would [not] require second-guessing the district court's determination of evidence sufficiency."[31] In other words, if the appeal presents the issue of "whether, based on '[t]he district court's factual

---

[26] *Ralston v. Cannon*, 884 F.3d 1060, 1066 (10th Cir. 2018) (citations omitted).

[27] 515 U.S. 304, 319–20 (1995).

[28] *Ortiz v. Jordan*, 562 U.S. 180, 190 (2011); *see also Ralston*, 884 F.3d at 1067 ("[Appellant] simply asserts the district court erred in determining a reasonable juror could conclude he acted intentionally or consciously. This court lacks jurisdiction to take up such an issue in an interlocutory appeal from the denial of summary judgment.").

[29] *Surat v. Klamser*, 52 F.4th 1261, 1269 (10th Cir. 2022) (quoting *Vette v. Sanders*, 989 F.3d 1154, 1162 (10th Cir. 2021)).

[30] *Roosevelt-Hennix v. Prickett*, 717 F.3d 751, 759 (10th Cir. 2013) (citing *Johnson*, 515 U.S. at 316).

[31] *Ralston*, 884 F.3d at 1067 (alteration in original) (quoting *Henderson v. Glanz*, 813 F.3d 938, 947–48 (10th Cir. 2015)).

findings and reasonable assumptions,'" the defendants are entitled to qualified immunity, the circuit court will have jurisdiction over the appeal.[32]

The parties dispute whether several of Defendants' grounds for appeal present abstract issues of law, or, rather, are based on evidentiary sufficiency over which the appellate court lacks jurisdiction.  The Court first considers Defendants' grounds for appealing the due process rulings relating to materiality.  Next, the Court considers Defendants' challenge to the Court's state-of-mind analysis on the due process claims.  *As described below, although the Court is not convinced that these grounds for appeal involve abstract issues of law, whether the appellate court has jurisdiction over these underdeveloped issues should be left to the Tenth Circuit to resolve.*

### 1. Materiality Issues

Defendants seek to appeal the Court's finding that the embezzlement report and the QuikTrip video were material, and argue that there is "no evidence" that the detectives believed that the evidence had exculpatory value at the time they encountered it.  Materiality under *Brady* is a mixed question of law and fact.[33]  Here, the Court found that a reasonable jury viewing the summary judgment record in the light most favorable to Plaintiff could determine that the embezzlement evidence and the QuikTrip video were material; that is, that "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different."[34]

---

[32] *Perry v. Durborow*, 892 F.3d 1116, 1120 (10th Cir. 2018) (quoting *Cox v. Glanz*, 800 F.3d 1231, 1243 (10th Cir. 2018)).

[33] *Moore v. Marr*, 254 F.3d 1235, 1244 (10th Cir. 2001) (citing *Moore v. Gibson*, 195 F.3d 1152, 1165 (10th Cir. 1999)) .

[34] *Cone v. Bell*, 556 U.S. 449, 470 (2009).

In viewing the evidence in the light most favorable to Plaintiff, the Court credited the 2020 testimony by Kathleen's supervisor that he told the detectives about the embezzlement during the 2008 investigation, and provided them with a report. The Court also explained that evidence of Kathleen's embezzlement was material because it (1) supports the defense theory at trial of murder-suicide by providing a motive for Kathleen to commit suicide; (2) corroborates the defense theory that Kathleen was stealing money from Mr. Coones' father, because it shows similar behavior with a subsequent employer; and (3) supports the defense's theory at trial that Kathleen had a reason to frame Mr. Coones for her murder, given that he was trying to prove that she had stolen money from his father. These conclusions are based on the reasonable inferences the Court found could be drawn from the evidence in the summary judgment record.

As for the QuikTrip video, Kathleen's daughter reported to detectives that Mr. Coones threatened Kathleen at a QuikTrip gas station two days before Kathleen's death, when Kathleen was walking out and Mr. Coones was walking in. Defendants have repeatedly cited (including at oral argument on this motion) the detectives' knowledge of this animosity between Kathleen and Mr. Coones as a basis for why Mr. Coones was a suspect, and why they developed probable cause to arrest him. It was uncontroverted that Detectives Michael and Garrison went to the QuikTrip and requested surveillance footage from that day, that an employee burned a CD copy of the surveillance footage for them, that the detectives brought the CD back to the police station and viewed it, that the footage only showed the interior of the store, and that they did not see Kathleen or Mr. Coones on the video.

The Court rejected Defendants' argument that the video was not material since it did not show Kathleen or Mr. Coones. As Plaintiff argued, a reasonable jury could conclude that this is exactly why the video was material. The fact that this altercation did not occur calls into

11

question the extent of Mr. Coones' animosity towards Kathleen, and there is no dispute that the lack of corroboration was known to the detectives. The Court determined that, when viewed in the light most favorable to Plaintiff, there is a reasonable probability that, had the QuikTrip surveillance video been disclosed, the result of the trial would have been different.

On the issue of materiality, although the Court was also required to view the evidence cumulatively and in light of the entire record,[35] it determined that a reasonable jury could find that the QuikTrip video and the embezzlement evidence were each independently material.[36] Moreover, the Court determined that the embezzlement and QuikTrip evidence, when viewed together and with the forgery report, were material. Defendants argue as a basis for appeal that the Court erred by considering the forgery evidence as part of this cumulative analysis since it ultimately determined that there was insufficient evidence that supported Detectives Block's and Brown's requisite mental state under § 1983. But even if the Court had not considered that evidence, it still determined that the other evidence was independently and together material.[37]

Plaintiff argues that Defendants' points of appeal on materiality, while couched as legal challenges, depend upon second guessing the Court's factual determinations about the permissible inferences that can be drawn from the summary judgment evidence. She argues that it is obvious that the Tenth Circuit does not have jurisdiction over such factual challenges to the Court's summary judgment ruling. But Defendants insisted at oral argument that their appeal

---

[35] *See Fontenot v. Crow*, 4 F.4th 982, 1080 (10th Cir. 2021) (quoting *Simpson v. Carpenter*, 912 F.3d 542, 572 (10th Cir. 2018)).

[36] Doc. 121-1 at 30 ("Plaintiff has met her burden of demonstrating that the embezzlement evidence 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'"), 32 ("A reasonable jury could find that the QuikTrip video, standing alone, made a difference because it showed no confrontation between Kathleen and Mr. Coones, which was used as evidence at trial because it occurred two days before her death.").

[37] Moreover, as the Court noted, Plaintiff relies on several other types of withheld evidence in support of her due process claim that were not at issue on summary judgment but will undoubtedly be at issue at trial. There will also be expert testimony in support of materiality that the Court did not consider on summary judgment.

does not challenge the sufficiency of the materiality evidence; instead, they contend that the Court misapplied the materiality standard by failing to examine how the evidence appeared to the detectives at the time they encountered the evidence during the investigation. Plaintiff responds that even if couched as a challenge to the Court's application of the materiality standard, Defendants mistakenly construe that standard, which is obvious.

The Court stands by its summary judgment order and its application of the materiality standard on the *Brady* and *Trombetta* claims. The Court further notes that the summary judgment evidence also supports materiality on the basis that the detectives understood at the time they encountered the evidence that it was exculpatory. Plaintiff came forward with evidence upon which a reasonable jury could conclude that the detectives should have known of the exculpatory value of the evidence—it should have been obvious to a reasonable officer under the circumstances. This is a fact-intensive inquiry. And, as discussed in the Court's recent Order ruling on expert admissibility, Plaintiff will present additional expert evidence at trial that this, as well as other evidence, should have caused the detectives to strongly consider and investigate whether the Schrolls' deaths were a murder-suicide. These issues challenge the Court's findings about the sufficiency of the evidence, not its rulings on abstract legal issues.

### 2. Defendants' Challenge to the Court's State-of-Mind Determination on the Due Process Claims

Defendants also intend to appeal on the basis that the Court "misapplied the legal standard for personal responsibility of Detectives Michael and Garrison."[38] While Defendants frame their objection to the Court's order as a legal issue, Plaintiff again argues that it calls into question the inferences that the Court found could be drawn from the summary judgment

---

[38] Doc. 128 at 7.

13

evidence about Detectives Michael's and Garrison's intent to withhold or fabricate evidence. Thus, Plaintiff maintains that the Tenth Circuit does not have jurisdiction over this point of appeal.

Plaintiff must show that each defendant was directly responsible for the due process violation, and that the detectives acted "with deliberate or reckless intent."[39] According to Defendants, there is no evidence that the detectives personally withheld the embezzlement or QuikTrip evidence. Confusingly, Defendants then discuss not intent, but *materiality* under *Trombetta*. To summarize, Defendants' point on appeal appears to conflate the issues of intent, materiality, and suppression. The Court has already discussed materiality. And there was clearly evidence in the summary judgment record to support the suppression element—Defendants never disputed that they accessed and viewed the surveillance video and did not produce it to the defense. And both Detective Michael and Thad Jones testified that detectives were provided with the embezzlement evidence that was never produced to the defense.

That leaves intent. Disputes about intent are highly factual inquires that the Supreme Court has cautioned are inappropriate for interlocutory appeal:

> [Q]uestions about whether or not a record demonstrates a "genuine" issue of fact for trial, if appealable, can consume inordinate amounts of appellate time. Many constitutional tort cases, unlike the simple "we didn't do it" case before us, involve factual controversies about, for example, intent—controversies that, before trial, may seem nebulous. To resolve those controversies—to determine whether there is or is not a triable issue of fact about such a matter—may require reading a vast pretrial record, with numerous conflicting affidavits, depositions, and other discovery materials. This fact means, compared with *Mitchell*, greater delay.[40]

---

[39] *See Johnson v. City of Cheyenne*, 99 F.4th 1206, 1232 (10th Cir. 2024) (quoting *Webber v. Mefford*, 43 F.3d 1340, 1343 (10th Cir. 1994)).

[40] *Johnson v. Jones*, 515 U.S. 304, 316 (1995).

14

Indeed, in this case, the Court determined that when drawing all reasonable inferences in favor of Plaintiff, the summary judgment evidence showed that Detectives Michael and Garrison personally participated in the due process violations and acted with the requisite intent. They were personally responsible for completing the investigative reports, viewing and then withholding evidence of the QuikTrip video and the embezzlement evidence. The Court determined that a reasonable jury could find that these detectives' conduct went beyond mere negligence because they should have understood the importance of the evidence and, yet, failed to produce it to the prosecutors or the defense. In further support of this contention, Plaintiff will offer expert evidence at trial about what a reasonable officer should have understood during the homicide investigation.

Indeed, it was undisputed that Detective Garrison considered the possibility of a murder-suicide while en route to the scene of the crime, but once she arrived and saw Kathleen's body, and then learned of the phone call Kathleen made to Elizabeth, she believed Kathleen was murdered. A jury could reasonably conclude from all of the evidence that it was reckless for both detectives not to revisit this theory given the evidence discovered during the investigation. And, if the jury believes Plaintiff's version of the facts, Detective Michael knowingly, or with reckless disregard for the truth, testified falsely about whether he could have seen Mr. Coones' van on the morning of the Schrolls' deaths. Plaintiffs' challenges to the Court's personal participation and intent rulings appear to challenge the sufficiency of the evidence, not abstract legal rulings.

### 3. Impact of the Jurisdictional Inquiry on Plaintiff's Motion to Certify

Despite the Court's conclusions that Defendants mischaracterize their materiality and intent challenges on appeal as questions of abstract law, the Court concludes that jurisdiction

15

over these issues should be decided by the Tenth Circuit in the first instance. Whether an appeal is based on evidentiary sufficiency or an "abstract legal issue" can be difficult to discern.[41] It is therefore unsurprising that there are few examples in this circuit of interlocutory appeals certified as frivolous based on lack of appellate jurisdiction.[42] Indeed, in this case, the parties frame the materiality and intent challenges differently; Defendants maintain that they are legal issues while Plaintiff contends they are factual. While the Court stands by its materiality and intent rulings, and its application of the appropriate legal standards, it is not prepared to find that Defendants' grounds for appeal on these issues are so obviously based on evidentiary sufficiency that the appeal is frivolous.

### B. Waiver

Plaintiff challenges the remaining issues identified by Defendants as grounds for appeal on the basis of waiver. Under the waiver rule, "[a]n issue is waived if it was not raised below in the district court."[43] The appellate court "will relax the waiver rule when the issues involved are

---

[41] *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Blaylock v. City of Philadelphia*, 504 F.3d 405, 414 (3d Cir. 2007) (describing *Scott* as the "outer limit of the principle of *Johnson v. Jones*").

[42] *See, e.g.*, *Est. of Melvin ex rel. Melvin v. City of Colorado Springs*, No. 20-CV-00991, 2023 WL 3437370, at *2–3 (D. Colo. May 12, 2023) (denying motion to certify appeal of order denying summary judgment on qualified immunity as frivolous on the basis that there is no appellate jurisdiction); *Jackson v. Besecker*, No. 15-CV-1182, 2016 WL 9632935, at *3 (D. Colo. Oct. 26, 2016) ("While I agree my rejection of Sheriff Besecker's qualified immunity defense turned on the nature and number of the highly contested factual disputes rather than any novel or disputed questions of law, prudence dictates I decline the request and permit the Tenth Circuit to make the call."); *Lowery v. County of Riley*, No. 04-3101-JTM, 2006 WL 8440214, at *2 (D. Kan. Dec. 14, 2006) ("In the court's view, the determination of whether there is a purely legal question to review should be determined by the Tenth Circuit."). *But see Valdez v. Motyka*, 416 F. Supp. 3d 1250, 1259 (D. Colo. 2019) ("If there is one version [of facts] a jury could accept that would constitute a violation of a clearly established right, no interlocutory review is available and the case may be set for trial.").

[43] *Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227, 1234 (10th Cir. 2018) (quoting *Wilburn v. Mid-South Health Dev., Inc.*, 343 F.3d 1274, 1280 (10th Cir. 2003)).

16

questions of law, the proper resolution of which are beyond reasonable doubt, and the failure to address the issues would result in a miscarriage of justice."[44]

First, Plaintiff argues that Defendants waived any challenge to the Court's ruling on due process fabrication because they did not raise it on summary judgment. As described above, Defendants did not separately apply or acknowledge the test that applies to fabrication claims under the due process clause, so the Court found that Defendants waived it. But the Court still addressed the claim, finding that, to the extent they did not waive the claim, Plaintiff met her burden of showing a strong issue of fact about whether Detective Michael fabricated his testimony about the van. Thus, even assuming Defendants did not waive their challenge to the fabrication claim on summary judgment, the Court finds it obvious that it did not misapply Plaintiff's summary judgment burden, as Defendants urge, because it proceeded to consider whether Plaintiff produced sufficient evidence of a constitutional violation.

Next, Plaintiff argues that Defendants waived any claim that the Court did not engage in a particularized inquiry as to Detective Garrison on the due process or malicious prosecution claims. The Court agrees with Plaintiff that Defendants did not sufficiently distinguish between the detectives' conduct in their summary judgment briefing. But the Court stops short of finding it obvious that this issue would be deemed waived by the court of appeals. Given the importance of the particularized inquiry required in a qualified immunity analysis,[45] the Tenth Circuit could relax the waiver rule to consider that issue. Under the exacting standard that applies to a motion to certify an appeal issue as frivolous, the Court declines to find that this point of appeal is frivolous.

---

[44] *Id.* (quoting *Gray v. Phillips Petroleum Co.*, 971 F.2d 591, 592 n.3 (10th Cir. 1992)).

[45] *See Johnson v. City of Cheyenne*, 99 F.4th 1206, 1232 (10th Cir. 2024).

17

## IV.     Conclusion

In sum, while the Court finds that Defendants' challenge on appeal to this Court's qualified immunity denial on the due process fabrication claim is clearly baseless, it reluctantly finds that the other grounds for appeal are not "wholly without merit." The Court is mindful of the delay failing to certify this interlocutory appeal presents to the litigants who would otherwise be prepared to start this trial immediately, but it must also be mindful that qualified immunity is "an immunity from suit rather than a mere defense to liability,"[46] and therefore, a summary judgment ruling "could not be effectively reviewed on appeal from a final judgment because by that time the immunity from standing trial will have been irretrievably lost."[47] Thus, under the exacting standard that applies to this motion, the Court denies Plaintiff's motion to certify Defendants' interlocutory appeal as frivolous.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Certify Defendants' Interlocutory Appeal as Frivolous (Doc. 126) is **denied**.

**IT IS SO ORDERED.**

Dated: November 14, 2024

> S/ Julie A. Robinson
> JULIE A. ROBINSON
> UNITED STATES DISTRICT JUDGE

---

[46] *Plumhoff v. Rickard*, 572 U.S. 765, 771–72 (2014) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

[47] *Id.* at 772.