IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DEIRDRE COONES, as Executor of the Estate
of Olin Coones,

       Plaintiff,

       v.

BOARD OF COUNTY COMMISSIONERS OF
THE UNIFIED GOVERNMENT OF
WYANDOTTE COUNTY/KANSAS CITY,
KANSAS, et al.,

       Defendants.

Case No. 22-2447-JAR

## MEMORANDUM AND ORDER

Plaintiff Deirdre Coones, as Executor of the Estate of Olin Coones, brings this action asserting federal civil rights claims and state law tort claims against Defendants Board of County Commissioners of the Unified Government of Wyandotte County and Kansas City, Kansas; Unified Government of Wyandotte County and Kansas City, Kansas ("Unified Government"); William Michael; and Angela Garrison. Plaintiff's claims arise out of her deceased husband, Olin Coones', wrongful conviction for the murders of Carl and Kathleen Schroll ("Carl" and "Kathleen"). Now before the Court are the parties' motions in limine (Docs. 136, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151). The motions are fully briefed, and the Court is prepared to rule. As discussed more fully below, the Court grants in part and denies in part the parties' motions.

## I.     Background

The Court assumes the reader is familiar with the facts and legal background of this case, which is set forth in detail in this Court's summary judgment order,[1] and in the Tenth Circuit's ruling on Defendants' interlocutory appeal.[2]  This case was previously set for trial on November 4, 2024.[3]  Prior to that trial setting, the parties complied with several pretrial filing deadlines, including motions in limine and responses thereto.  Before the Court could decide the pending motions in limine, Defendants filed a notice of interlocutory appeal of the Court's summary judgment decision denying qualified immunity on the 42 U.S.C. § 1983 claims alleged in Counts I and II.[4]  The Tenth Circuit has now affirmed the Court's qualified immunity ruling as to Defendants Michael and Garrison, and dismissed the Unified Government's pendent appeal.[5]  The case has been remanded for trial.

After consulting with the parties, the Court reset trial for October 16, 2026, on the remaining claims under § 1983 in Counts 1 (due process violations) and 2 (malicious prosecution) against Defendants William Michael and Angela Garrison, and the corresponding municipal liability claims against the Unified Government.  Also set for trial are state law claims against Michael, Garrison, and the Unified Government for malicious prosecution and intentional infliction of emotional distress.  The parties advised the Court at the most recent status conference that they will stand on the motions in limine and responses they filed before the interlocutory appeal.

---

[1] Doc. 121-1.

[2] 166 F.4th 1 (10th Cir. 2026).

[3] The Court denied Plaintiff's Motion to Certify Defendants' Interlocutory Appeal as Frivolous.  Doc. 126.

[4] Doc. 123.

[5] Doc. 174.

## II.    Plaintiff's Motions in Limine

Plaintiff filed eleven separate motions in limine.  Four of these motions are unopposed: Motion in Limine No. 8 to Bar References to Jurors' Pecuniary Interests as Taxpayers (Doc. 148); Motion in Limine No. 9 to Bar Reference to the Fact that Plaintiff's Attorneys are from Out of Town (Doc. 149); Motion in Limine No. 10 to Bar Undisclosed Expert Opinion Testimony (Doc. 150); and Motion in Limine No. 11 to Exclude Non-Party Witnesses from the Courtroom (Doc. 151).  These four motions are therefore granted.  The Court proceeds to consider Plaintiff's contested motions in turn.

### A.    Motion in Limine No. 1 to Bar Argument that Plaintiff's Constitutional Rights were not Violated Because his Attorney was Ineffective (Doc. 141)

Plaintiff asks the Court to prohibit Defendants from asserting a defense at trial that Plaintiff's wrongful conviction was caused by his trial counsel's ineffective assistance.  Plaintiff urges that such a defense misstates the law and would mislead the jury.  Defendants respond that Mr. Coones asserted an ineffective assistance of counsel claim in his habeas petition before the state court, that there was evidence presented at trial that would have allowed his counsel to argue a murder-suicide theory, and that counsel failed to either exploit inconsistencies in the evidence or hire an investigator to "conduct a background review on Ms. Schroll."[6]  According to Defendants, it was "the defense's job, not that of the detectives, to pursue this issue."[7]

The Court agrees with Plaintiff that Defendants generally may not assert an ineffective assistance of counsel "defense" to the claims alleged in this case.  On the due-process claims, Plaintiff alleges that Defendants violated Mr. Coones' due process rights by (1) withholding exculpatory evidence; (2) failing to preserve evidence; and (3) fabricating evidence.  Defense

---

[6] Doc. 160 at 3.

[7] *Id.*

counsel's effectiveness is not relevant to the elements of these claims, which turn on whether Defendants breached their constitutional duties to Mr. Coones.

All three types of due process claims have some materiality element.  For example, on the *Brady* claim, Plaintiff must show that the withheld evidence was material, meaning that it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."[8]  And it is axiomatic that the government must disclose *Brady* material even if the defense does not specifically request it.[9]  Introducing the concept of ineffective assistance of counsel—a Sixth Amendment claim that Plaintiff does not allege in this case—does not address the materiality element of the *Brady* claim.  Instead, it would allow Defendants to argue that, based on the evidence the defense did have, defense counsel was the reason Mr. Coones was convicted.  But as set forth above, materiality does not turn on whether the evidence would have allowed Mr. Coones to avoid conviction.  Plaintiff must only demonstrate that the withheld evidence would have put the case in a different light so as to undermine confidence in the verdict.  The Court finds that under Fed. R. Evid. 403, any minimal probative value of ineffective assistance of counsel on the due process claims is substantially outweighed by the risk of misleading the jury and shifting the burden that the Constitution places on the government to produce exculpatory evidence.

Similarly, ineffective assistance is not a defense to Plaintiff's malicious-prosecution claim.  On that claim, Plaintiff must show that "(1) the defendant caused the plaintiff's continued

---

[8] *Cone v. Bell*, 556 U.S. 449, 469–70 (2009) (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)).  On the failure-to-preserve claim, Plaintiff must demonstrate materiality in order to avoid a bad faith showing under *Arizona v. Youngblood*.  *See* 488 U.S. 51, 58 (1988).  On the fabrication claim, Plaintiff must demonstrate that the use of the fabricated evidence deprived Mr. Coones of his liberty.  *See Truman v. Orem City*, 1 F.4th 1227, 1236 (10th Cir. 2021) (footnotes omitted).

[9] *Kyles*, 514 U.S. at 432; *see also Banks v. Dretke*, 540 U.S. 668, 696 (2004) ("A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process.").

confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages."[10]  Plaintiff's malicious-prosecution claim is based on allegations that the detectives withheld information and made knowingly false statements that they knew were false, in order to procure Mr. Coones' detention and prosecution.

The malicious-prosecution claims in the Pretrial Order allege that Defendants' conduct caused Mr. Coones' arrest and prosecution.  In terms of the arrest, ineffective assistance could not be a defense because there is no evidence that defense counsel's failure to investigate or exploit the investigative inconsistencies occurred prior to his arrest.  In terms of the prosecution, § 1983 liability attaches so long as Defendants' conduct proximately caused the harm.[11]

> The requisite causal connection is satisfied if Defendants set in motion a series of events that Defendants knew or reasonably should have known would cause others to deprive Plaintiffs of their constitutional rights.  Indeed, section 1983 should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.[12]

As one district court has noted in the context of ineffective assistance of counsel, "[i]f the City is found, via municipal customary policy, to have directly caused a violation of Plaintiff's constitutional rights that then caused Plaintiff's purported injuries, any failure by [the defense

---

[10] *Bledsoe v. Carreno*, 53 F.4th 589, 614 (10th Cir. 2022).

[11] *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012).

[12] *Id.* (citation modified).

attorney] to effectively expose those violations does not break the chain of causation."[13]   Indeed,
comparative negligence does not apply in § 1983 cases.[14]

While the Court rules that Defendants cannot defend the due-process and malicious-
prosecution claims by arguing that defense counsel's ineffectiveness at trial and retrial was the
cause of his wrongful conviction, it stops short of ruling that all evidence about Mr. Coones'
representation at trial and retrial is inadmissible.  Evidence about how trial counsel Patricia Kalb
would have used the withheld or unfabricated evidence at trial may be relevant to show causation
or materiality on these claims.  The parties may approach the bench to lodge contemporaneous
objections to such evidence.

**B.      Motion in Limine No. 2 to Bar Reference to Prosecutorial or Judicial
        Findings of Probable Cause (Doc. 142)**

After Mr. Coones was arrested, the prosecutor, Edmond Brancart, presented the State's
case to a judge during a preliminary hearing.  Based on that presentation, the judge found
probable cause to bind Mr. Coones over for trial.  Plaintiff moves to exclude references or
evidence about prosecutorial or judicial findings of probable cause as irrelevant and prejudicial.
Defendants respond that the jury must be permitted to know what evidence existed at three
points in time: (1) Mr. Coones' original arrest, (2) the preliminary hearing, and (3) at the time of
conviction.

---

[13] *Rodriguez v. City of Houston*, No. H-06-2650, 2009 WL 10679669, at *20 (S.D. Tex. June 8, 2009); *see also Jones v. Cannizzaro*, No. 18-503, 2021 WL 217282, at *4–5 (E.D. La. Jan. 21, 2021) ("It is hardly highly extraordinary that an attorney deprived of favorable information might perform deficiently."); *Nnodimele v. Derienzo*, No. 13CV3461, 2016 WL 3561708, at *12 (E.D.N.Y. June 27, 2016) ("This court is persuaded by plaintiff's argument that the alleged ineffectiveness of plaintiff's counsel and the alleged rejection of plaintiff's defense and testimony were natural and foreseeable consequences—rather than superseding causes—of the injuries plaintiff claims.").

[14] *Cordova v. City of Albuquerque*, 816 F.3d 645, 659 (10th Cir. 2016), *abrogated on other grounds by Thompson v. Clark*, 596 U.S. 36 (2022).

Again, Plaintiff's malicious prosecution claim as stated in the Pretrial Order is based on the detectives' lack of probable cause at the time of Mr. Coones' arrest and continued prosecution. Defendants fail to explain why the jury would need to understand whether there was probable cause at the time of his conviction. As to the other two points in time, Plaintiff must convince the jury by a preponderance of the evidence that there was no probable cause. As the Tenth Circuit explained on appeal, "[p]robable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense."[15]

On summary judgment, Defendants argued that the judge's probable cause finding after the preliminary hearing obviated any lack of probable cause prior to that point. This Court rejected that argument, finding that Plaintiff's evidence, when viewed in the light most favorable to her, showed that the detectives concealed and misrepresented material facts to the judge at the preliminary hearing. The judge presiding over the preliminary hearing relied on Detective Michael's testimony about the van, the prosecutor's recitation of Mr. Coones' motive, and the autopsy report in finding probable cause for Mr. Coones' prosecution. Therefore, the preliminary hearing finding of probable cause does not break the chain of causation because there are allegations and evidence of knowing misstatements and material omissions by the detectives in this matter.[16] The Court declines to revisit this ruling.

---

[15] *Coones v. Bd. of Cnty. Comm'rs of Unified Gov't of Wyandotte Cnty./Kansas City, Kan.*, 166 F.4th 1, 28 (10th Cir. 2026) (quoting *United States v. Johnson*, 43 F.4th 1100, 1107 (10th Cir. 2022)).

[16] *See Pierce v. Gilchrist*, 359 F.3d 1279, 1288–89 (10th Cir. 2004); *Robinson v. Maruffi*, 895 F.2d 649, 655–56 (10th Cir. 1990).

Thus, the Court grants Plaintiff's motion in limine to the extent it seeks to exclude Defendants' argument that the prosecutor's or judge's probable cause determinations obviated any lack of probable cause before Mr. Coones was bound over for trial. However, to the extent Plaintiff seeks to exclude reference to *the evidence* presented in support of the search warrant and at the preliminary hearing, the motion is denied. Whether probable cause supported the original arrest, continued confinement, or prosecution of Mr. Coones is a jury determination, and Defendants must be allowed to present evidence on this element of Plaintiff's claim.

### C.    Motion in Limine No. 3 to Bar Hearsay Exhibits and Irrelevant "Practice" Testimony (Doc. 143)

#### 1.    Riddle Affidavit

Plaintiff first seeks to exclude Harold Riddle's affidavit. Riddle is not listed on Defendants' witness list, but his affidavit is listed on Defendants' exhibit list.[17] Plaintiff contends that Riddle has never been disclosed as a witness in this matter and that his affidavit is inadmissible hearsay under Fed. R. Evid. 801. Defendants fail to address the hearsay objection. The Court agrees that Riddle's affidavit should be excluded as inadmissible hearsay to the extent it is being offered for the truth of the matters asserted and therefore grants Plaintiff's motion in limine.

#### 2.    Matthews and Brancart Testimony on Practices in the DA's Office

Next, Plaintiff moves to limit David Matthews' and Brancart's testimony under either Fed. R. Civ. P. 37(c), or under Fed. R. Evid. 401, 402, and 403. These witnesses are described on Defendants' witness list as follows:

> 24. Ed Brancart – Former Deputy District Attorney will testify to his prosecution of Olin Coones criminal cases and policies and

---

[17] Doc. 130, Ex. 25.

> practices of the Wyandotte County Kansas District Attorney's Office.
>
> 25. David Matthews – former assistant district attorney that will testify to the policies and practices of the Wyandotte County Kansas District Attorney's Office as it relates to elder abuse/financial crimes.[18]

Plaintiff objects that Defendants failed to previously disclose that these witnesses would testify about the Wyandotte County Kansas District Attorney's Office ("DA's Office") policies and practices; therefore, they should not be permitted to testify on that issue under Rule 37(c). Plaintiff maintains that they would have deposed these witnesses on these subjects had they been properly disclosed. Further, Plaintiff argues that this testimony is not relevant because the DA's Office is not a party to this case and is not relevant to the *Monell* claim. She argues that the risk of confusing the jury substantially outweighs any probative value this testimony may hold. Defendants proffer that Matthews and Brancart will testify that they and the DA's Office "would not charge a crime in the absence of evidence and probable cause supporting the elements of the crime(s) charged. Also, that once a case was charged, it was often the case that no further investigation would be expected absent a request or direction from the DA's office."[19]

The Court denies Plaintiff's motion. Plaintiff does not submit Defendants' initial disclosures about these prosecutor-witnesses, so the Court cannot determine whether this proffered testimony is beyond the scope of their designations. As for relevance and Rule 403, this motion is governed by the Court's previous ruling on probable cause evidence. Whether probable cause supported the original arrest or prosecution of Mr. Coones is a jury determination, and Defendants must be allowed to present the evidence on this element of

---

[18] *Id.* at 3.

[19] Doc. 160 at 6.

Plaintiff's claim.  However, Defendants cannot argue that the prosecutor's independent determination of probable cause cured the detectives' alleged misconduct.  Instead, probable cause must be evaluated based on the detectives' knowledge when they presented the case to the prosecutor for arrest, and to the judge at the preliminary hearing.[20]  The motion is otherwise denied without prejudice subject to contemporaneous objection.

### D.    Motion in Limine No. 4 to Bar Reference to Robert Rupert (Doc. 144)

Robert Rupert was a jailhouse informant who testified at Mr. Coones' trial that Mr. Coones confessed to him that he killed the Schrolls.  Rupert also testified that Mr. Coones told him that he fired a bullet before entering the Schroll home in order to throw off investigators, which was why police found three bullets at the crime scene instead of the four rounds discharged from the firearm.  And Rupert testified that Mr. Coones told him he struck Carl Schroll in the head during the murders, causing the injury to the left side of his forehead.  During post-conviction proceedings, when the prosecutors re-checked the evidence, they found the missing fourth bullet in a pillow.  According to Plaintiff, Rupert confessed in an affidavit that he fabricated his trial testimony, and Dr. Erik Mitchell, a pathologist, submitted an affidavit that the injury to Carl Schroll's head was a graze wound from the bullet later discovered in the pillow.[21]

Plaintiff asks the Court to bar evidence or argument relating to Rupert or his claims that Mr. Coones confessed to him.  Defendants argue that the jury should consider all of the evidence offered at trial in order to determine the materiality of the evidence Plaintiff claims was withheld or fabricated.  At this stage, the Court agrees.  Plaintiff offers no specific objection to this

---

[20] *See* 166 F.4th at 30–31 (evaluating probable cause as it appeared to the detectives; noting that even Detective Michael admitted during his deposition that they "did not find a single piece of evidence to corroborate" Kathleen's hearsay statement to her mother that Mr. Coones was responsible for her and her husband's murders).

[21] The affidavits cited in the motion are not attached.

evidence, and, of course, the jury will be permitted to hear both the substance of Mr. Rupert's testimony, and the fact that it was determined to be false. This motion is therefore denied without prejudice subject to a contemporaneous objection.

> **E.     Motion in Limine No. 5 to Bar Reference to Unproven Allegations Against Dr. Erik Mitchell (Doc. 145)**

Dr. Erik Mitchell is the pathologist who performed the Schrolls' autopsies in 2008. Dr. Mitchell concluded that both Carl and Kathleen's manner of death was homicide. Later, Dr. Mitchell reviewed evidence uncovered during the post-conviction proceedings and explained that, based on this new evidence, he would have determined that Kathleen's death was most likely caused by suicide.

Plaintiff seeks an in limine ruling barring the parties from suggesting that Dr. Mitchell committed misconduct in other cases. Defendants respond that they intend to ask Dr. Mitchell questions about this case (both the underlying criminal case and the post-conviction proceeding) and about his qualifications to offer expert evidence in criminal trials. Thus, the Court finds this motion should be granted as unopposed because Defendants do not intend to ask Dr. Mitchell questions about other cases. Plaintiff may object contemporaneously if Defendants go beyond the scope of their proffer.

> **F.     Motion in Limine No. 6 to Bar Speculation that Bank Rules Would Have Prevented Disclosure of Exculpatory Evidence (Doc. 146)**

The summary judgment evidence showed that in 2008, Kathleen worked at Midwest Regional Credit Union processing checks deposited there so that they could be transmitted to the Federal Reserve. Thad Jones, Vice President of Accounting and Technology, was her direct supervisor. When Kathleen did not show up for work on April 7, the day she died, Jones discovered an irregularity in her accounts and opened an investigation—Kathleen had been

submitting checks for payment by the credit union that were supposed to be drawn against other banks once they were submitted to the Federal Reserve.  She embezzled over $11,000 from the credit union before her scheme was uncovered.  On April 9, 2008, Jones wrote a Suspicious Activity Report ("SAR") documenting his findings regarding Kathleen's embezzlement.  The detectives interviewed Jones on April 14, 2008.  Deputy D.A. Brancart had no knowledge about Kathleen's embezzlement until long after Mr. Coones' conviction.  And investigators did not disclose to Kalb before trial that they discovered Kathleen had been embezzling from Midwest Credit Union.

Plaintiff alleges as part of her *Brady* claim that investigators knew about and withheld the evidence about Kathleen's embezzlement from the defense.  Jones testified in 2020 at the § 60-1507 hearing that he told the detectives about the embezzlement and gave them a copy of the report.  At his deposition in this case in 2023, Jones stated that he could not recall whether he told the detectives about the report.  Similarly, in 2020, Detective Michael testified that Jones told him about the embezzlement and gave detectives the SAR, but then in 2023, he testified that he could not recall whether his previous testimony was correct.

Plaintiff now seeks an in limine ruling that bars the parties from discussing whether federal banking rules and regulations prevented Jones from disclosing the embezzlement report to detectives in 2008.  Plaintiff cites deposition testimony from Brancart, where he suggested that SARs are protected and confidential.  He testified that he would not have necessarily produced the report to the defense if he had known about it because of strict confidentiality rules under federal law that he understood applied to their disclosure.  Plaintiff contends that this testimony is inadmissible lay opinion and that Brancart lacks personal knowledge to testify that he may not have produced the report under banking rules and regulations.  Defendants respond that Jones'

and Brancart's understanding of the embezzlement report's confidentiality under these rules is necessary to test whether Jones in fact produced the report to detectives in 2008. Therefore, Plaintiff's *Brady* claim raises a factual question about whether the detectives knew about and withheld the SAR and Jones's report to them about Kathleen's embezzlement. The jury must determine the credibility of Jones's 2020 testimony that he told detectives about Kathleen's embezzlement and provided them with the report when they interviewed him in 2008.

Under Fed. R. Evid. 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." The witness's own testimony can provide evidence of personal knowledge.[22] It is not difficult for a witness to meet the personal knowledge standard in Rule 602.[23] And under Rule 701, if a lay witness offers an opinion, it must be "limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[24]

As an initial matter, it is established that Brancart did not know about the existence of the report or of Kathleen's embezzlement scheme until well after Mr. Coones' conviction. At his 2023 deposition, he stated that he had never seen the SAR before.[25] Since he did not know about it, he obviously did not produce it before trial. The issue on this motion is whether he can opine about whether he *would have* produced the SAR if he had known about it. Brancart answered several questions during his deposition about whether he had worked with SARs

---

[22] *See* Fed. R. Evid. 602.

[23] *See United States v. Walker*, 85 F.4th 973, 983 (10th Cir. 2023).

[24] Fed. R. Evid. 701.

[25] Brancart Dep. 31:20–21 (Doc. 146-1 at 31).

before, how he knew about the confidentiality rules that may apply to them, and what steps he may have taken if he had known the report existed.  He testified that based on "various trainings over [his] career," he thought he had to "make a request of—I believe it's Department of Treasury, and that there would be strict rules with regard to who could be—who could know what was in those."[26]  When asked who told him he needed to make a request through the Department of Treasury, he stated: "Good gosh.  That would probably go back, sir, to even that time as a law enforcement officer learning about tools that are available to use in investigations."[27]  He testified that he could not recall a time as a prosecutor in Wyandotte County or Ford County when he obtained an SAR during a criminal case.  And he testified that when he worked in the Attorney General's office, he asked his investigators to obtain SARs, but he did not believe he could use them as evidence in the case.  Brancart acknowledged in his testimony that, in the Coones case, he could have asked the court for guidance on disclosure if he determined there was a restriction on disclosure under federal banking laws.

The parties appear to agree that the applicable federal regulation does not prohibit a bank from disclosing a SAR to a local law enforcement agency:

> (k) Confidentiality of SARs.  A SAR, and any information that would reveal the existence of a SAR, are confidential, and shall not be disclosed except . . . .
>
> . . . .
>
> (ii) this paragraph (k)(1) shall not be construed as prohibiting:
>
>> (A) The disclosure by a national bank, or any director, officer, employee or agent of a national bank of:

---

[26] *Id.* 34:16–22.

[27] *Id.* 35:5–8.

> (1) A SAR, or any information that would reveal the existence of a SAR, to the OCC, FinCEN, or any Federal, State, or local law enforcement agency . . . .[28]

And "[d]espite the prohibition against a bank's disclosure of the existence or contents of an SAR, any supporting documentation remains discoverable."[29]

But Defendants argue that the jury should be able to hear from Brancart about his understanding of the federal banking rules and what he would have done had he known about the embezzlement report and SAR. The Court concludes that Brancart's testimony fails to establish a foundation for offering a lay opinion that federal banking laws prohibited him from reviewing or producing in discovery the SAR Jones completed in 2008. However, Brancart's testimony does establish a foundation for testimony that, had he known about the report, he would have investigated any disclosure restrictions before providing it to the defense, and that he could have or would have sought a judicial determination on that issue.

Defendants also contend that the jury should be able to hear an explanation about why Jones completed the SAR on April 9, 2008, yet there was no record of a police report by him or the bank. But Defendants do not explain why this information is relevant, nor do they proffer the questions or answers they anticipate from Jones on this topic. Thus, the Court grants Plaintiff's motion to exclude this line of questioning at trial.

### G.      Motion in Limine No. 7 to Bar Evidence of State Compensation Settlement and Other Collateral Source Payments

Plaintiff filed a claim for compensation under the Kansas wrongful conviction compensation statute,[30] and in June 2021, the Estate was awarded $800,000. Plaintiff asks the

---

[28] 12 C.F.R. § 21.11(k)(ii)(A)(1); *see* 31 U.S.C. § 5318(g).

[29] *United States v. Holihan*, 248 F. Supp. 2d 179, 187 (W.D.N.Y. 2003).

[30] K.S.A. § 60-5004.

Court to bar evidence relating to this settlement at trial, citing the collateral source payment rule and Rules 401 and 403. Defendants argue that this evidence should be admissible and relevant, with no further explanation.

Under the Kansas collateral-source rule,

> "benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer." Under this rule, an injured party can "recover full compensatory damages from a tortfeasor irrespective of the payment of any element of those damages by a source independent of the tortfeasor." However, the collateral source rule is not an absolute one. That is, evidence of benefits received from a collateral source is admissible when "such evidence clearly carries probative value on an issue not inherently related to measurement of damages."[31]

Plaintiff's $800,000 award was from the State, which is independent from the alleged wrongdoer here, the Unified Government and its employees. And because Defendants fail to identify how evidence of Plaintiff's state compensation settlement is probative on an issue other than the measurement of damages, this evidence must be excluded.

The Court also excludes this evidence under Rule 403. Defendants fail to point to any specific probative value this evidence would offer; however, the risk of misleading and confusing the jury is high. Hearing evidence about this settlement could easily cause the jury to believe that Plaintiff has already sufficiently recovered, despite the fact that her constitutional claims are separate. Thus, under Rule 403, the Court finds that any nominal probative value of this evidence is substantially outweighed by the risk of prejudice and jury confusion.

---

[31] *Watson v. Taylor*, 477 F. Supp. 2d 1129, 1134 (D. Kan. 2007) (footnotes omitted) (first quoting *Gregory v. Carey*, 791 P.2d 1329, 1333 (Kan. 1990), and then quoting *Wentling v. Med. Anesthesia Servs., P.A.*, 701 P.2d 939, 949 (Kan. 1985)).

### III.    Defendants' Motion in Limine (Doc. 136)

Defendants' motion in limine seeks to exclude 21 categories of evidence.  Plaintiff does not object to the following: No. 7 re: References to Exclusion of Evidence; No. 8 re: State of Any Venire Person; No. 9 re: Questioning Attorneys; No. 10 re: Probable Testimony of Unavailable Witnesses Who Will not be Called by Deposition; No. 12 re: References to Pretrial Motion or Matters; No. 13 re: Attorneys' Objections; No. 14 re: Settlements and Settlement Discussions; No. 15 re: Refusing to Stipulate to any Matter; No. 16 re: References to Anyone Sitting in the Courtroom; No. 18 re: Alternative Pleadings, Theories, and Requests for Relief; No. 19 re: Opinions not Disclosed in Expert Report; No. 20 re: Location or Size of any Law Firm; No. 21 Re: Wealth, Religion, or Political Beliefs or Sexual Preferences of any Party. Therefore, the Court grants those motions to exclude.  The Court proceeds to consider the remaining contested motions.

### A.    Due Process Issues Abandoned by Plaintiff (No. 1)

In Count I, Plaintiff alleges due-process violations against Defendants Michael and Garrison for withholding, failing to preserve, and fabricating evidence.  In the factual contentions section of the Pretrial Order, Plaintiff provided a list of evidence she claims was withheld in violation of Mr. Coones' due-process rights: (1) that Mr. Coones' children were restrained and taken into custody during their interviews; (2) handwritten notes and recordings of witness interviews; (3) an exculpatory written statement by Ross Minks corroborating Mr. Coones' alibi; (4) video of the crime scene; (5) a QuikTrip surveillance video disproving Kathleen's story of being threatened by Mr. Coones; (6) that Detective Michael's investigation corroborated Mr. Coones' account of where his van was parked (i.e., it had not been used to commit a murder); (7) that Kathleen and Carl were experiencing marital tension just before the murder; (8) that Robert

17

Rupert had been promised leniency for his cooperation; (9) Defendants Michael and Garrison caused gunshot residue swabs to not be tested by the lab; and (10) that Kathleen's embezzlement had been discovered by the credit union that employed her immediately following the murder-suicide. Defendants separately addressed each of these in their motion for summary judgment on the due process claim.

In response to Defendants' motion for summary judgment, Plaintiff focused on three categories of evidence—Kathleen's embezzlement, the KBI expert report about Senior's checks during the earlier elder abuse investigation, and the QuikTrip surveillance video. Plaintiff also asserted that Detective Michael fabricated his claim that Mr. Coones' van was not in his driveway the morning after the murders. The Court considered each of Plaintiff's due-process claims based on these categories of evidence and ultimately denied qualified immunity under all of the applicable due-process formulations.

Defendants now move to preclude Plaintiff from introducing any evidence other than the embezzlement, the expert report about the checks, and the QuikTrip video to support her due process claims, arguing that she abandoned them by not raising them on summary judgment. Plaintiff responds that she did not abandon her due-process claims referenced in the motion in limine and that the evidence is relevant and therefore admissible. The Court agrees.

As the Tenth Circuit observed on appeal, the "pretrial order stated the parties' claims in general terms," thus, it "should be liberally construed to cover any of the legal or factual theories that might be embraced by its language."[32] The language of Count I alleges that the detectives fabricated and suppressed exculpatory evidence, which resulted in Mr. Coones' wrongful conviction and incarceration. Defendants focus on a list of evidence from the section of the

---

[32] 166 F.4th 1, 18 (10th Cir. 2026).

Pretrial Order stating Plaintiff's factual contentions; the Pretrial Order does not set out separate and independent due-process claims that were then abandoned at summary judgment.

To be sure, Defendants moved for summary judgment by addressing each category of evidence separately, but the Court only needed to find evidence of withholding, failure to preserve, and/or fabricating evidence under the applicable legal standards in order for Plaintiff's due process claim to survive summary judgment. In fact, as the Court acknowledged in its summary-judgment order, in determining the materiality of the evidence at issue on the *Brady* claim, the Court is not to "consider each piece of withheld evidence in isolation. Rather [the Court] review[s] the cumulative impact of the withheld evidence, its utility to the defense as well as its potentially damaging impact on the prosecution's case."[33] Plaintiff opted to focus primarily on the three types of evidence cited above in responding to summary judgment, although it discussed the other evidence, as well. The Court did not grant Defendants' summary-judgment motion as to the other categories of evidence listed in the Pretrial Order. The fact that the Court did not focus on those other categories of evidence does not preclude their admission as evidence at trial. To the extent the listed evidence is relevant to Plaintiff's due process claims, it is admissible.[34]

### B.    Speculative Testimony (No. 2.A)

Next, Defendants move to exclude speculative testimony from witnesses who did not personally observe improper actions by the Kansas City, Kansas Police Department ("KCKPD") or its officers. Specifically, Defendants ask the Court to limit the testimony of the following

---

[33] *Fontenot v. Crow*, 4 F.4th 982, 1080 (10th Cir. 2021) (quoting *Simpson v. Carpenter*, 912 F.3d 542, 572 (10th Cir. 2018)).

[34] Defendants do not move to exclude this evidence under Fed. R. Evid. 401 or 402, so the Court declines to separately consider that issue in limine.

witnesses under Fed. R. Evid. 602: (1) Mr. Coones' alibi witnesses; (2) Plaintiff's experts; (3) members of Mr. Coones' defense team during his postconviction proceedings; (4) retired KCKPD officers with knowledge of its practices; and (5) community members. Defendants argue that all of these witnesses should be excluded or limited for lack of personal knowledge. Plaintiff does not dispute that witnesses should not be allowed to testify based on speculation, but disputes that these witnesses will not offer testimony based on their personal knowledge.

The Court recited the personal knowledge standards under Rule 602 and 701 when ruling on Plaintiff's motions in limine. With these standards in mind, the Court addresses the specific witnesses Defendants seek to exclude or limit below. Without a proffer, however, the Court declines to speculate about how each of these witnesses will testify, and denies the motion in limine without prejudice subject to contemporaneous objection.

### 1.    Alibi witnesses

Defendants ask the Court to limit Mr. Coones' alibi witnesses—Deirdre Coones, Melody Coones, and Ben Coones—to what they "actually knew," which would not include where Mr. Coones was between 11:30 p.m. and 6:15 a.m. the night and morning of the Schrolls' murder.[35] There is no indication or proffer that these witnesses will not testify based on their personal knowledge. The Court therefore denies this objection without prejudice subject to contemporaneous objection.

### 2.    Plaintiff's Experts: David Harvey and David Balash

After the parties briefed the motions in limine, the Court denied Defendants' earlier-filed motion to exclude Plaintiff's experts under Rule 702 and *Daubert*.[36] In the motion in limine,

---

[35] Doc. 136 at 5.

[36] Doc. 166.

Defendants reframe and repeat many of their *Daubert* objections as objections based on speculation by two of these experts: David Harvey and David Balash.  The Court addresses each expert below, but does not change its earlier rulings that Defendants' objections go to weight and not admissibility, and that cross-examination is the appropriate method to address the limitations Defendants identify with the experts' opinions.

### a.    David Harvey

Plaintiff will offer Harvey as an expert on law enforcement procedures.  Defendants argue that the Court should preclude him from testifying on the following topics as speculation: the investigatory responsibilities of KCKPD officers; Kathleen Schroll's dominant hand; the use of jailhouse informants in the investigation into the deaths of the Schrolls; lack of probable cause to arrest Coones on April 7, 2008; and that the alleged errors in the investigation point towards the detectives attempting to make the facts fit their theory of Coones' guilt.  Defendants argue that Harvey's testimony on these subjects would exceed the scope of his expertise under Rule 703.

But Defendants do not proffer Harvey's anticipated testimony.  In response to Defendant's *Daubert* motion, Plaintiff proffered that Harvey would testify about the accepted standards of police practice, including the types of evidence that should be preserved and disclosed, and the circumstances under which a reasonable investigator would question the presence of probable cause.[37]  The Court has already determined that Harvey is qualified to testify about these subjects, and that this anticipated testimony is both reliable and relevant.  The Court declines to revisit these findings.  Of course, no witness can testify based on speculation,

---

[37] *See Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) ("When an expert offers an opinion relevant to applying a legal standard such as probable cause, the expert's role is 'limited to describing sound professional standards and identifying departures from them.'" (quoting *West v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997))).

but to the extent Harvey has a basis to testify about the subjects identified by Defendants either due to his expertise, his review of materials for this case, or his personal knowledge, the Court declines to rule in limine about the scope of his testimony. To the extent his personal knowledge on certain topics may be limited, Defendants can address this on cross-examination.

### b.    David Balash

Plaintiff designated Balash as an expert in ballistics and crime scene reconstruction. He plans to testify about the processing of the crime scene, the significance of the findings of gunshot residue and primer gunshot residue at particular locations on each victim's body, and his deductions from the crime scene evidence as to the events that led up to and caused the Schrolls' deaths. Defendants argue that the Court should preclude him from testifying on the following topics as speculation: that Carl was shot first, where and how Kathleen was standing when she was shot, the importance of and/or lack of gunshot residue testing, and his conclusions regarding who was holding the gun and how it was held. Defendants argue that these subjects are outside the scope of his expertise. As Plaintiff points out, Defendants fail to explain how any of these topics fall outside of Balash's expertise. To the contrary, all of them fall squarely within the scope of his expertise. Defendants' motion is therefore denied. They can explore any limitations of Balash's expertise on cross-examination and raise any relevance objections contemporaneously.

### 3.    Members of Mr. Coones' Postconviction Defense Team

Next, Defendants argue that the Court should limit testimony by Branden Bell, Lindsay Runnels, and Colin Brown. Bell and Runnels were Mr. Coones' attorneys during his state court postconviction proceedings; Brown was an investigator. Defendants ask the Court to limit any testimony by these witnesses to their own personal knowledge. Plaintiff does not dispute that

22

their testimony must be based on personal knowledge, but maintains that their personal knowledge goes beyond what Defendants acknowledge in their motion; they have firsthand information relevant to Plaintiff's damages, and evidence they discovered that led to his exoneration, and statements made by party opponents during the investigation. The Court therefore denies Defendants' motion in limine without prejudice to contemporaneous objection at trial.

### 4.     Retired KCKPD Officers

Next, Defendants ask the Court to limit the scope of testimony by Max Siefert and Michael Kobe, who are both retired KCKPD officers. They argue that these witnesses do not have personal knowledge about what others in the department knew about Roger Golubski and his activities, and that they should not be permitted to testify about rumors in the department. Plaintiff responds that both witnesses will offer testimony about their own personal experiences and their understanding of the department's practices, including whether Golubski's misconduct was discussed widely. These issues are relevant to the *Monell* claim, as discussed more fully in its discussion of Defendants' third motion in limine.

To the extent Defendants wish to object to specific testimony by Siefert at trial, this objection is better suited to contemporaneous objection. Indeed, the Court already overruled this objection to Siefert's affidavit on summary judgment, finding Plaintiff established Siefert had personal knowledge of the statements made therein.[38] Kobe has been designated to testify by deposition, and Defendants have submitted objections to that testimony. The Court will therefore rule on Defendants' objections to Kobe's testimony when it rules on deposition objections.

---

[38] *See* Doc. 121-1 at 23 n.43.

### 5.    Community members

Finally, Defendants object to testimony by several Kansas City, Kansas community members on Plaintiff's witness list: Gregory Wilson, Kendra Dean-Martin, Rose Lee McIntyre, and Tina Peterson.  Plaintiff submitted their affidavits with her opposition to summary judgment. In its summary-judgment order, the Court overruled Defendants' objections to the affidavits from victims who attest that Golubski had a pattern of fabricating and suppressing evidence.  The Court reviewed these affidavits and found that they are based on the personal knowledge of various Kansas City, Kansas citizens who observed and interacted with Golubski during his many years as a KCKPD officer.  In considering the parties' statements of fact, the Court only relied on evidence that was based on personal knowledge.  Likewise, to the extent Plaintiff objects that certain statements by these witnesses are not based on personal knowledge, the motion in limine is denied without prejudice to contemporaneous objection.

### C.    Hearsay (No. 2.B)

Defendants move to exclude testimony by Gregory Wilson, Kendra Dean-Martin, Rose Lee McIntyre, and Tina Peterson as either inadmissible hearsay or unduly prejudicial under Rule 403.  But Defendants wholly fail to proffer the statements they wish to exclude.  Thus, this motion is denied without prejudice to contemporaneous objection.

### D.    *Monell* Evidence (No. 3)

At summary judgment, Plaintiff submitted evidence to support her *Monell* liability claim that the Unified Government failed to train or supervise its employees and had a widespread practice of not disciplining officers' civil rights violations, which directly caused the

24

constitutional violations that led to Mr. Coones' wrongful conviction.[39]  As part of this showing, Plaintiff argued that at the time of the Schroll investigation, the homicide detectives' supervisor was Roger Golubski, an officer whose misconduct was openly tolerated and overlooked within the department at that time.  Plaintiff submitted evidence that civil rights complaints were categorized as "other contacts" complaints so they could be investigated outside of the internal affairs system without documentation, and that the KCKPD did not welcome reports about fellow officers.  Plaintiff offered evidence that Golubski, the homicide detectives' supervisor, had eleven such "other contacts" complaints from 1993 to 2011, without receiving discipline, and that the KCKPD's priority of solving homicide cases drove the KCKPD's failure to supervise and train detectives to follow formal policies.  Specifically to this case, Plaintiff submitted evidence that Golubski attended a meeting where Detective Bryan Block shared information with Garrison and Michael about the elder abuse investigation into Mr. Coones' father, he signed off on the detectives' reports, and he assigned Block to attend the autopsies.

In their motion in limine, Defendants contend that Plaintiff's *Monell* claims rest on "second-hand accounts of alleged policy abuses and inconsistent investigative practices," which should be excluded under Rule 403.[40]  Defendants characterize the evidence as "[t]estimony about the alleged misconduct of a different officer than the ones on trial," and argue that Golubski's conduct in other investigations would only serve to mislead the jury and prejudice them.[41]  They contend that "the Defendant officers . . . were not acting under the direction of Golubski during their investigation."[42]

---

[39] *See Finch v. Rapp*, 38 F.4th 1234, 1244 (10th Cir. 2022) (setting forth elements of a *Monell* claim, including that the Plaintiff must show a municipal policy or custom that caused the constitutional violation).

[40] Doc. 136 at 11.

[41] *Id.* at 13.

[42] *Id.* at 13–14.

Plaintiff responds that the motion in limine is vague about what evidence it seeks to exclude, fails to acknowledge Golubski's involvement in the Schroll investigation, and that evidence about Golubski's misconduct and the other officers' knowledge thereof is relevant to the KCKPD's policies and procedures.  The Court agrees.

As an initial matter, Defendants fail to identify the specific evidence they seek to exclude. For this reason alone, the Court can deny the motion.  Second, Defendants fail to even acknowledge that the *Monell* evidence about Golubski is based on the fact that he was the defendant detectives' supervisor during the Schroll investigation.  There was evidence that he met with them and signed off on reports.

Finally, the Court declines at this stage to exclude evidence that goes to the elements of Plaintiff's *Monell* claim under Rule 403.  Rule 403 allows the Court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

To prove her *Monell* claim, Plaintiff must show: (1) "a municipal policy or custom— either an official rule or one so entrenched in practice as to constitute an official policy"; (2) "that the municipality was deliberately indifferent to constitutional violations that were the obvious consequence of its policy"; and (3) "that the policy directly caused his constitutional injury."[43]  There are several ways for a plaintiff to establish a municipal policy or custom, including by showing there was "an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law" or  "failure to adequately train or

---

[43] *Finch*, 38 F.4th at 1244.

supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused."[44]

Evidence that the homicide detectives' supervisor's misconduct was openly tolerated or ignored, and that the department's priority of solving homicide cases outweighed its interest in prohibiting such misconduct, is highly relevant to whether the KCKPD had a policy or custom that encouraged the kind of constitutional violations that occurred in this case. And, Plaintiff submits that there is evidence that the policymaker in this case—the Chief of Police—was aware of Golubski's misconduct.

Having found this evidence highly probative on the *Monell* claim, the Court must next consider whether it nonetheless must exclude any of the proffered evidence because "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[45] "Unfair prejudice" under the rule means "an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one."[46] "In engaging in the requisite balancing, [the Court] 'give[s] the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.'"[47] And the Court must remain mindful that "it is not enough that the risk of unfair prejudice be greater than the probative value of the evidence;

---

[44] *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citation modified).

[45] Fed. R. Evid. 403.

[46] Fed. R. Evid. 403 advisory committee note.

[47] *United States v. Cerno*, 529 F.3d 926, 935 (10th Cir. 2008) (quoting *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000)).

the danger of that prejudice must *substantially* outweigh the evidence's probative value."[48] Exclusion under Rule 403 "is an extraordinary remedy and should be used sparingly."[49]

The Court cannot find that exclusion under Rule 403 is warranted here given Defendants' failure to proffer the specific evidence they wish to exclude.  The Court declines to find that evidence about Golubski, insofar as it is tied to the customs and practices alleged in this case, is so prejudicial that it substantially outweighs the probative value in this matter.

### E. Privileged Communications (No. 4) and Questions About Trial Preparation (No. 5)

Defendants ask that the Court order counsel to refrain from asking questions that may solicit confidential or privileged communications under Rules 501 and 403, and to preclude counsel from asking questions about how a witness prepared for trial with their counsel.  Plaintiff responds that she does not intend to ask witnesses to disclose privileged communications, so this motion (No. 4) is granted.  But Plaintiff reserves the right to ask any witness who represents them and how they prepared for their trial testimony if it goes to bias, or how they may have refreshed their memory.

The Court grants as unopposed the motion in limine to exclude privileged communications.  But the Court denies Defendants' motion about trial preparation.  There is no prohibition to asking questions about how a witness prepared for their trial testimony—who they spoke to and what materials they reviewed.  This information is highly probative of witness credibility and bias, and Defendants fail to identify any prejudice that would substantially outweigh that probative value so long as Plaintiff does not solicit privileged information.

---

[48] *United States v. Henthorn*, 864 F.3d 1241, 1256 (10th Cir. 2017) (quoting *Cerno*, 529 F.3d at 935).

[49] *United States v. Silva*, 889 F.3d 704, 712 (10th Cir. 2018) (quoting *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001)).

### F.      References to Filing Motions in Limine (No. 6)

Defendants move to exclude any reference to the filing of motions in limine under Rules 401 through 403.  Plaintiff responds that it does not intend to discuss motions in limine before the jury, but contends that if a party violates a motion in limine, the opposing party must be able to bring it to the Court's attention.  The Court agrees, but advises the parties to raise such an objection at the bench, not in the presence of the jury.  The motion is otherwise granted as unopposed.

### G.      References to Exhibits Not Being Offered (No. 11)

Defendants move to exclude any reference to an exhibit not being offered by any party, citing Rules 401 through 403.  Plaintiff responds that she does not understand the basis of the motion since a witness could discuss evidence that could be entered as exhibits without them being offered as exhibits.  Both the objection and the response are unclear to the Court.  The parties are directed to follow the Rules of Evidence, particularly the rules that govern admission of evidence when examining witnesses.  It is not appropriate to discuss the merits of, or publish an exhibit to the jury, before it is identified and admitted.  At the same time, references to documents that may not be in the trial record during a witness's testimony is not prohibited.

### H.      Reference to Other Suits (No. 17)

Defendants move to exclude, without further explanation, "[a]ny reference, comment, or statement by counsel, or by any witness called to testify, regarding any other suit, litigation, arbitration, or other legal or administrative proceeding."[50]  Plaintiff understandably objects that this wrongful conviction case will require some evidence about other proceedings that are relevant to the claims to be tried.  This case involves a wrongful conviction after two jury trials.

---

[50] Doc. 136 at 16.

Witnesses obviously need to discuss what happened during those trials and the post-conviction proceedings. And Plaintiff plans to offer evidence about disciplinary proceedings that are relevant to the *Monell* claims. Given Defendants' failure to identify what evidence exactly they seek to exclude, the Court denies this motion without prejudice to contemporaneous objection at trial.

### I.    Opinions Not Disclosed in Expert Report (No. 19)

Finally, Defendants ask the Court to preclude expert witnesses from offering opinions outside of their expert reports. Plaintiff does not oppose this motion but notes that there are several non-retained experts in this case who may appropriately testify about topics identified in their Fed. R. Civ. P. 26(a)(2)(C) disclosures. With this caveat, the Court grants Defendants' motion as unopposed.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion in Limine No. 1 (Doc. 141) is **granted**; Nos. 2 and 3 (Docs. 142 and 143) are **granted in part and denied in part**; No. 4 (Doc. 144) is **denied without prejudice**; No. 5 (Doc. 145) is **granted**; No. 6 (Doc. 146) is **granted in part and denied in part**; No. 7 (Doc. 147) is **granted**; and Nos. 8 through 11 (Docs. 148–151) are **granted as unopposed**.

**IT IS FURTHER ORDERED BY THE COURT** that Defendants' Motion in Limine (Doc. 136) is **granted in part and denied in part**.

**IT IS SO ORDERED.**

Dated: March 31, 2026

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE